# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Lawrence J. Zweifach
Direct: +1 212.351.2625
Fax: +1 212 351.6225
LZweifach@gibsondunn.com

January 16, 2018

VIA ECF AND ELECTRONIC MAIL

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007

Re:     *SEC v. Rio Tinto PLC, et al.*, No. 1:17-cv-7994 (S.D.N.Y.)

Dear Judge Torres:

Pursuant to Section III.A of Your Honor's Individual Rules of Practice in Civil Cases ("Individual Rules"), we are writing on behalf of defendants Rio Tinto PLC and Rio Tinto Limited (collectively "Rio Tinto") to set forth the bases for Rio Tinto's anticipated motion to dismiss plaintiff Securities and Exchange Commission's ("SEC's") complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Pursuant to Section III.B of the Individual Rules, Rio Tinto sent the SEC a letter setting forth the specific pleading deficiencies in the Complaint.  The SEC responded by letter stating that it believes its allegations are adequately pleaded, and did not indicate that it would seek leave to amend the Complaint.

I.      **The Parties And Claims**

Rio Tinto is an international company that specializes in exploring, extracting, and processing mining assets worldwide.  Compl. ¶¶ 20, 40.  During the relevant period, defendant Thomas Albanese was Rio Tinto's Chief Executive Officer, and defendant Guy Elliott its Chief Financial Officer.  *Id.* ¶¶ 21-22.  In 2011, Rio Tinto sought to capitalize on booming coal prices by paying $3.7 billion for Riversdale Mining Limited (here "RTCM"), which owned large, undeveloped coal assets in Mozambique.  *Id.* ¶¶ 50, 61.  After spending over a year conducting extensive feasibility studies of the quality and quantity of available coal and the various options for transporting mined coal to market (including the preferred option of barging coal down the Zambezi river), *id.* ¶¶ 77, 83-84, 120, 151, Rio Tinto concluded that resource and infrastructure challenges ultimately would be insurmountable, and took a sizeable impairment on Riversdale in January 2013, *id.* ¶¶ 166-67.

The SEC does not challenge the *amount* of that impairment—effectively conceding it was sufficient—only that it should have been done earlier.  Specifically, the SEC claims that Rio Tinto committed fraud (Counts 1 and 3), made false SEC filings (Count 5), and maintained inaccurate books and records and inadequate controls (Count 7) largely because it did not take an impairment within just 5 months (in late 2011) or 11 months (in mid-2012) of the Riversdale acquisition, at a time when many of Rio Tinto's rigorous feasibility studies

were not yet complete, certain potential transportation options had not yet been adequately assessed, and internal models of RTCM's valuation were changing.

## II.  Bases For Rio Tinto's Motion To Dismiss The Complaint

### A.  The Entire Complaint Should Be Dismissed Under Rule 9(b).

Federal Rule of Civil Procedure 9(b) governs all of the claims because they "pertain to the exact same underlying events" and the same allegedly false or misleading statements. *Lighthouse Fin. Grp. v. Royal Bank of Scot. Grp., PLC*, 902 F. Supp. 2d 329, 339 (S.D.N.Y. 2012), *aff'd*, *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC* ("*IBEW*"), 783 F.3d 383 (2d Cir. 2015). The Complaint cannot meet Rule 9(b)'s heightened standards because it fails to plead, among other things, the actual basis for Rio Tinto's impairment decisions, what its internal controls were and how they were deficient, and when or by how much an impairment should have been taken. *See, e.g.*, *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 411 (S.D.N.Y. 2007).

The SEC's response letter did not address Rio Tinto's authorities; and neither of the two authorities it cited is controlling. One *dismissed* claims for failing to allege sufficiently when the statements were made, *see SEC v. Wey*, 246 F. Supp. 3d 894, 911 (S.D.N.Y. 2017), and in the other no greater specificity on an accounting violation was required because, unlike here, the defendant allegedly "intended to falsify [its] financial statements," *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 495 (S.D.N.Y. 2007).

### B.  The Fraud Claims And False-Filing Claim Should Be Dismissed For Failure To Plead Falsity.

For several reasons, the Complaint fails to plead falsity—an essential element of the fraud and false-filing claims (Counts 1, 3, and 5). Tellingly, the SEC's response letter made *no* attempt to refute any of Rio Tinto's arguments on falsity.

Statements about RTCM's valuation were opinion statements that could be false only if not "honestly held" or if, in context, they did not "fairly align[] with the information in [Rio Tinto's] possession." *Omnicare v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327, 1329, 1333 (2015); *see also SEC v. Thompson*, 238 F. Supp. 3d 575, 601 (S.D.N.Y. 2017). There are no allegations that anyone at Rio Tinto believed that an earlier impairment was required. And Rio Tinto's Impairment and Controller's Papers—selectively quoted in the Complaint—make clear that these statements fairly aligned with known information because any adverse developments were potentially offset by rising coal prices and potential infrastructure solutions then under review.

January 16, 2018
Page 3

Other statements about RTCM's prospects were not misleading because Rio Tinto was "welcome to resubmit" a new barging proposal after an initial rejection, *Mozambique Rejects Coal Barging Study: Minister*, Reuters (Mar. 1, 2012); *see also* Compl. ¶ 77; Rio Tinto was "seek[ing] out partners to construct or bring online an existing small rail operation," Compl. ¶ 120; the initial valuation of RTCM had already anticipated a sizeable write-down of its reserves and resources, *id.* ¶ 83; and other vague and optimistic statements relating to RTCM's prospects were "too general" to support liability, *ECA & Local 134 IBEW Joint Pension Trust v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009).

Nor does the Complaint sufficiently plead that Rio Tinto fraudulently concealed risks about RTCM. Because the "sole basis … is alleged misrepresentations or omissions," there is no scheme liability. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 177 (2d Cir. 2005). Regardless, the 2011 Annual Report was "full of" analysis indicating that RTCM was a highly risky, early-development project with unproven value that faced many infrastructure and resource risks. *Id.* at 176-77; *see* 2011 Annual Report 10-12, 27, 190. Indeed, investors knew of the rejected barging proposal and other significant risks that RTCM faced.

### C. The Fraud Claims And False-Filing Claim Should Be Dismissed For Failure To Plead Materiality.

The Complaint also does not adequately plead materiality. The alleged misstatements and omissions "carr[y] the preliminary assumption of immateriality" because the impairment taken in 2013 was for only 3% of Rio Tinto's total assets. *IBEW*, 783 F.3d at 390. And the qualitative materiality factors cannot overcome this presumption here: for example, the stock price rose and there was no change in credit rating at the time of impairment, and RTCM's value was not "capable of precise measurement." *Id.* at 391. The SEC's response letter merely reproduced some of its deficient allegations and asserted—without any controlling authority—that the allegations raise a triable issue. They do not.

### D. The Fraud Claims Also Should Be Dismissed For Failure To Plead Scienter.

Only Mr. Albanese's or Mr. Elliott's scienter can be imputed to Rio Tinto because there are no allegations that any other employee involved in making Rio Tinto's public statements had a fraudulent intent, and there is no basis for a jury to infer corporate scienter based on an unnamed employee. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

The fraud claims fail to allege scienter because the Complaint does not plead either motive and opportunity to commit fraud, or facts constituting strong circumstantial evidence of recklessness. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996). The alleged motives fail as a matter of law because they are common to all corporate directors and

companies.  *See id.*  In fact, the only motive noted in the SEC's response letter—protecting a professional reputation—is not fraudulent.  *See In re Loral Space & Commc'ns Ltd. Sec. Litig.*, No. 01-cv-4388-JGK, 2004 WL 376442, at *7 (S.D.N.Y. Feb. 27, 2004).  The Complaint also fails to plead recklessness because the defendants' actions were "consistent with reasonably available data" about rising coal prices and infrastructure solutions then under review, *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).  The SEC's letter did not attempt to refute this argument, but simply restated the deficient allegations that Mr. Albanese and Mr. Elliott knew or should have known that RTCM's value was overstated.

### E. The Section 13(b) Claims Should Be Dismissed Because Rio Tinto Was Not Required To Take An Impairment Sooner Than It Did.

The Section 13(b) claims (Count 7) should be dismissed because Rio Tinto's reasonable judgments on when, and whether, to take an impairment are entitled to deference.  *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110-11 (2d Cir. 2011).  Rio Tinto's impairment decisions were reasonable because, among other things, its financial statements were never restated, and its independent auditor never withdrew its opinion on those statements.  In response, the SEC merely stated that reasonableness is a question of fact for a jury.  That response, however, ignored the authorities Rio Tinto had cited, which held that a Complaint could not establish an accounting violation *as a matter of law* where, as here, it relied only on a company's "general financial deterioration," *City of Omaha, Neb. Civilian Empls. Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012) (per curiam), or failed to "allege the actual assumptions that [the defendant] relied upon" in making its accounting determinations, *City of Dearborn Heights v. Align Tech., Inc.*, 856 F.3d 605, 618 (9th Cir. 2017).

The Complaint does not allege any deficiency in Rio Tinto's internal controls, but instead infers one based on an alleged accounting violation.  That theory fails because there was no accounting violation and, regardless, an accounting violation cannot be the sole basis for an internal-controls claim.  *See*, *e.g.*, *SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1324 (N.D. Ala. 2003).  The SEC's response did not address Rio Tinto's internal controls.

### F. The SEC Cannot Seek Disgorgement As A Remedy.

The SEC can seek disgorgement only if it is "is remedial relief and is not a penalty assessment." *SEC v. Tex. Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir. 1971).  Because disgorgement inherently functions as a "penalty," *Kokesh v. SEC*, 137 S. Ct. 1635, 1643-44 (2017), the SEC cannot make this showing.  The contrary authorities cited in the SEC's response are out-of-circuit and expressed "uncertainty" on the issue regardless.  *SEC v. Jammin Java Corp.* No. 2:15-cv-08921-SVW, 2017 WL 4286180, at *3 (C.D. Cal. Sept. 14, 2017).  Finally, although the SEC attempted to base a disgorgement award on Rio Tinto's bond offerings, that attempt fails because there are no allegations of "market distortion, price impact, or profit tied to" the alleged fraud.  *SEC v. Wyly*, 56 F.3d 260, 269 (S.D.N.Y. 2014).

**GIBSON DUNN**

January 16, 2018
Page 5

Sincerely,

/s/ Lawrence J. Zweifach

Lawrence J. Zweifach

cc: All counsel (*by e-mail and ECF*)