# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001.2113

TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

January 16, 2018

<u>VIA ECF</u>

Hon. Analisa Torres
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *SEC v. Rio Tinto plc, et al.*, No. 1:17-cv-7994 (AT) (DCF) – Pre-Motion Letter

Dear Judge Torres:

    We represent Thomas Albanese in the above-captioned matter. We write this letter pursuant to Rules III.A.II and III.B.iii of this Court's Rules of Practice in Civil Cases. Mr. Albanese intends to move to dismiss the Complaint filed by the Securities and Exchange Commission ("SEC" or the "Commission"), Dkt #1 (Oct. 17, 2017), pursuant to Rule 12(b)(6) for the reasons set forth in this letter and in the separate letters filed by Defendants Rio Tinto plc and Rio Tinto Limited (collectively, "Rio Tinto" or the "Company") and by Defendant Guy Elliott. Pursuant to Rule III.B.ii, we have exchanged letters with the SEC, which has not indicated that it intends to amend its Complaint.[1]

**<u>Background</u>**

    Mr. Albanese served as CEO of Rio Tinto, a large and complex international mining group, throughout the relevant period. According to the Company's 2012 Annual Report, Rio Tinto had over $117 billion in total assets and $58 billion in net assets. As the Complaint itself makes clear, the Company had a robust process for valuing assets and assessing impairments, which it used for both Rio Tinto Coal Mozambique ("RTCM") and its other investments. Compl. ¶¶ 44-45. The Company recognized impairments every year from 2009 to 2012, including some far larger than the RTCM impairment at issue in this case. *See* Compl. ¶ 44.

---

[1] We cite in this letter "the controlling authorities that [we] contend[] would warrant dismissal" of the Complaint without prejudice to Mr. Albanese's right to make additional or different arguments and to cite additional or different authorities in his motion to dismiss.

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • RIYADH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Mr. Albanese at all times conducted himself in the manner expected of any reasonable CEO. He asked hard questions and trusted in experts from a wide range of fields including accounting and operations. Mr. Albanese encouraged those who ran RTCM to explore options to help the business to succeed and reasonably relied on Rio Tinto's specialists to make difficult valuation and impairment determinations in light of complex and constantly changing facts. *See* Compl. ¶¶ 35, 43, 120. Mr. Albanese communicated in an appropriate and timely way to the Audit Committee, the Board, all corporate constituents, and the investing public. Rio Tinto, in turn, publicly disclosed extensive risk related to RTCM.

When Rio Tinto ultimately announced the $3 billion impairment, it was not material to investors. In its Complaint, the SEC does not allege any decrease in Rio Tinto's stock price or shift in credit rating at the time the impairment was announced, because there was none. Rio Tinto's share price went up, not down, after the impairment was announced. The very day after the impairment was publicly disclosed, Moody's issued a public statement confirming that Rio Tinto's rating outlook was stable. No financial statements or auditor opinions regarding RTCM were restated or withdrawn. When Mr. Albanese stepped down, Rio Tinto's chairman praised his integrity.

**Mr. Albanese Did Not "Make" Any Misstatements or Omissions**

"For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Under this standard, Mr. Albanese did not "make" any of the statements alleged in the Complaint except his direct statements to investors and in the 2011 Annual Report, which he signed. Claims related to all other statements, including those contained in the interim financial report for half-year 2012 and the bond offering documents, must be dismissed because Mr. Albanese did not "control" those statements under the standards recognized by the Supreme Court. *Id.*

As to the statements which Mr. Albanese did "make," the 2011 Annual Report and direct statements to investors, the Complaint fails adequately to allege that any of the statements were false or misleading in light of the information available at the time and the company's disclosure of risks associated with RTCM. *See Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5, 9 (2d Cir. 1996).

**The Complaint Fails Adequately to Allege Scienter or Recklessness**

The SEC does not allege that Mr. Albanese acted for his personal benefit or to enrich himself. The Complaint's only allegations of motive involve seeking success for the Company's business and investments. These motivations are insufficient to plead scienter as a matter of law because they are common to all corporate directors. *Novak v. Kasaks*, 216 F.3d 300, 307-08 (2d Cir. 2000).

To plead scienter without a legally sufficient allegation of motive, "the strength of the circumstantial allegations must be correspondingly greater." *ECA, Local 134 IBEW Joint Pension*

2

*Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009).  An inference of scienter or recklessness "'must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'"   *U.S. SEC v. Subaye, Inc.*, No. 13 Civ. 3114, 2014 WL 448414, at *6 (S.D.N.Y. Feb. 4, 2014) (quoting *Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 314 (2007)).  The facts alleged in the Complaint and available in other documents proper for consideration on a motion to dismiss fail to meet this standard.  They make clear: (1) the size and complexity of the Company; (2) Mr. Albanese's background in mineral economics and mineral engineering rather than accounting; (3) the difficulty of accurately valuing RTCM in light of constantly changing positive and negative information; (4) that the Company disclosed significant and ongoing risk related to RTCM; (5) that the responsibility for valuation and impairment lay in the first instance with other employees and officers of Rio Tinto; (6) that the Company consistently took impairments throughout the relevant time period; and (7) that the independent auditors never withdrew or restated any relevant opinions.

The Complaint thus fails adequately to plead scienter or recklessness.  Its allegations, together with facts otherwise properly considered, create the equally if not more cogent and compelling inference that Mr. Albanese reasonably relied on Rio Tinto's robust procedures and experts properly to value RTCM.

### The Scheme Liability Claims Should Be Dismissed for Failure to Plead an Inherently Deceptive Act

Scheme liability under Rule 10b–5(a) and (c) and Section 17(a)(1) and (3) "hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement."  *SEC v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 388 n.3, 392 (S.D.N.Y. 2014); *see also Lentell*, 396 F.3d at 177; *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 987 (8th Cir. 2012); *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057-58 (9th Cir. 2011).  Here, the Complaint does not properly plead specific allegations of any "inherently deceptive" acts committed by Mr. Albanese.  Because the SEC alleges—albeit insufficiently—only misstatements or omissions, these claims must be dismissed.

### The Section 17(a)(2) Claim Should Be Dismissed Because the Complaint Fails to Allege that Mr. Albanese Personally Obtained Any Money or Property

Because Section 17(a)(2) forbids a defendant from "obtain[ing] money or property," a complaint fails adequately to plead a violation when it alleges gain only to a defendant's employer rather than to the defendant himself.  *U.S. SEC v. DiMaria*, 207 F. Supp. 3d 343, 358 (S.D.N.Y. 2016); *U.S. SEC v. Syron*, 934 F. Supp. 2d 609, 638-40 (S.D.N.Y. 2013).  The statute limits liability under Section 17(a)(2) to personal gain: "[T]he requirement of personal gain inheres in the word 'obtain.'"  *DiMaria*, 207 F. Supp. 3d at 358 (quoting *Syron*, 934 F. Supp. 2d at 639).  There are no allegations that Mr. Albanese's compensation increased or that he owned or sold corporate stock that increased in value due to the alleged misconduct.  The Complaint fails to allege that Mr. Albanese, who received no bonus from 2011 to 2013, Compl. ¶¶ 46, 173, personally obtained any money or property.  The Section 17(a)(2) claim must be dismissed.

### The Rule 13b2–1 and 13b2–2 Claims Should Be Dismissed Because No False Statements Were Made and Mr. Albanese's Actions Comported with Standards of Reasonableness

The Complaint fails adequately to allege that Mr. Albanese made any misleading statements or omissions to the Company's accountants or auditors. The Complaint also fails adequately to allege that Mr. Albanese knowingly circumvented a system of internal accounting controls. Moreover, even if the internal reports by Company experts had contained misstatements or omissions, the Complaint fails adequately to allege that Mr. Albanese's reliance on them violated "standards of reasonableness," as required to allege a violation of rules under Section 13(b). *SEC v. Espuelas*, 579 F. Supp. 2d 461, 486-87 (S.D.N.Y. 2008).

### The Rule 13a–14 Claim Should Be Dismissed Because the 2011 Annual Report Contained No False Statements and the Complaint Includes Insufficient Mental State Allegations

For the reasons stated above and in the Company's letter, the Complaint fails adequately to plead that the 2011 Annual Report was not accurate or that Mr. Albanese acted with the requisite mental state. As a result, this claim should be dismissed.

### The Aiding and Abetting Claims Should Be Dismissed for Want of Both an Independent Primary Violation and the Required State of Mind

As described above and in the Company's letter, the Complaint fails properly to allege a primary violation against any defendant. The aiding and abetting claims must therefore be dismissed because one cannot have aided and abetted a violation that did not occur. *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012). Moreover, even if the Complaint had adequately alleged a violation by the Company, that violation would depend on the acts and scienter of the individual defendants. Allowing additional aiding and abetting liability in such circumstances would undermine the requirement of an independent primary violation.

The aiding and abetting allegations also fail because, even for primary violations that contain no scienter requirement, aiding and abetting requires at least recklessness. 15 U.S.C. § 78t(e). For the reasons described above and in the Company's letter, the Complaint fails to allege that Mr. Albanese acted with scienter or recklessness.

* * *

For the above reasons, Mr. Albanese intends to file a motion to dismiss the SEC's complaint. We understand that transmittal of this pre-motion letter stays the time to answer or move to dismiss until further order of the Court and that the Court will provide further guidance regarding the briefing schedule for this motion.

Respectfully submitted,

*/s/* Peter J. Romatowski
Peter J. Romatowski (PR-5835)
David Woodcock (*pro hac*)
Kristen A. Lejnieks (*admission pending*)
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
E-mail: pjromatowski@jonesday.com
           dwoodcock@jonesday.com
           klejnieks@jonesday.com

*Counsel for Defendant Thomas Albanese*