

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
100 F. Street N.E.
Washington, D.C. 20549-5977

DIVISION OF ENFORCEMENT

January 23, 2018

<u>Via ECF and Email to Chambers</u>

THE HONORABLE ANALISA TORRES
United States District Judge
U.S. District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007-1312
Torres_nysdchambers@nysd.uscourts.gov

**Re:** *SEC v. Rio Tinto, et al.,* **No. 1:17-cv-07994-AT**
<u>Response to Rio Tinto's January 16 Motion To Dismiss Letter</u>

Dear Judge Torres:

Pursuant to paragraph III.A.ii. of your Honor's Individual Practices in Civil Cases, Plaintiff Securities and Exchange Commission ("SEC") responds to Defendant Rio Tinto's January 16, 2018 letter. All relevant SEC responses to co-defendants Albanese's and Elliott's January 16 letters are incorporated herein.[1]

The SEC rejects Rio Tinto's characterizations of the Complaint's factual allegations. This is not simply a case about Rio Tinto's valuation of Rio Tinto Coal Mozambique ("RTCM"). Rio Tinto, Albanese, and Elliott faced enormous pressure to structure a successful deal in light of the fact that they were responsible for an earlier disastrous multibillion dollar acquisition. Both Albanese (the company's then-CEO) and Elliott (the company's then-CFO) were denied bonuses in 2011 as a result of this financial flop. Rio Tinto bought RTCM for $3.7 billion in April 2011, but assumption after assumption on which RTCM was valued cratered shortly after the acquisition. For example, the government of Mozambique rejected Rio Tinto's proposal to barge coal down the Zambezi River, decimating Rio Tinto's estimates of the amount of coal that could be brought to market (Compl. ¶¶ 2, 75-77). Albanese and Elliott also quickly realized that the ability to transport coal by rail was grossly overstated (Compl. ¶¶ 67, 74, 77, 79-81); that RTCM's coal reserves and resources estimates had to be written down substantially more than

---

[1] The authorities and arguments the SEC offer in this letter should not be construed to limit or waive the SEC's right to cite additional or different authorities or make additional or different arguments if the Court permits the Defendants to file motions to dismiss.

anticipated (Compl. ¶¶ 84-86); that RTCM's capacity to transport coal by rail was only 5% of the capacity originally estimated (Compl. ¶¶ 92-93); and that RTCM's value was tested for impairment when it had not been (Compl. ¶¶ 91-100). Yet Albanese, Elliott, and Rio Tinto concealed the nature and extent of RTCM's crumbling value from the outside auditors, the Board of Directors, and shareholders alike. After RTCM's actual value was finally disclosed—despite Albanese's, Elliott's, and Rio Tinto's fraudulent efforts to conceal the deteriorating value—Rio Tinto ultimately sold RTCM in 2014 for less than 2% of its purchase price (Compl. ¶ 174).

### The Complaint Pleads Fraud with Sufficient Particularity

Rio Tinto mischaracterizes the Complaint's factual allegations. The SEC does not simply allege that Rio Tinto failed to impair RTCM's value. Rather, the Complaint alleges, among other things, that Defendants engaged in a scheme to conceal from its audit committee, its Board of Directors, its outside auditors, and investors material information about RTCM's value, requiring impairment (Compl. ¶¶ 1, 3, 5, 11, 89-102, 115, 118, 122-138, 143, and 153-160). The Complaint also states with particularity the circumstances constituting the fraud alleged against Rio Tinto, specifying fraudulent statements and omissions, identifying who made the fraudulent statements and omissions, describing when and where the fraudulent statements and omissions were made, and explaining why the statements and omissions were fraudulent (Compl. ¶¶ 5-7, 89-100, 102-112, 113-115, 139-144, 148-150, and 160-163). "Rule 9(b) does not require the court to delve into the minutiae of accounting regulations at the pleading stage. On the contrary, at this stage, it is sufficient for plaintiff to allege with specificity defendant's fraudulent actions." *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 495 (S.D.N.Y. 2007). Nevertheless, the SEC has alleged with particularity the applicable accounting provisions, IAS 36 (Compl. ¶¶ 30-34); the applicable Rio Tinto impairment policies (Compl. ¶¶ 37-38); how Albanese and Elliott knew of, and had previously applied, those standards (Compl. ¶¶ 44-47); and how they both subverted Rio Tinto's impairment process, concealing RTCM's materially diminished value (Compl. ¶¶ 91-102, 116-138, and 151-159).

Indeed, many of Rio Tinto's particularity arguments ignore the allegations of an intentional scheme and endeavor to minimize the impact of repeated false assertions regarding RTCM's carrying value by complaining that the company should not have to impair within a few months of acquisition or while feasibility studies were ongoing. But the Complaint alleges that companies are *required* to consider impairment triggers at the end of each reporting period (Compl. ¶¶ 33-38). The Complaint further alleges a litany of impairment triggers that were known to and ignored by the Defendants when they certified financial statements that continued to value RTCM at more than $3 billion (Compl. ¶¶ 98-100, 136-139).

### The Complaint Adequately Alleges Falsity and Materiality

The Complaint clearly alleges falsity of statements and omissions by Albanese and Elliott (Compl. ¶¶ 96, 98, 99, 107, 138, and 145). Rio Tinto's reference to documents not in the record—*Mozambique Rejects Coal Barging Study: Minister*, Reuters (Mar. 1, 2012)—should be ignored as beyond the four corners of the Complaint. *Smith v. Miller*, No. 15-CV-9561 (NSR), 2017 WL 4838322, at *5 (S.D.N.Y. Oct. 23, 2017) ("Courts typically 'may not look beyond the four corners of the complaint in considering a motion to dismiss.'"). Additionally, Rio Tinto's

attempt to argue about the weight of alleged facts must also fail because the Court's charge on a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Nieto v. Village Red Restaurant Corp.*, No. 17 Civ. 2037 (JCF), 2017 WL 4539327, at *2 (S.D.N.Y. Oct. 10, 2017).

Rio Tinto's argument that there are no triable issues of fact regarding materiality both misapplies the law and improperly glosses over numerous allegations in the Complaint. Materiality is a "fact-specific inquiry" that "depends on the significance the reasonable investor would place on the withheld or misrepresented information" and, as such is an issue to be decided by the fact finder. *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988). "On a motion to dismiss, a complaint may not be properly dismissed unless the misstatements are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 390 (2d Cir. 2015) (quotation marks omitted).

Here, Rio Tinto incorrectly asserts that materiality is absent because the impairment "was for only 3% of Rio Tinto's assets." Even assuming *arguendo* that this is a valid metric against which materiality should be measured, this fact alone unquestionably is not dispositive because the Complaint alleges many other facts that raise the issues of materiality. For example, Rio Tinto flatly ignores the SEC's allegation that "[h]ad Rio Tinto properly impaired RTCM, Rio Tinto's net earnings would have been reduced by more than 50 percent at the half-year 2012" (Compl. ¶ 139). No reader could sensibly conclude that the *halving* of Rio Tinto's earnings was "obviously unimportant to a reasonable investor." To the contrary, this allegation by itself raises a question of fact regarding materiality. Nonetheless, there are many other allegations in the Complaint regarding misstatements and omissions, which also easily raise triable questions of fact (Compl. ¶¶ 3-7, 11, 52-53, 59-60, 63-74, 79, 81, 85-86, 89-104). Accordingly, the question of materiality must be decided by a jury.

### **The Complaint Adequately Alleges That Rio Tinto Acted with the Requisite Scienter**

Rio Tinto's argument that the fraud claims should be dismissed for failure to plead *scienter* is wrong because a corporation acts through its employees and agents and here, those employees and agents—including its two top executives—acted with scienter in perpetrating a multi-billion dollar fraud. *See* January 23, 2018, SEC responses to Albanese and Elliott January 16, 2018 letters.

### **The Complaint Adequately Alleges Violations of Section 13(b)**

Whether management's judgments as to impairment of RTCM were or were not reasonable is a question of fact to be determined by a jury, not by the Court, and, therefore, is not an issue to be decided at this stage of the proceedings. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *67 (S.D.N.Y. Oct. 20, 2015) ("'Reasonableness is normally 'not to be decided on a motion to dismiss…'"). *See also* SEC Responses to Albanese's and Elliott's January 16 Letters, regarding dismissal of Rules 13a-14, 13b2-1 and 13b2-2 claims. Further, Rio Tinto's assertion that the SEC is inferring an internal controls violation based on an accounting failure is inaccurate. The Complaint contains detailed

allegations of systemic failures that resulted in the Audit Committee, the Controller and Rio Tinto's outside auditors making decisions without key information.

### The SEC Is Entitled To Seek Disgorgement

Rio Tinto's challenge to the Court's authority to order disgorgement is foreclosed by circuit precedent holding that "'disgorgement' is a well-established remedy in the Second Circuit, particularly in securities enforcement actions." *SEC v. Cavanagh*, 445 F.3d 105, 116 (2d Cir. 2006); *see also SEC v. Palmisano*, 135 F.3d 860, 865 (2d Cir. 1998) (explaining that the disgorgement remedy not only "has long been upheld as within the general equity powers granted to the district court," but "Congress has expressly endorsed that sanction"). Every court to have considered the question has ruled that the Supreme Court's holding in *Kokesh v. SEC*, 137 S. Ct. 1635, 1639 (2017), that disgorgement is a penalty "within the meaning" of the statute of limitations in 28 U.S.C. § 2462 does not undermine this precedent. *See SEC v. Jammin Java Corp.*, No. 2:15-cv-08921, 2017 WL 4286180, at *2-4 (C.D. Cal. Sept. 14, 2017) (holding that "Kokesh is best seen as a decision clarifying the statutory scope of § 2462, rather than one redefining the essential attributes of disgorgement," and ordering disgorgement); *SEC v. Arcturus Corp.*, No. 3:13-cv-4861, 2018 U.S. Dist. LEXIS 4325, at *6 (N.D. Tex. Jan. 10, 2018) ("Unless, and until, current binding authority changes, this Court understands its authority to order disgorgement in SEC proceedings such as this."); *SEC v. Sample*, No. 3:14-CV-1218-B, 2017 WL 5569873, at *2 (N.D. Tex. Nov. 20, 2017) ("*Kokesh* merely held that disgorgement claims are subject to [a] five-year statute of limitations. *Kokesh* had no effect on how courts apply disgorgement principles.") (citation omitted); *see also SEC v. Metter*, No. 16-526-cv, 2017 WL 3708084 (2d Cir. Aug. 29, 2017) (upholding disgorgement award after *Kokesh*); *SEC v. Brooks*, No. 07-cv-61526, 2017 WL 3315137, at *8 (S.D. Fla. Aug. 3, 2017) (*"Kokesh's* holding cannot be plucked from the statutory context that gives it force."). Rio Tinto also contends that "there is 'no evidence' of fruits of an alleged fraud," but this argument ignores the $5.5 billion that Rio Tinto raised in U.S. bond offerings that incorporated materially misleading statements and omissions concerning RTCM's valuation (Compl. ¶ 6). Regardless, it is premature to determine the propriety of remedies at the motion to dismiss stage.

Respectfully submitted,

/s/ *Gregory N. Miller*
Gregory N. Miller
Assistant Chief Litigation Counsel
(202) 551-4469
millergn@sec.gov