

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
100 F. Street N.E.
Washington, D.C. 20549-5977

DIVISION OF ENFORCEMENT

January 23, 2018

<u>Via ECF and Email to Chambers</u>

THE HONORABLE ANALISA TORRES
United States District Judge
U.S. District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007-1312
Torres_nysdchambers@nysd.uscourts.gov

**Re:** *SEC v. Rio Tinto, et al.*, **No. 1:17-cv-07994-AT**
<u>Response to Defendant Albanese's January 16 Motion To Dismiss Letter</u>

Dear Judge Torres:

Pursuant to paragraph III.A.ii. of your Individual Practices in Civil Cases, Plaintiff Securities and Exchange Commission ("SEC") responds to Albanese's January 16, 2018, letter.[1]

The SEC rejects Albanese's characterization of the Complaint's factual allegations. Albanese and Elliott faced enormous pressure to structure a successful deal in light of the fact that they were responsible for an earlier disastrous multibillion dollar acquisition. Both Albanese (the company's then-CEO) and Elliott (the company's then-CFO) were denied bonuses in 2011 as a result of this financial flop. Under Albanese's and Elliott's watch, Rio Tinto acquired RTCM for $3.7 billion in April 2011, but assumption after assumption on which RTCM was valued cratered shortly after the acquisition. For example, the government of Mozambique rejected Rio Tinto's proposal to barge coal down the Zambezi River, decimating Rio Tinto's estimates of the amount of coal that could be brought to the market (Compl. ¶¶ 2 and 75-77). Albanese and Elliott also quickly realized that the ability to transport coal by rail was grossly overstated (Compl. ¶¶ 80-81). Yet Albanese, Elliott, and Rio Tinto concealed the nature and extent of its RTCM's crumbling value from the outside auditors, the Board of Directors, and shareholders alike. After RTCM's actual value was finally disclosed—despite the fraudulent efforts to conceal the deteriorating value by Albanese, Elliott and Rio Tinto—the company ultimately sold RTCM in 2014 for less than 2% of its purchase price (Compl. ¶ 174).[2]

---

[1] All relevant SEC responses to co-defendants Rio Tinto's and Elliott's January 16 letters are incorporated herein.

[2] The authorities and arguments the SEC offer in this letter should not be construed to limit or waive the SEC's right to cite additional or different authorities or make additional or different arguments if

### Albanese Made Actionable Misstatements and Omissions

Although Albanese concedes that the Complaint alleges direct statements by him in investor seminars and in Rio Tinto's 2011 Annual Report, he fails to acknowledge that he also "made" statements in Rio Tinto's March and August 2012 Bond Offering documents that incorporated by reference Albanese's misrepresentations and omissions from the company's 2011 Annual Report (Compl. ¶¶ 93-104, 110, and 148), thus making the offering materials misleading by virtue of Albanese's own misrepresentations and omissions. *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 483 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013) (analyzing for purposes of *Janus* which entity "had ultimate authority over statements made in its SEC filings incorporated by reference in the offering materials"). Albanese's contrary view reduces to a contention that *no one* was liable for fraudulent misrepresentations and omissions foreseeably incorporated by reference into subsequent filings. And, as discussed further below, Albanese further aided and abetted Rio Tinto's violations with respect to the offering materials and the 2012 Half Year Report.

### The Complaint Adequately Alleges That Albanese Acted with *Scienter*

Albanese's argument that the Complaint fails to allege *scienter* does not withstand scrutiny. *Scienter* may be alleged generally. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). The SEC need only allege facts to show that a defendant had both motive and opportunity to commit fraud, or facts indicating conscious misbehavior or recklessness. *See SEC v. Egan*, 994 F. Supp. 2d 558, 564-65 (S.D.N.Y. 2014). Here, the Complaint amply satisfies that standard. Albanese concealed the nature and extent of RTCM's rapidly declining value because, among other reasons, disclosing a second failed multibillion dollar acquisition would undermine perception of Albanese's "ability to pursue the core of Rio Tinto's business model" (Compl. ¶¶ 3 and 46). Albanese also certified the 2011 Annual Report but knew, was reckless in not knowing, or should have known that his certification was "false because the Annual Report continued to value RTCM at more than $3 billion even though there was no viable plan to transport more than a small fraction of the coal that would need to be sold to support that valuation" (Compl. ¶ 96; *see also, e.g.*, Compl. ¶¶ 51, 63, 64, 89, 122, 138, 157, and 167). On August 8, 2012, Albanese materially misrepresented to investors that the work RTCM had been doing over the past 12 months indicated that the company probably had even "more potential in total as [it went] forward," and that the Moatize was truly a world-class basin coal deposit (Compl. ¶ 142), despite knowing as early as December 2011 that the Mozambique government rejected RTCM's barging proposal (Compl. ¶ 77), that RTCM had no new barging proposal (Comp. ¶ 163), and knowing by May 2012 that RTCM's value was negative $680 million (Compl. ¶ 119). Because the Complaint adequately alleges *scienter*, Albanese's aiding-and-abetting argument is likewise meritless.

### The Complaint Adequately Alleges Facts Giving Rise to Scheme Liability

Albanese's argument that he cannot be liable under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) because the Complaint purportedly does not allege acts beyond misstatements that are "inherently deceptive" fails both legally and factually. Legally, there is "no blanket reason . . . to treat the various [anti-fraud] provisions as occupying mutually exclusive territory, such that false-statement

---

the Court permits the Defendants to file motions to dismiss.

cases must reside exclusively within the province of Rule 10b-5(b)." *Lorenzo v. SEC*, 872 F.3d 578, 591 (D.C. Cir. 2017). Factually, even if inherently deceptive conduct beyond misrepresentations were required, the Complaint satisfies that standard. The Complaint alleges that Albanese manipulated the flow of information in such a manner as to undermine the accounting processes at Rio Tinto and generate inherently deceptive conclusions by the Controller's Office and Rio Tinto's auditors. Albanese's repeated acts of inherently deceptive conduct at every stage of the fraud—which plainly contributed to defendants' overall fraudulent scheme—satisfy any pleading standard.

### The Complaint Adequately Alleges That Albanese Violated Section 17(a)(2)

Albanese argues that the SEC's Section 17(a)(2) claim should be dismissed because he did not personally obtain money or property. This argument ignores well-reasoned precedent holding that it is sufficient to obtain "money or property" for a third party, including the defendant's employer. *See, e.g., SEC v. Stoker*, 865 F. Supp. 2d 457, 463 (S.D.N.Y. 2012); *SEC v. Mudd*, 885 F. Supp. 2d 654, 669-70 (S.D.N.Y. 2012). Here, the SEC alleges that Albanese's employer, Rio Tinto raised $3 billion through bond offerings, which incorporated Albanese's false statements regarding RTCM (Compl. ¶¶ 145-150). Albanese also argues that the Section 17(a)(2) claim should be dismissed because he did not receive a bonus. No such bonus, however, is a prerequisite to a finding of liability under Section 17(a)(2); it is enough that he continued to receive his salary. This point was clearly articulated in *SEC v. Tourre,* No. 10–cv–3229 (KBF), 2014 WL 61864, at *4 (S.D.N.Y. Jan. 7, 2014):

> This is simply wrong. Section 17(a)(2) does not require the SEC to show that a banker like Tourre received some sort of additional "fraud bonus" on top of his base salary in order to establish liability; as the statute clearly states, the SEC must prove that Tourre obtained money or property by means of a material misstatement or omission. Tourre ignores the fact that the evidence adduced at trial showed that he was paid by Goldman Sachs for his work during the time period covering the ACl transaction, and that Tourre's work on the ACl transaction was within his job responsibilities.

Accordingly, the SEC has stated a claim under Section 17(a)(2) against Albanese.

### The Complaint Adequately Alleges That Albanese Violated Rule 13b2-1 and 13b2-2

Albanese was provided Controller's papers prior to their submission to Rio Tinto's Audit Committee that contained a series of material misrepresentations and omissions concerning RTCM, yet Albanese failed to correct the papers' false statements nor did he disclose the false statements and omissions to the Audit Committee (Compl. ¶¶ 123-138).

The Complaint alleges that Albanese knowingly circumvented or knowingly failed to implement a system of internal accounting controls or knowingly falsified, or caused to be falsified, books, records, or accounts that Rio Tinto was required to maintain under Section 13(b)(2) of the Exchange Act (Compl. ¶¶ 5, 12, 38, 39, 45, 60, 79, 85, 86, 89-104, 110-112, 122-140, 148, 152-159, and 201).

Moreover, the Complaint alleges that Albanese made or caused to be made materially false or misleading statements to an accountant and/or omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under

which such statements were made, not misleading, to an accountant in connection with (1) any audit, review or examination of the financial statements of the issuer required by the Exchange Act or rules thereunder; or (2) the preparation or filing of any document or report required to be filed with the SEC (Compl. ¶¶ 91-103).

### The Complaint Adequately Alleges That Albanese Violated Rule 13a-14

The Complaint alleges that Albanese knowingly or negligently certified on March 15, 2012, Rio Tinto's Form 20-F for the fiscal year ended December 31, 2011 in accordance with Section 302 of the Sarbanes-Oxley Act of 2002 and Rule 13a-14. The certifications were false because Albanese represented that (1) the report did not contain any untrue statement or omission of a material fact necessary to make the statements not misleading in light of the circumstances in which they were made, and (2) the financial statements in the report fairly presented in all material respects the financial condition and results of the operations of Rio Tinto. (Compl. ¶¶ 96-100). Moreover, Albanese knew that Rio Tinto's Form 20-F contained material misstatements and omissions (Compl. ¶¶ 95-104, 110-112, 148-150, 210-212, and 214-216).

### The Complaint Adequately Alleges Aiding and Abetting

*See* above, under "The Complaint Adequately Alleges that Albanese Acted With *Scienter*."

Respectfully submitted,

/s/ *Gregory N. Miller*
Gregory N. Miller
Assistant Chief Litigation Counsel
(202) 551-4469
millergn@sec.gov