

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
100 F. Street N.E.
Washington, D.C. 20549-5977

DIVISION OF ENFORCEMENT

January 23, 2018

<u>Via ECF and Email to Chambers</u>

THE HONORABLE ANALISA TORRES
United States District Judge
U.S. District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007-1312
Torres_nysdchambers@nysd.uscourts.gov

**Re:**   *SEC v. Rio Tinto, et al.,* **No. 1:17-cv-07994-AT**
<u>**Response to Defendant Elliott's January 16 Motion To Dismiss Letter**</u>

Dear Judge Torres:

Pursuant to paragraph III.A.ii. of your Individual Practices in Civil Cases, Plaintiff Securities and Exchange Commission ("SEC") responds to Elliott's January 16, 2018, letter.[1]

The SEC rejects Elliott's characterizations of the Complaint's factual allegations. Elliott and Albanese faced enormous pressure to structure a successful deal in light of the fact that they were responsible for an earlier disastrous multibillion dollar acquisition. Both Elliott (the company's then-CFO) and Albanese (the company's then-CEO) were denied bonuses in 2011 as a result of this financial flop. Under Elliott's and Albanese's watch, Rio Tinto acquired RTCM for $3.7 billion in April 2011, but assumption after assumption on which RTCM was valued cratered shortly after the acquisition. For example, the government of Mozambique rejected Rio Tinto's proposal to barge coal down the Zambezi River, decimating Rio Tinto's estimates of the amount of coal that could be brought to the market (Compl. ¶¶ 2 and 75-77). Elliott and Albanese also quickly realized that the ability to transport coal by rail was grossly overstated (Compl. ¶¶ 80-81). Yet Elliott, Albanese, and Rio Tinto concealed the nature and extent of its RTCM's crumbling value from the outside auditors, the Board of Directors, and shareholders alike. After RTCM's actual value was finally disclosed—despite Elliott's, Albanese's and Rio Tinto's fraudulent efforts to conceal the deteriorating value—Rio Tinto ultimately sold RTCM in 2014 for less than 2% of its

---

[1] All relevant SEC responses to Co-Defendants Rio Tinto's and Albanese's January 16 letters are incorporated herein.

purchase price (Compl. ¶ 174).[2]

### Elliott Made Material Misstatements or Omissions

The Complaint expressly alleges multiple misstatements and misleading omissions that were made directly by Elliott, including his certification of Rio Tinto's materially misleading 2011 Annual Report and Elliott's direct promotion of RTM to investors, even though he knew that RTCM generated a negative $680 million valuation based on the best available information. (Compl. ¶¶ 99-103, and 161). Moreover, the complaint alleges that Elliott "contributed to and facilitated a series of misleading statements and omissions in Rio Tinto's 2011 Annual Report and financial statements," including that RTCM had a value of more than $3 billion (Compl. ¶¶ 93-104). The Complaint further alleges that the 2011 Annual Report that Elliott signed was incorporated into offering documents for Rio Tinto's March and August 2012 NYSE bond offerings (Compl. ¶¶ 103-104).

Elliott contends that he cannot be liable for any purported misstatements in Rio Tinto's bond offering documents or for its 2012 Half Year Report. However, as discussed further below, Elliott aided and abetted Rio Tinto's violations with respect to the March and August 2012 bond offerings and the 2012 Half Year Report. He is, therefore, directly liable for his own misrepresentations that were incorporated by reference in the offering materials. Indeed, the offering materials were false and misleading by virtue of Elliott's previous misrepresentations and omissions (Compl. ¶¶ 96, 104, 110, 148). *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 483 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013) (analyzing which entity "had ultimate authority over statements made in its SEC filings incorporated by reference in the offering materials"). To hold otherwise, as Elliott urges, reduces to a contention that *no one* is liable for fraudulent misrepresentations and omissions foreseeably incorporated by reference into subsequent filings. Also, in contrast to Elliott's assertion, the Complaint alleges that the 2012 Half Year Report incorporated by reference the 2011 Annual Report (Compl. ¶ 148).

### The Complaint Pleads Fraud with Sufficient Particularity and Adequately Alleges That Elliott Acted With *Scienter*

The Complaint sufficiently alleges that Elliott engaged in a scheme to conceal from Rio Tinto's audit committee, its Board of Directors, its outside auditors, the SEC, and investors material information about RTCM's value, requiring impairment (Compl. ¶¶ 1, 3, 5, 11, 89-102, 115, 118, 122-138, 143, and 153-160). The Complaint also states with particularity the circumstances constituting the fraud, specifying fraudulent statements and omissions, identifying who made the fraudulent statements and omissions, describing when and where the fraudulent statements and omissions were made, and explaining why the statements and omissions were fraudulent (Compl. ¶¶ 5-7, 89-100, 102-112, 113-115, 139-144, 148-150, and 160-163). Here, the Complaint specifically alleges that Elliot concealed RTCM's plummeting value because, among other reasons, disclosing a

---

[2] The authorities and arguments the SEC offer in this letter should not be construed to limit or waive the SEC's right to cite additional or different authorities or make additional or different arguments if the Court permits the Defendants to file motions to dismiss.

second failed multibillion dollar acquisition would undermine perception of Elliott's "ability to pursue the core of Rio Tinto's business model" (Compl. ¶¶ 3, 46). Elliott also certified the 2011 Annual Report, knowing it was "false because the Annual Report continued to value RTCM at more than $3 billion even though there was no viable plan to transport more than a small fraction of the coal that would need to be sold to support that valuation" (Compl. ¶ 96; *see also* Compl. ¶¶ 51, 72, 86, 102, 122, 138, 157, and 167). Because the Complaint adequately alleges *scienter*, Elliott's aiding-and-abetting argument likewise fails.

"Rule 9(b) does not require the court to delve into the minutiae of accounting regulations at the pleading stage. On the contrary, at this stage, it is sufficient for plaintiff to allege with specificity defendant's fraudulent actions." *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 495 (S.D.N.Y. 2007); *SEC v. Egan*, 994 F. Supp. 2d 558, 564-65 (S.D.N.Y. 2014). Nevertheless, the SEC has alleged with particularity the applicable accounting provisions—IAS 36 (Compl. ¶¶ 30-34); the applicable Rio Tinto impairment policies (Compl. ¶¶ 37-38); how Elliott and Albanese knew of, and had previously applied, those standards (Compl. ¶¶ 44-47); and how they both subverted Rio Tinto's impairment process, concealing RTCM's materially diminished value (Compl. ¶¶ 91-102, 116-138, and 151-159).

### The Complaint Adequately Alleges Facts Giving Rise to Scheme Liability

Elliott's argument that he cannot be liable under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) because the Complaint purportedly does not allege acts beyond misstatements that are "inherently deceptive" fails both legally and factually. Legally, there is "no blanket reason . . . to treat the various [anti-fraud] provisions as occupying mutually exclusive territory, such that false-statement cases must reside exclusively within the province of Rule 10b-5(b)." *Lorenzo v. SEC*, 872 F.3d 578, 591 (D.C. Cir. 2017). Factually, even if inherently deceptive conduct beyond misrepresentations were required, the Complaint alleges, among other things, that Elliott manipulated the flow of information in such a manner as to undermine the accounting processes at Rio Tinto and generate inherently deceptive conclusions by the Controller's Office and Rio Tinto's auditors. Elliott's repeated acts of inherently deceptive conduct at every stage of the fraud—which plainly contributed to defendants' overall fraudulent scheme—satisfy any pleading standard.

### The Complaint Adequately Alleges That Elliott Violated Section 17(a)(2)

Elliott argues that the SEC's Section 17(a)(2) claim should be dismissed because he did not personally obtain money or property. This argument ignores well-reasoned precedent holding that it is sufficient to obtain "money or property" for a third party, including the defendant's employer. *See, e.g.*, *SEC v. Stoker*, 865 F. Supp. 2d 457, 463 (S.D.N.Y. 2012); *SEC v. Mudd*, 885 F. Supp. 2d 654, 669-70 (S.D.N.Y. 2012). Here, the SEC alleges that Albanese's employer, Rio Tinto raised $3 billion through bond offerings, which incorporated Albanese's false statements regarding RTCM (Compl. ¶¶ 145-150). Elliott also argues that the Section 17(a)(2) claim should be dismissed because he did not receive a bonus. No such bonus, however, is a prerequisite to a finding of liability under Section 17(a)(2); it is enough that he continued to receive his salary. This point was clearly articulated in *SEC v. Tourre,* No. 10–cv–3229 (KBF), 2014 WL 61864, at *4 (S.D.N.Y. Jan. 7, 2014):

> This is simply wrong. Section 17(a)(2) does not require the SEC to show that a banker like Tourre received some sort of additional 'fraud bonus' on top of his base salary in order to establish liability; as the statute clearly states, the SEC must prove that Tourre obtained money or property by means of a material misstatement or omission. Tourre ignores the fact that the evidence adduced at trial showed that he was paid by Goldman Sachs for his work during the time period covering the ACl transaction, and that Tourre's work on the ACl transaction was within his job responsibilities.

Accordingly, the SEC has stated a claim under Section 17(a)(2) against Elliott.

### The Complaint Adequately Alleges That Elliott Violated Section 13(b)(5) and Rules 13a-14 and 13b2-2

Elliott reviewed Controller's papers prior to their submission to Rio Tinto's Audit Committee that contained a series of material misrepresentations and omissions concerning RTCM, yet Elliott failed to correct the papers' false statements nor did he disclose the false statements and omissions to the Audit Committee (Compl. ¶¶ 123-138).

The Complaint alleges that Elliott knowingly circumvented or knowingly failed to implement a system of internal accounting controls or knowingly falsified, or caused to be falsified, books, records, or accounts that Rio Tinto was required to maintain under Section 13(b)(2) of the Exchange Act (Compl. ¶¶ 5, 12, 38, 39, 45, 60, 79, 85, 86, 89-104, 110-112, 122-140, 148, 152-159, and 201). Moreover, the Complaint alleges that Elliott made or caused to be made materially false or misleading statements to an accountant and/or omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with (1) any audit, review or examination of the financial statements of the issuer required by the Exchange Act or rules thereunder; or (2) the preparation or filing of any document or report required to be filed with the SEC (Compl. ¶¶ 91-103).

The Complaint alleges that Elliott knowingly or negligently certified on March 15, 2012 Rio Tinto's Form 20-F for the fiscal year ended December 31, 2011 in accordance with Section 302 of the Sarbanes-Oxley Act of 2002 and Rule 13a-14 (Compl. ¶ 96). The certifications were false because Elliott represented that (1) the report did not contain any untrue statement or omission of a material fact necessary to make the statements not misleading in light of the circumstances in which they were made, and (2) the financial statements in the report fairly presented in all material respects the financial condition and results of the operations of Rio Tinto (Compl. ¶¶ 96-100). Moreover, the Complaint more than adequately alleges that Elliott knew Rio Tinto's Form 20-F contained material misstatements and omissions. (Compl. ¶¶ 95-104, 110-112, 148-150, 210-212, and 214-216).

### The Complaint Adequately Alleges Aiding and Abetting

*See* above, under "The Complaint Pleads Fraud With Sufficient Particularity and Adequately Allege that Elliott Acted With *Scienter*."

- 4 -

Respectfully submitted,

/s/ *Gregory N. Miller*
Gregory N. Miller
Assistant Chief Litigation Counsel
(202) 551-4469
millergn@sec.gov