

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 F. Street N.E.
Washington, D.C. 20549-5977

May 10, 2018

<u>Via ECF and Email to Chambers</u>

THE HONORABLE ANALISA TORRES
United States District Judge
U.S. District Court for the
   Southern District of New York
500 Pearl Street
New York, NY  10007-1312
Torres_nysdchambers@nysd.uscourts.gov

**Re:**   *SEC v. Rio Tinto, et al.*, No. 1:17-cv-07994-AT
<u>Response to Defendants' May 9 Supplemental Authority Letter (Doc. 86)</u>

Dear Judge Torres:

   Plaintiff Securities and Exchange Commission respectfully submits this letter in response to Defendants' May 9, 2018 letter advising the Court of a recent, unpublished Second Circuit summary order.  *See* Doc. 86 ("May 9 Letter"); 2d Cir. Local Rule 32.1.1(a).  In *Martin v. Quartermain*, No. 17-2135, 2018 WL 2024719 (2d Cir. May 1, 2018), the Second Circuit affirmed dismissal of a Section 10(b) claim brought by private plaintiffs.  The facts in *Martin*, which revolve around a *consultant's opinion*, stand in sharp contrast to the allegations at issue in this dispute, which involve *Defendants' own knowledge of facts*.

   *Martin* concerned a claim by a putative class action that a company "artificially inflated the value of its stock by making materially false and misleading statements about" a program designed to sample and therefore estimate the amount of gold in a mining site.  2018 WL 2024719, at *2.  In that case, the company acquired a gold-mining site and "hired several independent experts to assist with various aspects of the Project's development."  *Id.* at *1.  The company retained Snowden Mining Industry Consultants to estimate the amount of gold the project could produce.  *Id.*  Snowden, in turn, recommended that the company "mine a sample of the Project to confirm the estimate before undertaking full-scale mining."  *Id.*  The company also hired Strathcona Mineral Services Ltd. "to oversee and report on a sampling program."  *Id.*  Strathcona "would report on the overall program at its conclusion," not before.  *Id.*  "In a series of public filings and press releases" issued in the months after the sampling program had begun, the company "reported favorable results from the sampling program and expressed continued faith in Snowden's estimates."  *Id.*  After Strathcona resigned from the project, the company disclosed Strathcona's "opinion"—expressed before the sampling program had concluded—that the company's "previous public statements suggesting that Snowden's estimates remained viable were 'erroneous and misleading.'"  *Id.* at *2.

*Martin* in no way "confirms that the SEC has failed adequately to plead that Defendants subjectively disbelieved their alleged statements concerning" Rio Tinto Coal Mozambique's ("RTCM's") valuation. May 9 Letter, at 1. In *Martin*, "all the relevant allegations in the complaint suggest[ed] that, despite Strathcona's contrary opinion," the company actually "believed that Snowden's estimates would prove accurate." 2018 WL 2024719, at *2. Moreover, Strathcona's opinion was premature because, "[t]o the extent that Strathcona was to weigh in on" the company's estimates, "it was to do so at the conclusion of the sampling program." *Id.* And both the company as well as Snowden "expressed concerns" that "aspects of the sampling program on which Strathconoa relied in forming its opinion were 'flawed.'" *Id.*

Here, Albanese and Elliott were confronted with objective negative facts—as opposed to the competing opinions of consultants at issue in *Martin*—which they consciously decided to withhold from investors. The Complaint specifically alleges that Albanese and Elliott continued to promote RTCM after *they themselves knew* that the best available information indicated a negative $680 million valuation for RTCM rather than a valuation of several billion dollars, and continued to promote transportation options that were not viable due to known hydrological constraints of the Zambezi River or had either been rejected without recourse by the local government (barging) or rejected due to lack of funds (new rail). *See* Compl. ¶¶ 68-74, 77, 119, 120, 134, 136, 141, 155, 162; *see generally* SEC Opp. 5-8, 31-33 (Doc. 80) (summarizing allegations that Defendants knew that RTCM had lost the majority of its transportation capacity by December 2011, knew that it had lost at least half of its anticipated coal resources and reserves by January 2012, and knew that their own valuation models were generating negative valuations by May 2012, but nonetheless sought to conceal those facts from Rio Tinto's Board of Directors, its Audit Committee, its independent auditors, and the market). Defendants' own conduct and scienter defeat any reliance on *Martin*.

Nor does *Martin* "confirm[ ] that the SEC has failed adequately to plead that Defendants omitted information that made their alleged misstatements misleading to a reasonable investor." May 9 Letter, at 2. As Defendants' own letter acknowledges, *Martin* involved "a *consultant's* pessimistic assessment." *Id.* (emphasis added). By contrast, this case concerns allegations that Defendants acted with scienter in omitting critical, negative developments at RTCM that would have demonstrated that RTCM's $3 billion valuation was pure fiction. Defendants failed to disclose that fiction in, for example, Rio Tinto's 2011 Annual Report. *See* Compl. ¶ 69. And that fiction does not disappear merely because Defendants operated in a risky industry; Defendants concealed *known* mining impediments that rendered Rio Tinto's 10-figure investment valueless. To put it mildly, a reasonable shareholder would have considered those developments significant to any investment decision. Here again, Defendants' own conduct and scienter defeat any reliance on *Martin*.

Defendants' effort to rely on an unpublished summary order that bears no factual resemblance to the allegations in this case speaks volumes about the merits of their motion to dismiss. For the reasons stated in the Commission's opposition to that motion, Defendants' own letter apprising this Court of *Martin*, and the Commission's discussion herein, Defendants' motion to dismiss should be denied.

- 3 -

        Respectfully submitted,

        /s/ Martin V. Totaro
        Martin V. Totaro
        Senior Counsel
        Securities and Exchange Commission
        100 F Street, N.E.
        Washington, D.C.  20549-9040
        (202) 551-7962
        totarom@sec.gov


cc: All counsel of record (via ECF)