UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> RIO TINTO PLC, RIO TINTO LIMITED, THOMAS ALBANESE, and GUY ROBERT ELLIOTT, <br><br> Defendants. | Case No. 1:17-cv-7994-AT-DCF |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR ISSUANCE OF LETTERS OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO OBTAIN EVIDENCE**

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| FACTUAL BACKGROUND | 3 |
| ARGUMENT | 6 |
| I. THE COURT SHOULD ISSUE LETTERS OF REQUEST TO THE UNITED KINGDOM, AUSTRALIA, AND SOUTH AFRICA UNDER THE HAGUE CONVENTION | 6 |
| II. THE COURT SHOULD ALSO ISSUE A LETTER OF REQUEST TO SOUTH AFRICA UNDER THE SOUTH AFRICAN FOREIGN COURTS EVIDENCE ACT | 11 |
| CONCLUSION | 12 |

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*First American Corp. v. Price Waterhouse LLP*,
 154 F.3d 16 (2d Cir. 1998) ............................................................................................ 7, 11

*Himelsein v. Absa Bank Ltd.*,
 No. 13-cv-1830, 2014 WL 12594457 (C.D. Cal. Feb. 21, 2014) .................................... 7, 10

*Joseph v. Gnutti Carlo S.p.A.*,
 No. 15-cv-8910, 2016 WL 4083433 (S.D.N.Y. July 25, 2016) ............................................ 7

*Laydon v. Mizuho Bank, Ltd.*,
 183 F. Supp. 3d 409 (S.D.N.Y. 2016) ................................................................................ 10

*Metso Minerals Inc. v. Powerscreen Int'l Distrib. Ltd.*,
 No. cv-06-1446, 2007 WL 1875560 (E.D.N.Y. June 25, 2007) ....................................... 7, 10

*Milliken & Co. v. Bank of China*,
 758 F. Supp. 2d 238 (S.D.N.Y. 2010) .................................................................................. 6

*Societé Nationale Industrielle Aerospatiale v. U.S. District Court*,
 482 U.S. 522 (1987) .................................................................................................. 6, 7, 11

*Tansey v. Cochlear Ltd.*,
 No. 13-cv-4628, 2014 WL 4676588 (E.D.N.Y. Sep. 18, 2014) ........................................ 7, 10

*Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*,
 254 F. Supp. 2d 469 (D. Del. 2003) .................................................................................. 7, 10

STATUTES

28 U.S.C. § 1781 ................................................................................................................... 2, 7

OTHER AUTHORITIES

6-28 James Wm. Moore et al.,
 Moore's Federal Practice (2018) ......................................................................................... 7

Hague Convention of March 18, 1970, on the Taking of Evidence Abroad in Civil
 or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444 ..................................... *passim*

South African Foreign Courts Evidence Act, 1962 .................................................................. 11

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR ISSUANCE OF LETTERS OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO OBTAIN EVIDENCE

Defendants Rio Tinto plc, Rio Tinto Limited (together "Rio Tinto"), Thomas Albanese, and Guy Elliott respectfully submit this Memorandum of Law in Support of Defendants' Motion for Issuance of Letters of Request for International Judicial Assistance. The motion seeks to compel the following entities to produce documents and where relevant provide testimony in connection with the above-captioned case: PricewaterhouseCoopers UK ("PwC UK"), PricewaterhouseCoopers Australia ("PwC Australia"), and PricewaterhouseCoopers South Africa ("PwC South Africa") (collectively, the "PwC firms"). Defendants have conferred with the Securities and Exchange Commission ("SEC") regarding this Motion and the SEC does not oppose this request.

Defendants seek to obtain documents and/or testimony from the PwC firms, which are foreign, non-party witnesses located in the United Kingdom, Australia, and South Africa and which served as Rio Tinto's independent auditor during the relevant period in this litigation. One of the SEC's key theories in this case is that Defendants facilitated an accounting fraud by concealing information from the PwC firms, which the SEC alleges issued unqualified audit opinions on Rio Tinto's financial statements only because they were not aware of the allegedly concealed information. At trial, Defendants will show that they did not conceal any relevant information from the PwC firms. The PwC firms had an accurate picture of the status of RTCM and made an informed decision, consistent with the relevant accounting and professional standards, to issue unqualified audit opinions—opinions which were correct and have never been withdrawn, just as Rio Tinto's financial statements have never been restated. The PwC firms' awareness of the allegedly concealed information is critical to defending against the SEC's claims in this action.

Although the SEC's case is premised on the alleged concealment of information from the PwC firms, the SEC did not obtain certain basic information from the PwC firms during the course of its nearly five-year investigation. Thus, although the SEC's Complaint repeatedly alleges that Defendants concealed information from the PwC firms (*see, e.g.*, Compl. ¶¶ 3, 5, 92, 122, 129), the SEC, Defendants, and the Court lack an evidentiary record that would allow the parties to fairly evaluate these contentions. Through these requests for international judicial assistance, Defendants seek this crucial evidence. Because the PwC firms reside in foreign states, they are beyond the jurisdiction of the Court to issue subpoenas to compel production of the evidence sought. Therefore, the proper procedure is for the Court to issue a Letter of Request directed toward the appropriate authorities having jurisdiction over civil causes in the United Kingdom, Australia, and South Africa. The letters to authorities in all three countries would be issued pursuant to 28 U.S.C. § 1781, and in accord with the Hague Convention of March 18, 1970, on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Convention"); the letter to authorities in South Africa would, alternatively, invoke the South African Foreign Courts Evidence Act. Defendants request that the Court issue the Letters of Request attached to the Lejnieks Declaration as Exhibit 1 (UK), Exhibit 2 (Australia), Exhibit 3 (South Africa—Hague Convention), and Exhibit 4 (South Africa—Foreign Courts Evidence Act), affix the seal of the Court to them, and transmit the Letters of Request to the proper authorities in the United Kingdom, Australia, and South Africa.

Defendants therefore move this Court for Orders in the form annexed to the Lejnieks Declaration as Exhibits 1–4 to compel PwC UK, located at 1 Embankment Place, London, WC2N 6RH, United Kingdom; PwC Australia, located at 480 Queen Street, Brisbane QLD 4000, Australia; and PwC South Africa, located at 4 Lisbon Lane, Waterfall City, Juskei View 2090 Private Bay X36, Sunninghill 2157, South Africa, to produce the requested documents and

to provide testimony upon oral examination to be used during trial as set forth in the Letters of Request. The grounds for this motion are that the PwC firms are not parties to this action; that the testimony and documents requested are relevant and material to the issues involved herein; and that compulsory process is required to compel the PwC firms to provide the testimony and to produce documents.[1]

## FACTUAL BACKGROUND

This action was commenced by the SEC on October 17, 2017. The SEC alleges that Defendants violated United States securities law in connection with Rio Tinto's 2011 acquisition of Rio Tinto Coal Mozambique ("RTCM") and the subsequent impairment of RTCM's assets. Defendants deny all liability, and contend that Rio Tinto's accounting treatment of RTCM was appropriate and that Defendants' statements were not false or misleading.

PwC is an international network of independent member firms that are separate legal entities. PwC member firms and their predecessor entities have served as independent auditors for Rio Tinto PLC and Rio Tinto Limited for over 60 years. PwC UK, PwC Australia and PwC South Africa each performed work for Rio Tinto during the relevant time period and related to the allegations in the SEC's Complaint.

In particular, PwC UK served as independent auditor for Rio Tinto plc (a company listed in London and New York) during the period at issue in the litigation. (*See* Lejnieks Decl. Ex. 6 at 15:13–16:22.) PwC UK prepared various reports for Rio Tinto's Audit Committee that included information on RTCM. (*Id.* at 27:1–28:21.) PwC UK was ultimately responsible for

---

[1] At this time, Defendants seek documents from all three PwC firms, but testimony only from PwC Australia and PwC South Africa. Defendants do not currently believe that the Hague process is necessary to secure testimony from PwC UK.

Further, the parties acknowledge that the documents and testimony produced through these requests will be subject to this Court's April 2, 2018 Protective Order (ECF No. 82).

3

auditing Rio Tinto's consolidated financial statements, but referred audit work for Rio Tinto's business operations in other countries to PwC member firms in those countries. (*Id.* at 15:13–16:22.) Those PwC member firms, in turn, prepared reporting packages for PwC UK to use when preparing its final audit opinions. PwC UK stored these reporting packages—as well as audit work papers that it prepared, documents that Rio Tinto provided to it, and other audit evidence—in a central electronic file. That file serves as the basis for PwC UK's conclusions concerning Rio Tinto's financial statements.

PwC Australia served as the independent auditor for Rio Tinto Limited (Rio Tinto's Australian-listed entity). (*See* Lejnieks Decl. Ex. 5 at 65:14–16.) It also provided reporting packages to PwC UK in connection with PwC UK's audit of Rio Tinto plc. In Fiscal Years 2011 and 2012, PwC Australia provided accounting advice to Rio Tinto regarding Rio Tinto's acquisition of the assets of RTCM—including advice about the valuation of the assets, the allocation of the purchase price, and the initial and continuing appropriateness of an independent valuation of RTCM's mineral deposits and other assets. (Lejnieks Decl. Ex 6 at 22:8–23.) The PwC Australia team regularly communicated about these issues with Rio Tinto, other PwC member firms, and Deloitte Australia (a separate auditing firm also retained by Rio Tinto).

Finally, PwC South Africa likewise provided services to Rio Tinto during the period at issue in this litigation. For example, Michal Kotze—PwC's Africa Energy, Utilities and Resource Leader—facilitated communications among PwC UK, PwC Australia, and other PwC member firms that prepared reporting packages for PwC UK. (*Id.* at 23.) Other PwC South Africa personnel also provided services to Rio Tinto and its subsidiaries, and several legal entities related to RTCM were incorporated in South Africa.

It is undisputed that the PwC firms possess information relevant to this litigation. The SEC sought and received documents from PwC UK and PwC Australia during its investigation;

4

it took testimony from two PwC UK witnesses, Jonathan Lambert and Richard Hughes, during its investigation; and it has indicated its intention to depose those same two witnesses in the civil litigation. The Defendants have closely reviewed the documents produced by PwC UK and PwC Australia to the SEC, and it appears to the Defendants that the SEC has not requested the production of many relevant documents.

Some deficiencies are obvious. Most notably, PwC's internal email correspondence is entirely absent from the SEC's productions. Such email correspondence would show what information was or was not available to PwC auditors during the relevant period, and is important evidence with respect to one of the SEC's core allegations—that Rio Tinto concealed information from its independent auditors. *See* Compl. ¶¶ 122–23, 129. Without these emails—not to mention other categories of missing PwC documents, such as electronic meeting invitations and PwC minutes of meetings with lower-level employees of Rio Tinto business units—a significant gap remains in the evidentiary record.

Other problems emerge from the review of specific documents.[2] The limited documents obtained from the SEC indicate that the prior requests were incomplete with respect to key issues. For example, several documents contain hyperlinks to materials that are likely relevant and do not otherwise appear in the productions. These missing materials include, among other things, the instructions to auditors regarding specific Rio Tinto entities, including the "RTCM instructions" for Rio Tinto's 2012 Year End review.

---

[2] This motion focuses on substantive deficiencies in PwC's productions to the SEC. We also note, however, that the PwC UK production appears to contain inaccurate metadata. The PwC UK document metadata reflects "Document Date[s]" between 2015 and 2017. Yet the events and communications reflected in the audit documents occurred between 2011 and 2013. It seems likely that the metadata reflects the dates that the SEC received these documents, rather than the dates that the documents were created or last modified by PwC UK.

5

Moreover, while testimony from PwC UK partner Jonathan Lambert identified PwC South Africa as the liaison for PwC Mozambique in performing the "carrying value assessment" of RTCM (*see* Lejnieks Decl. Ex. 6 at 22:20–23:25), the SEC apparently did not pursue documents from PwC South Africa during the investigation.

Defendants have attempted to fill the gaps above without involving the court. Counsel for Defendants requested additional documents from the three PwC firms. Each has declined to produce these documents voluntarily. (Lejnieks Decl. Exs. 7–9.)

The SEC alleges in part that information was concealed from PwC member firms in connection with Rio Tinto's financial reporting relating to RTCM during the 2011 year end and 2012 half year reporting periods. It is essential that Defendants be afforded the opportunity to assess this claim by taking evidence of the PwC firms' knowledge in the form of documents and testimony from the relevant individuals at the PwC firms that actually performed audit work relating to RTCM. Thus, the PwC firms are necessary witnesses for trial in this litigation.

## ARGUMENT

**I. THE COURT SHOULD ISSUE LETTERS OF REQUEST TO THE UNITED KINGDOM, AUSTRALIA, AND SOUTH AFRICA UNDER THE HAGUE CONVENTION**

The Hague Convention allows judicial authorities in one signatory country to obtain evidence located in another signatory country for use in judicial proceedings. *See* Hague Convention Art. 1. The Convention "is designed to" promote "international judicial cooperation" and to "minimize … difficulties … [in] securing evidence abroad." *Societé Nationale Industrielle Aerospatiale v. U.S. District Court*, 482 U.S. 522, 532 (1987). Without the Convention, litigants in the United States would often be left unable to obtain information that is "vital" to its case. *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 247 (S.D.N.Y. 2010). The United States, the United Kingdom, Australia, and South Africa are all contracting

states under the Hague Convention. *See* 28 U.S.C. § 1781 (United States); *Joseph v. Gnutti Carlo S.p.A.*, No. 15-cv-8910, 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016) (United Kingdom); *Tansey v. Cochlear Ltd.*, No. 13-cv-4628, 2014 WL 4676588, at *2 (E.D.N.Y. Sep. 18, 2014) (Australia); *Himelsein v. Absa Bank Ltd.*, No. 13-cv-1830, 2014 WL 12594457, at *4 (C.D. Cal. Feb. 21, 2014) (South Africa).

Hague Convention procedures "are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention." *Societé Nationale Industrielle Aerospatiale*, 482 U.S. at 541. To invoke the Convention, a litigant must "demonstrat[e] that proceeding in this manner is 'necessary and appropriate.'" *Metso Minerals Inc. v. Powerscreen Int'l Distrib. Ltd.*, No. cv-06-1446, 2007 WL 1875560, at *2 (E.D.N.Y. June 25, 2007) (collecting authorities). "That burden is not great, however, since the [Hague] 'Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention.'" *Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) (quoting *Aerospatiale*, 482 U.S. at 541). Once a litigant makes the necessary showing, the United States court issues "a Letter of Request … to the competent authority in the foreign state." *Tulip Computs.*, 254 F. Supp. 2d. at 472; *see* 6-28 James Wm. Moore et al., Moore's Federal Practice, § 28.11[2] (2018) (explaining that Letters of Request are the most common method for obtaining documents and testimony in foreign countries). The foreign authority then carries out the remaining steps in securing the requested evidence, in accordance with the foreign nation's own laws.

In this instance, the issuance of a Letter of Request is "necessary and appropriate." *First*, the evidence is directly relevant to this lawsuit. *See Tulip Computs.*, 254 F. Supp. 2d at 474 (explaining that pertinent factors include the "interes[t] of the parties" in obtaining the evidence); *Metso Minerals*, 2007 WL 1875560, at *3 (issuing a Letter of Request because a party

"demonstrated that the requested testimony and documents are relevant to the instant litigation"). The SEC's Complaint includes numerous allegations about Defendants' interactions with Rio Tinto's independent auditors, the PwC firms. Neither Defendants nor the Court can meaningfully evaluate these charges without an opportunity to take evidence from those firms.

To start, the Complaint alleges that Defendants concealed information from the PwC firms. According to the SEC, Defendants "kept key facts … from … Rio Tinto's independent auditors." Compl. ¶ 122. Defendants are also alleged to have made "a series of material misrepresentations and omissions concerning RTCM" at a "meeting attended by … Rio Tinto's independent auditors." Compl. ¶ 123–24. Similarly, Defendants allegedly failed to "take any steps to inform … Rio Tinto's independent auditors of … significant adverse developments." Compl. ¶ 129. Evaluating these charges requires taking evidence from PwC. For instance, PwC's internal emails and drafts will help show what information PwC did or did not have. And minutes of PwC's meetings with business units and with RTCM leaders can help show the full scope of the information that PwC possessed.

The Complaint also alleges that Defendants made "a series of material misrepresentations" in "the First Controller's Paper." Compl. ¶ 124. According to the SEC, "Elliott reviewed a draft of the First Controller's Paper … before it was submitted to … Rio Tinto's independent auditors." Compl. ¶ 128. Evidence from the PwC firms could shed light on the timing of PwC's review of this paper. It could also show whether the PwC firms reviewed any informal drafts of this paper.

The Complaint likewise alleges that the Defendants made misleading statements in the "Second Controller's Paper." Compl. ¶ 135. The SEC claims that the Second Controllers' Paper included PwC's "concurrence with the conclusion that there were no impairment indicators," but that "Albanese and Elliott … should have known that the independent auditors had based their

concurring opinion on incomplete and misleading information." Compl. ¶¶ 134–35. Evidence from PwC would establish whether PwC had any internal discussions regarding these impairment indicators, how detailed the discussions were, and whether the discussions were based on complete and accurate information.

So too, the Complaint alleges that PwC did not independently recognize impairment indicators "because they were relying on the First and Second Controller's Papers." Compl. ¶ 138. Again, internal emails from PwC would reveal whether that allegation is true. These internal discussions would show whether PwC did in fact independently consider any potential impairment indicators, as well as whether it did in fact rely on the First and Second Controllers' Papers.

These are just a few examples. Together, they demonstrate that Defendants will have a meaningful opportunity to defend themselves against these charges only if they can obtain documents and testimony from these PwC firms, which are central witnesses in this litigation. And there can be no reasonable dispute that these firms are in possession of the evidence sought. The SEC's document productions establish that PwC UK and PwC Australia have not yet produced numerous documents that go directly to key issues in the case. Similarly, the testimony from two PwC UK partners makes clear that much of the interaction between PwC and Rio Tinto business units involved personnel at PwC network firms such as PwC South Africa and PwC Australia, and so far as Defendants are aware, PwC South Africa has yet to produce any documents notwithstanding its key role in the audits. As the record stands, the court and the litigants have an incomplete and potentially misleading picture of the interaction between Rio Tinto and the PwC network firms. Only documents and testimony from the PwC personnel who actually interacted with Rio Tinto's business units will suffice to reveal the scope of the information provided by Rio Tinto to its auditors.

*Second*, a Letter of Request is a "necessary and appropriate" means for obtaining the evidence. *See Tulip Computs.*, 254 F. Supp. 2d at 456 ("factors restricting the availability of the evidence … weigh in favor of proceeding under the Hague Convention"); *Metso Minerals*, 2007 WL 1875560, at *2 (issuing a Letter of Request where "the procedures of the Hague Evidence Convention may be the only means by which the requested discovery may be obtained"). Defendants cannot secure this evidence from the PwC firms through voluntary cooperation; the firms have declined to turn over the requested evidence in the absence of a court order. (*See* Lejnieks Decl. Exs. 7–9.) Defendants also cannot secure this evidence from the PwC firms through an order of this Court; because the PwC firms are neither parties to this case nor United States entities. *See Metso Minerals*, 2007 WL 1875560, at *3. The only option remaining is to request the assistance of the foreign courts.

*Finally*, a Letter of Request is "necessary and appropriate" because Defendants' requests comply with applicable limitations on Hague process. Defendants acknowledge that, in participating in the Hague Convention, the United Kingdom, Australia, and South Africa all prohibit the Convention's use to obtain pretrial discovery in those countries. In accordance with those restrictions, a Letter of Request may seek only specific testimony and particular documents for use at trial. *See, e.g, Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 422 (S.D.N.Y. 2016) (United Kingdom); *Tansey*, 2014 WL 4676588, at *3 (Australia); *Himelsein*, 2014 WL 12594457, at *4 (South Africa). Importantly, however, "[w]hether the Letter of Request will ultimately be executed in light of the [foreign nation's rules] . . . is best left to the judicial authorities in the [foreign nation]." *Metso Minerals*, 2007 WL 1875560, at *3 (collecting authorities).

Defendants' proposed Letters of Request are narrowly tailored to comply with restrictions regarding pretrial discovery. As described above, the PwC firms were involved in

10

various aspects of the independent audits of Rio Tinto, including with respect to RTCM. The Letters of Request are limited in that they seek only to obtain information in the form of documents and testimony that are highly relevant to those activities for use as evidence at trial.

## II. THE COURT SHOULD ALSO ISSUE A LETTER OF REQUEST TO SOUTH AFRICA UNDER THE SOUTH AFRICAN FOREIGN COURTS EVIDENCE ACT

The Hague Convention is far from the sole means of obtaining evidence located abroad. As the Supreme Court has explained, "the Convention was intended as a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad." *Societé Nationale Industrielle Aerospatiale*, 482 U.S. at 535; *see also First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2d Cir. 1998) ("The Hague Convention is not the exclusive means for obtaining discovery from a foreign entity. Nor is the Convention necessarily the means of first resort") (citation omitted). Instead, a district court may use whichever procedure is appropriate in light of the "particular facts" of the case and the "likelihood that resort to [the] procedures will prove effective." *Id.* at 545. As to South Africa, there is an additional available means of obtaining evidence apart from the Hague Convention: issuing a letter requesting that the South African court appoint a commissioner to take evidence in accordance with South African law. Under the South African Foreign Courts Evidence Act, if a foreign court "is desirous of obtaining evidence … of any witness" in connection with "any civil or criminal proceedings," South African courts may "grant an order for the examination of … witnesses before a [commissioner] named in such order." Foreign Courts Evidence Act, 1962, § 2(1). We respectfully request that the Court authorize a letter of request for evidence from South Africa pursuant to the South African Foreign Courts Evidence Act.

## CONCLUSION

For the foregoing reasons, the Defendants' application for Letters of Request in order to obtain evidence in the possession of the PwC firms should be granted. Defendants request that the Court approve and sign the accompanying Letters of Request, place the Court's seal on them, and transmit them to the appropriate Central Authority in the United Kingdom, Australia, and South Africa as described in the Letters of Request.

| Dated: July 31, 2018 | Respectfully submitted, |
|---|---|
| | JONES DAY |
| | /s/ Kristen A. Lejnieks |
| David Woodcock (*pro hac vice*)<br>2727 North Harwood Street<br>Dallas, TX 75201<br>(214) 969-3681 | Kristen A. Lejnieks<br>Peter J. Romatowski<br>51 Louisiana Avenue, NW<br>Washington, DC 20001<br>(202) 879-3939<br>kalejnieks@jonesday.com |

*Attorneys for Defendant Thomas Albanese*

MORVILLO, ABRAMOWITZ, GRAND,
IASON & ANELLO, P.C.

/s/ Jonathan S. Sack

Jonathan S. Sack
Jeremy H. Temkin
565 Fifth Avenue
New York, NY 10017
(212) 880-9410
jsack@maglaw.com

*Attorneys for Defendants Rio Tinto PLC and Rio Tinto Limited*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

/s/ Walter G. Ricciardi

Theodore V. Wells
Walter G. Ricciardi
Geoffrey R. Chepiga
Livia Fine
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
wricciardi@paulweiss.com

*Attorneys for Defendant Guy Robert Elliott*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing to be served by CM/ECF this 31st day of July, 2018 upon all counsel:

/s/ Kristen A. Lejnieks
Kristen A. Lejnieks
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
kalejnieks@jonesday.com

*Attorney for Defendant Thomas Albanese*