

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, D.C. 20549

November 13, 2019

<u>Via ECF</u>

The Honorable Debra C. Freeman
United States Magistrate Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   ***SEC v. Rio Tinto, et al.*, No. 1:17-cv-07994-AT-DCF**
      **<u>Joint Status Letter</u>**

Dear Judge Freeman:

Pursuant to this Court's July 2, 2019 Order (ECF No. 160), the parties respectfully submit this joint status letter to update the Court.  No schedule for expert discovery or summary judgment briefing has been entered in this case, and after meeting and conferring, the parties seek the Court's ruling on the scope and timing of expert discovery.

I.      <u>Fact Discovery</u>

Since the last joint status letter submitted on June 14, 2019 (ECF No. 159), the parties have completed the remaining depositions of fact witnesses, including the depositions of Defendants Thomas Albanese and Guy Elliott.  With the last fact deposition having been taken on October 11, 2019, fact discovery has concluded, other than serving and answering contention interrogatories.  The parties exchanged contention interrogatories on November 8, 2019, and have agreed to serve responses to those interrogatories by December 6, 2019.[1]

II.     <u>Potential Discovery on Amended Pleading</u>

Briefing on the SEC's Motion for Leave to Amend the Complaint was completed on July 29, 2019.  Should the Court permit the SEC to file an amended complaint over Defendants' objections, and should the amended complaint raise new factual issues, altered allegations, or any matter that requires the discovery of additional facts, the parties agree that Defendants may request additional time for fact discovery.  The SEC reserves its right to object to a request for additional time for discovery depending on the circumstances.

On October 2, 2019, the SEC requested that Defendants proffer the type of discovery and amount of time for discovery they would seek if the pending Motion for Leave to Amend is granted.  The SEC stated that "[i]t would not be fair or efficient to require us to produce opening expert reports in the event our motion to amend is granted," but that "if the additional discovery

---

[1] On March 30, 2018 and March 29, 2019, Defendants served certain interrogatories that the SEC objected to as "premature" contention interrogatories.  The SEC has agreed to respond to these interrogatories by December 6, 2019.

Hon. Debra Freeman
Page 2

period [Defendants] may seek is limited in scope, or if the witnesses are not relevant to our experts, it may be possible to agree to an expert discovery schedule now."

On October 3, 2019, Defendants responded that "[t]he parties do not know whether the SEC's motion for leave to file an amended complaint will be granted in any part" and that "[r]ather than try to build out a schedule based on hypothetical discovery following a hypothetical new complaint, the parties should press forward based on the operative complaint in the action as proposed in the draft letter and draft scheduling order we sent you." Defendants added that "[i]f the SEC's motion to amend is at some point granted, the parties can revisit the schedule, including provisions for supplemental expert reports if the circumstances warrant, to avoid any prejudice to either side."

III.   Scheduling for Expert Discovery and Summary Judgment

The parties disagree on the proper scope and timing of expert discovery. The SEC's proposed scheduling order states that "expert discovery shall encompass the claims set forth in the SEC's proposed amended complaint" and sets the deadlines for opening expert reports at December 20, 2019, the close of expert discovery at April 24, 2020, and pre-motion opposition letters for summary judgment at July 24, 2020. *See* Ex. A. Defendants' proposed scheduling order does not expand expert discovery beyond the remaining allegations and claims in the operative Complaint and sets the deadlines for opening expert reports at December 6, 2019, the close of expert discovery at March 31, 2020, and pre-motion opposition letters for summary judgment at June 26, 2020. *See* Ex. B.

The parties' respective positions are set forth below.

*Plaintiff's Position*

It is the SEC's position that one round of expert discovery on the merits should be conducted in order to save time and cost. In order to complete expert discovery efficiently, the scope of expert reports should encompass the SEC's proposed amended complaint, not just the claims in the SEC's original complaint as narrowed by Judge Torres in her March 2019 ruling on the motion to dismiss, which sustained some claims while dismissing others. *SEC v. Rio Tinto, et al.*, 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019). This is because it is likely that Judge Torres's March opinion will not be the final word on which claims go forward, either because Judge Torres will grant the SEC's motion to amend, or because Judge Torres will reconsider significant aspects of her March opinion based on subsequent Supreme Court precedent.

There is well-settled Second Circuit case law in favor of permitting a plaintiff a chance to amend after the first ruling on a motion to dismiss. *See e.g., Lorelay Financing v. Wells Fargo Secs.*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); *Cresci v. Mohawk Valley Cmty. Coll.*, 693 Fed. App'x 21, 25 (2d Cir. June 2, 2017) (summary order) ("It is the District Court's ruling, not the defendant's arguments in support of a motion to dismiss, that puts a plaintiff on notice of a complaint's deficiencies."). The SEC's proposed amended complaint speaks directly to Judge Torres's March opinion, adding detail to its existing allegations in order to address specific concerns raised by Judge Torres. However, the proposed amended complaint does not add

Hon. Debra Freeman
Page 3

claims or defendants, and as such would not change the scope of the case as originally filed. Because the proposed amended complaint was attached to the SEC's motion to amend, filed on July 8, 2019, Defendants have been on notice of its allegations since then.[2]

Moreover, the SEC advised the Defendants and Judge Torres that, if leave to amend is not granted, it will move for reconsideration of Judge Torres's March opinion.[3]  Most notably, in the opinion, Judge Torres adopted Defendants' legal argument that violations of the SEC's claims under Securities Act Section 17(a)(1) and (a)(3) and Exchange Act Section 10(b), and Rule 10b-5(a) and (c) thereunder, require proof of a deceptive act that is distinct from any misrepresentations alleged in the complaint. *Id*. at *15-16.  Judge Torres acknowledged that this issue was pending before the Supreme Court, which "may clarify the matter." *Id*. at *15 n.9.  Indeed, the next week the Supreme Court went in the opposite direction of Judge Torres in deciding *Lorenzo v. SEC,* 139 S. Ct. 1094 (2019), in which the Court held that liability under Section 17(a)(1) and (a)(3) and Rule 10b-5(a) and (c) can be premised on conduct that involves false statements.  On these and other grounds, it is likely that claims that were dismissed in the March opinion will be reinstated, either through amendment or reconsideration.  In either case, the scope of expert discovery will be highly similar.  If expert discovery proceeds only on the claims in the original complaint, as narrowed by Judge Torres's March opinion, the scope of discovery will be much narrower, creating a high risk that amendment of the complaint or reconsideration of the March opinion will require re-doing expert discovery.

In this unique procedural posture, the most efficient path forward is to proceed with expert reports and depositions that address all of the overlapping claims set forth in the SEC's proposed amended complaint and the initial complaint.  If the parties proceed in this manner and the motion to amend is granted in whole or in part, there will be no need to conduct additional expert discovery.  Similarly, if Judge Torres reinstates the original complaint's "scheme claims" in light of the Supreme Court's intervening *Lorenzo* ruling, there will be no need to conduct additional expert discovery.  This approach would allow the parties to complete discovery and adapt to any subsequent rulings by Judge Torres by narrowing the scope of their expert reports, which is more efficient than conducting a second round of expert discovery, with experts likely having to file supplemental reports and rebuttals and sit for additional depositions.

It should be noted that, while Defendants claim below that "[t]he parties have agreed to revisit fact discovery if the Court permits the SEC's amendment," this is not quite accurate:  The SEC has agreed that Defendants may file a request for additional discovery if the complaint is amended, but the SEC has not consented to such discovery taking place, and has reserved the right to object.  Indeed, Defendants have repeatedly refused to proffer any information about discovery they will seek to take if the complaint is amended, or even whether they actually plan to seek any discovery, preferring to instead assert that amendment will lead to unspecified

---

[2] Indeed, all parties have subsequently recognized the efficiency gains of conducting *one* round of discovery.  At the request of counsel for the individual defendants, the parties agreed that the depositions of Mr. Albanese and Mr. Elliott would encompass all allegations and claims from the proposed amended complaint, rather than creating the prospect of a second deposition for each defendant if the motion to amend is granted.  The same logic applies fully here.

[3] In a May 7, 2019 Order [ECF No. 154], Judge Torres directed that the SEC's motion to amend should be fully briefed before the filing of any motion for reconsideration.

Hon. Debra Freeman
Page 4

prejudice stemming from unspecified discovery that Defendants may hypothetically seek. In the absence of a proffer that amendment will lead to *any* additional discovery, there is no basis for holding off on fulsome expert discovery. But if amendment actually will lead to additional fact discovery, the best course is to instead stay expert discovery until the status of the case is clearer, rather than taking what will likely be a wasteful first round of expert discovery.

Defendants' position that expert discovery should be limited only to the claims remaining after Judge Torres's March opinion cites cases for the propositions that discovery is inappropriate on claims that are either dismissed or unpled. But neither of these circumstances describes the claims at issue here. While Judge Torres's March opinion did dismiss certain claims, the SEC's proposed amended complaint, attached to the pending fully-submitted motion to amend, has now re-pleaded those claims with additional factual detail in direct response to Judge Torres's March opinion. Fed. R. Civ. P. 26(b)(1), which governs the scope of discovery and focuses on matters "relevant to any party's claim or defense," "signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses *that are not already identified in the pleadings*." Fed. R. Civ. P. 26(b)(1) advisory committee's note (2000) (emphasis added). Here, the claims in the SEC's amended complaint have been identified and pled in both the original complaint and the proposed amended complaint that has been lodged with the court and is awaiting decision on the pending motion to amend, and they are therefore appropriately considered within the scope of expert discovery.

If, however, the claims as pleaded in the proposed amended complaint are not to be considered within the scope of expert discovery at this time, then in order to conserve the Court's and the parties' resources, this Court should *briefly* stay expert discovery until *after* the ruling on the pending motion to amend. *See* Fed. R. Civ. P. 1 (the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"); *In re Term Commods. Cotton Futures Litig.*, 2013 WL 1907738, at *5 (S.D.N.Y. May 8, 2013) (good cause for discovery stay exists "where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay") (internal quotation marks omitted); *see also Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 148 (S.D.N.Y. 2012) (Magistrate Judge Peck had stayed certain discovery "pending Judge Carter's ruling on plaintiffs' motion to amend the complaint and for collective action certification . . . in order to avoid the expense of redoing discovery if collective action certification was granted"); *Murphy v. Lowe's Home Centers, LLC*, 2018 WL 4368617, at *1-2 (D. Colo. July 30, 2018) (discovery stayed pending resolution of plaintiff's motion to amend complaint); *King v. Cardinal Health 411, Inc.*, 2011 WL 5967256, at *1 (N.D. W. Va. Nov. 29, 2011) (same). A brief stay of expert discovery is particularly appropriate where, as here, the amended complaint is not some hypothetical or anticipated filing, but has been lodged along with a motion to amend that has been fully submitted for over three months and could be decided imminently. *See In re Term Commods.*, 2013 WL 1907738, at *7 (staying discovery where dispositive motion had been filed and set for oral argument because adjudication of the motion "might avoid the need for costly and time-consuming discovery").

Finally, the SEC submits that the schedule it has proposed is appropriate given the complexity of the case, the fact that four important depositions were taken in the last month of discovery, concluding on October 11, the disagreement about the proper scope of expert

Hon. Debra Freeman
Page 5

discovery, and the fact that over 170 complex valuation models were produced by Defendants in September and are relevant to the work of the SEC's experts. Moreover, in the interest of saving time and cost to all parties, the SEC requests that expert discovery proceed only on merits issues at this time, with any expert discovery on remedies to occur after there has been a finding of liability, which will define the proper scope of expert reports on remedies. Courts have regularly directed bifurcation of discovery along these lines in SEC cases, with considerable gains in efficiency. *See, e.g., SEC v. Wyly*, 56 F. Supp. 3d 260, 262 (S.D.N.Y. 2014) (Scheindlin, D.J.) ("The liabilities and remedies phases of the trial were bifurcated."); *SEC v. Boock*, No. 09 CIV 8261 DLC, 2011 WL 3792819, at *24 (S.D.N.Y. Aug. 25, 2011) (Cote, D.J.) ("Once a court has determined a securities violation has occurred . . . a process of fact-finding will follow a finding of liability" to determine the amount of disgorgement); *SEC v. Gowrish*, No. C 09-05883 SI, 2011 WL 2790482, at *3 (N.D. Cal. July 14, 2011) (noting the difference in burdens of proof at the remedies phase versus liability phase of trial), *aff'd*, 510 Fed. App'x 588 (9th Cir. 2013); *SEC v. Utsick*, 373 F. App'x 924, 926 (11th Cir. 2010) ("Prior to the hearing to determine the amounts of disgorgement, prejudgment interest, and civil penalty, the court set a schedule for mutual discovery"); *SEC v. Rivers*, 272 F.R.D. 607, 611 (M.D. Fla. 2011) ("In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties"); *SEC v. Leslie*, No. C 07-3444, 2010 WL 3259375, at *1 (N.D. Cal. Aug. 18, 2010) ("Discovery with respect to the liability phase closed on December 16, 2009, and discovery with respect to the remedies phase was to begin, if necessary, only after a trial on liability"). The SEC respectfully requests that the Court enter its proposed scheduling order, which is attached as Exhibit A.

*Defendants' Position*

There is no legal or logical basis for the SEC's ever-evolving positions on expert discovery. Since May, Defendants have sought to obtain the SEC's agreement on a schedule for expert discovery. Until recently, the SEC never raised any of its newfound requests regarding the scope of expert discovery, a stay of expert discovery, or a bifurcation of the proceedings. It was not until October 8, 2019 that the SEC first informed Defendants that it intended to "submit expert reports based on the proposed amended complaint" and "expect[ed]" Defendants to do the same. Defendant promptly responded that "[b]oth sides' expert reports need to be based on the actual, operative complaint." Then, on October 29, the SEC sent Defendants a letter asserting that "this is a bifurcated proceeding" and a draft scheduling order referencing a never-before-discussed stipulation that "expert discovery shall be limited to the merits, with any remedies discovery to occur after a finding of liability." Defendants promptly requested that the SEC remove the reference to the non-existent stipulation. On November 8, the SEC informed Defendants for the first time that, if expert discovery is not expanded to encompass its entire proposed amended complaint, it would seek a stay of expert discovery "until after the ruling on the pending motion to amend."

The SEC simply will not accept Judge Torres's well-reasoned and thorough March 18, 2019 order dismissing several of the SEC's claims and substantially narrowing the case. The SEC now insists that all experts be required to prepare for and opine on all of the claims and theories of liability rejected in the March 18 order. And, if the Court will not do so, the SEC demands that the entire litigation be put on hold. In effect, the SEC seeks to hold proceedings in this action hostage until it gets its way.

Hon. Debra Freeman
Page 6

The claims against the Defendants are entirely unfounded, and Defendants are confident that the Court or a jury will reject them. But the mere existence of the claims, especially given that the plaintiff is the SEC, clouds the reputations of the Defendants. This case is now in its third year of active litigation, and in the seventh year since inception of the SEC's pre-suit investigation. The SEC's reference to Rule 1's emphasis on a "just, speedy, and inexpensive determination of every action" is difficult to reconcile with the SEC's litigation strategy, which appears to be driven by a desire to grind down Defendants and prolong a matter that the SEC initiated *in 2013*.

With fact discovery concluded, the parties should be moving swiftly toward an ultimate adjudication of claims. The SEC's proposals are designed to thwart movement forward, not facilitate it. Each of the SEC's proposals is addressed below.

1.     The SEC's Request To Expand The Scope Of Expert Discovery
       Beyond The Operative Allegations And Claims In The Case

On March 18, 2019, Judge Torres entered an order dismissing a significant portion of the SEC's Complaint. *See* ECF 135. Motion to dismiss rulings, like the March 18 order, "define, and narrow, the scope of permissible discovery." *In re Merck & Co., Inc. Sec., Deriv. & ERISA Litig.*, 2012 WL 4764589, at *7 (D.N.J. Oct. 5, 2012). Discovery on dismissed claims is not proper. *Id.*; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978); *Devlin v. Transp. Commc'ns Int'l Union*, 2000 WL 28173, at *5 (S.D.N.Y. Jan. 14, 2000). Similarly, "a plaintiff may not take discovery regarding unpled claims." *Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *1-3 (S.D.N.Y. May 23, 2016).

Here, Judge Torres has neither restored any dismissed portion of the 60-page Complaint nor granted the SEC leave to file an amended pleading. Thus, the only operative allegations and claims in the case are those portions of the Complaint that were not dismissed by the March 18, 2019 order. Nonetheless, the SEC asks Your Honor to ignore Judge Torres's order and compel Defendants to prepare and respond to expert reports, and take and defend expert depositions, as if Judge Torres had accepted the SEC's entire 139-page proposed amended complaint.

The SEC does not cite any case law to support its extraordinary request that expert discovery encompass claims that have already been dismissed.[4] Instead, the SEC cites cases on the general standard for amendment in an improper attempt to reargue its pending motion to amend, and presumes that Judge Torres will grant either the motion to amend in its entirety or a subsequent motion for reconsideration that the SEC has yet to file. The SEC's speculation is not a proper ground upon which to expand expert discovery to encompass even the dismissed portions of the existing Complaint, much less the full scope of the proposed amended complaint. *Merck*, 2012 WL 4764589, at *8 ("The Court cannot compel discovery based on anticipated

---

[4] The SEC purports to rely on the Advisory Committee Notes for Fed. R. Civ. P. 26, but those Notes nowhere discuss discovery on claims asserted in *proposed* amended pleadings, and instead make clear, in the paragraph immediately preceding the language quoted by the SEC, that the federal rules narrow discovery so that "the parties and the court focus on the *actual claims and defenses* involved in the action." Fed. R. Civ. P. 26(b)(1) advisory committee's note (2000) (emphasis added).

Hon. Debra Freeman
Page 7

filings.  To find otherwise would result in inefficiency for both the parties and the Court, particularly when the discovery sought may prove irrelevant.").[5]

    The SEC also overlooks the substantial gulf between the remaining claims in the existing Complaint and the claims asserted in the proposed amended complaint.  Judge Torres issued a thorough 50-page ruling that dismissed in whole or in part nearly all of the SEC's claims.  The Court dismissed the SEC's fraud claims under Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act with respect to all alleged misstatements in Rio Tinto's 2011 Annual Report, 2012 Half-Year Report, and board papers, all alleged misstatements by Mr. Elliott, and all but two alleged misstatements by Mr. Albanese.  *See* ECF 135 at 17-34, 37-39.[6]  The Court also dismissed the SEC's scheme liability claims, *id.* at 34-36, all four of the SEC's aiding and abetting claims against Messrs. Albanese and Elliott, *id.* at 36-37, 39-42, and the SEC's internal controls claim against Rio Tinto, *id.* at 44-45.  Out of the twelve counts in the SEC's Complaint, six were dismissed in their entirety and four were dismissed in part.

    Because a substantial portion of the SEC's Complaint has already been dismissed, the SEC's proposal would force the parties' experts to address a panoply of allegations and claims the Court has already rejected, as well as the allegations and claims that the SEC seeks to add in its proposed amended complaint.  For example, the parties' experts would have to address the valuation of Rio Tinto Coal Mozambique ("RTCM") reported in Rio Tinto's 2011 Annual Report, even though Judge Torres has dismissed all of the SEC's claims relating to fiscal year 2011, including the RTCM valuation in the 2011 Annual Report.  *Id.* at 19-21, 27, 47-48.  Forcing the parties to expend substantial resources addressing allegations and claims that have been dismissed, in the hope that one day the Court might reverse course and reinstate them,[7] is inefficient and wasteful.

    The SEC's proposal also ignores that the SEC's proposed expert discovery would be futile in light of the potential for additional fact discovery should Judge Torres grant leave to amend, although the SEC reserves its rights to object.  The parties have agreed to revisit fact discovery if the Court permits the SEC's amendment.  Thus, any expert opinions would necessarily be revisited to incorporate newly discovered facts, removing any purported efficiencies in the SEC's proposal.

    Rather than advance efficiency, the SEC's true motives lie elsewhere.  The SEC appears to believe that, by forcing the parties to engage in wasteful expert discovery on unpled or dismissed allegations and claims, the SEC can bolster its argument to Judge Torres that granting it leave to file an amended complaint will not unduly prejudice Defendants.  This argument has

---

[5] Defendants dispute the SEC's misguided discussion of *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), the case upon which it speculates its "scheme claim" would be "reinstated" if it were to file a motion for reconsideration, and will fully brief the matter if and when the SEC ever files such a motion.

[6] Judge Torres dismissed the Section 17(a) claims in their entirety, except with respect to injunctive relief sought against Rio Tinto in connection with August 2012 bond offering documents.

[7] As the SEC has acknowledged, even if leave to amend is granted, any new pleadings would be subject to a motion to dismiss.  *See* SEC Reply for Motion to Amend at 4-5 n.1 (ECF 166) ("The proper place for the SEC to more fully address how the allegations withstand a motion to dismiss is in responding to any such motion, if leave to amend is granted.").

Hon. Debra Freeman
Page 8

no merit:  fact discovery is now concluded, including the depositions of key third-party witnesses in foreign countries, which the SEC previously represented to the Court were "one time opportunities to take trial testimony."  *See* ECF 109 at 9:2-4.

The SEC's gambit should be rejected.

2.     The SEC's Request To Bifurcate Proceedings

The SEC requests in passing that expert discovery "proceed only on merits issues at this time," purportedly to save "time and cost to all parties."  If the SEC wanted to have bifurcated proceedings, it should have timely moved for bifurcation under Fed. R. Civ. P. 42(b), so that the issue could have been briefed and decided well before the eve of when expert reports are due.  Instead, the SEC waited until November 8, more than two years after the filing of this lawsuit in October 2017, to inform Defendants that it would use this status letter as a vehicle to seek the deferral of all expert discovery relating to the remedies it seeks until "after there has been a finding of liability."  The SEC's request would result in inefficiency, prevent the Court from further narrowing or clarifying the issues before trial, and delay the ultimate conclusion of this case.  Any motion for bifurcation of proceedings should have been brought before Judge Torres, and the SEC's effort to force bifurcation through this discovery dispute should be denied.

The SEC claims that "courts have regularly directed bifurcation of [expert] discovery . . . in SEC cases," but relies on (i) two cases where there was no expert discovery on liability issues, and therefore no bifurcation of expert discovery, because the defendants in the cases had consented to entry of judgment on liability;[8] (ii) two cases where expert discovery was not bifurcated, but instead penalty determinations were made after liability rulings (based on circumstances not presented here);[9] and (iii) two cases where, unlike here, the parties made a "joint proposal to bifurcate."[10]   We are not aware of—and the SEC does not cite—any authority that requires or presumes bifurcation of proceedings in SEC enforcement actions.

---

[8] *See SEC v. Utsick*, 373 F App'x 924, 926 (11th Cir. 2010) ("Utsick and his companies consented to the entry of a judgment."); *SEC v. Rivers*, 272 F.R.D. 607, 608 (M.D. Fla. 2011) ("THIS CAUSE comes before the Court upon Plaintiff's Notice of Filing Consent of Defendant Michael Rivers and Request for Entry of Judgment of Permanent Injunction and Other Relief.").

[9] In *SEC v. Gowrish*, 2011 WL 2790482 (N.D. Cal. July 14, 2011), the court rejected a request for a post-trial deposition allegedly relevant to a penalty determination and explained that the parties had jointly requested that a penalty determination be made after the liability ruling.  *Id.* at *2–3; *see also SEC v. Gowrish*, No. 3:09-cv-05883, ECF 22 (no bifurcation provision in scheduling order).  In *SEC v. Boock*, No. 1:09-cv-08261 (S.D.N.Y.), the SEC requested a stay of any penalty determination against a defendant because the action had been stayed against two co-defendants who allegedly had information relevant to the penalty determination against the defendant.  *See* ECF 21 (no bifurcation provision in scheduling order); ECF 49 (staying action against defendants Shoss and Loisel); ECF 89 (SEC motion for summary judgment seeking "injunctive and other equitable relief only" against defendant Wong and requesting stay of any penalty determination against Wong until stay against defendants Shoss and Loisel lifted because "Shoss and Loisel may have relevant evidence regarding the appropriate amount of disgorgement to seek from Wong"); *SEC v. Boock*, 2011 WL 3792819, at *24-25 (S.D.N.Y. Aug. 25, 2011) (ruling on SEC motion for summary judgment against Wong and ordering "supplemental proceedings" on "the amount of disgorgement").

[10] *SEC v. Leslie*, 2010 WL 3259357, at *1 (N.D. Cal. Aug. 18, 2010); *see also SEC v. Wyly*, No. 1:10-cv-05760 (S.D.N.Y.), ECF 195 at n.1 (parties jointly proposed bifurcation).

Hon. Debra Freeman
Page 9

"Bifurcation is the exception, not the rule, and the party seeking bifurcation shoulders the heavy burden of establishing that bifurcation is warranted." *In re Lehman Bros. Holdings, Inc.*, 2011 WL 2651812, at *1 (S.D.N.Y. June 22, 2011). Here, the SEC "ha[s] not demonstrated with any specificity that the damages discovery would be unduly burdensome if performed along with discovery on liability." *Foseco, Inc. v. Consol. Aluminum Corp.*, 851 F. Supp. 369, 371 (E.D. Mo. 1991). Nor has the SEC demonstrated that bifurcating expert discovery would "sav[e] time and costs." Courts have found otherwise, even when the parties in a case have agreed to a bifurcated trial: "In the interest of judicial economy and expediency, the Court would be better served by having informed parties before the start of trial. Therefore, the Court will not stay [damages] discovery. If the damages trial is required, then the parties will be prepared to continue without interruption. Likewise, the parties will be fully prepared to negotiate a settlement if necessary." *Id.; see also Briggs & Stratton Corp. v. Congquing RATO Power Co., Ltd.*, 2013 WL 5963151, at *6 (N.D.N.Y. Nov. 7, 2013) ("Delaying damages discovery until after the adjudication of liability issues would . . . deprive the parties from critical information relevant to damages."); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2010 WL 3521567, at *1 (E.D. Wis. Sept. 7, 2010) ("[S]taying damages-related discovery and bifurcating liability from damages would tend to cause unnecessary delay and expense and would not promote judicial economy.").

While "it is possible that the costs of damages-related discovery could ultimately prove unnecessary" if there is no finding of liability on any claim, the SEC has not demonstrated with any specificity that the cost savings would be significant, and "bifurcation [would do] little to secure the just, speedy, and inexpensive determination of this action." *Kimberly-Clark*, 2010 WL 3521567, at *1; *accord Lehman*, 2011 WL 2651812, at *3 ("[A] victory for [a defendant] with respect to liability would moot the issue of penalties . . . in nearly every complicated civil case. Nonetheless, bifurcation remains the exception, not the rule.").

The SEC's proposed bifurcation will also prevent the Court from further narrowing or clarifying the issues before trial. As the SEC acknowledges, fact discovery is over—including the SEC's opportunity to develop the factual predicate for its desired remedies. After the completion of expert discovery, Defendants may seek summary judgment on certain of the SEC's remedial theories based on the SEC's failure to develop an evidentiary record during fact discovery to support those remedies. Bifurcation, however, would deprive Defendants of their right to move for summary judgment on those issues, and would thus prevent the Court from narrowing or clarifying the case before trial.[11]

In short, the SEC's belated request to bifurcate expert discovery and stay "any remedies discovery" should be denied. *See Lehman*, 2011 WL 2651812, at *3 (denying "application for a stay of penalty discovery" because movant "failed to adduce 'particularly compelling' or 'exceptional' reasons for bifurcated proceedings").

---

[11] *In Kokesh v. SEC*, 137 S.Ct. 1635 (2017), the Supreme Court held that disgorgement "bears all the hallmarks of a penalty: It is imposed as a consequence of violating a public law and it is intended to deter, not to compensate." *Id.* at 1644. Recently, in *Liu v. SEC*, 2019 WL 5659111 (2019), the Supreme Court granted review of the SEC's authority to obtain disgorgement. Defendants contend that, as a penalty, disgorgement is not equitable and must be tried before a jury. The Second Circuit has not addressed this issue following *Kokesh*, and any dispute as to whether the disgorgement remedy should be tried before a jury deserves full briefing and resolution by Judge Torres.

Hon. Debra Freeman
Page 10

       3.      The SEC's Request To Stay All Proceedings

The Court should also deny the SEC's request to stay all expert discovery and halt this case until after a ruling on its motion to amend.  The SEC makes this request for the first time more than four months after filing its motion to amend.  The SEC apparently hopes that its extreme request for a stay will somehow make its alternative request to permit expert discovery as to dismissed claims appear more reasonable.  This is purely tactical, and the SEC's stay request should be denied.

"A stay of all discovery is generally disfavored."  *Evans v. Northwestern Mutual Life Ins. Co.*, 2016 WL 363770, at *1 (D. Colo. Jan. 29, 2016).  Although a stay may be appropriate at certain early stages of a case, this is not a situation "where a [defendant] has filed a dispositive motion" that may obviate the need for any discovery, *In re Term Commods. Cotton Futures Litig.*, 2013 WL 1907738, at *5 (S.D.N.Y. May 8, 2013), or where a party is at the brink of undertaking its initial "predictive coding" for ESI discovery, *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 148 (S.D.N.Y. 2012).[12]

Here, fact discovery is complete, and the parties can move forward with expert reports directed to the operative allegations and claims in the case.  The parties also agree that there is no risk that expert reports directed to the operative allegations and claims in the case will be rendered moot or irrelevant by the motion to amend ruling.  Nonetheless, over Defendants' objection, the SEC asks that all expert discovery be stayed in the hope that its motion to amend will one day be granted.

While a stay may be of little consequence to the SEC, any further delay in the resolution of this case would be highly prejudicial to Defendants, who have been burdened with this matter for *more than six years*.  The SEC commenced its investigation of Rio Tinto in April 2013, taking one-sided discovery for over four years, before filing suit in October 2017, and publicly accusing Rio Tinto and Messrs. Albanese and Elliott of fraud.  The SEC's baseless accusations have inflicted significant reputational and financial harm on Defendants.

After more than six years of scrutiny and disruption by the SEC, Defendants are entitled to a "just" and "speedy" resolution of this action, Fed. Civ. P. R. 1, not further delay.  The SEC's request to stay all expert discovery should be denied.  *See Evans*, 2016 WL 363770, at *1-2 (denying motion to stay discovery pending ruling on plaintiff's motion to amend complaint).

Defendants respectfully request that Your Honor enter Defendants' proposed scheduling order, under which (i) expert discovery is not stayed; (ii) opening expert reports are due December 6, 2019 (*i.e.*, eight weeks following the final fact witness deposition on October 11, 2019); and (iii) expert discovery is directed to the operative allegations and claims in the case, rather than to dismissed or unpled allegations and claims.  *See* Ex. B.  Should any additional allegations or claims become operative, the parties can supplement expert reports as needed.

---

[12] Nor is this a case where "[t]he parties jointly ask the Court to stay discovery."  *Murphy v. Lowe's Home Centers, LLC*, 2018 WL 4368617, at *1-2 (D. Colo.  July 30, 2018).

Hon. Debra Freeman
Page 11

* * *

The parties thank the Court for its consideration of this matter.

Respectfully submitted,

/s/ Thomas A. Bednar
Thomas A. Bednar
Assistant Chief Litigation Counsel
Securities and Exchange Commission
(202) 551-6218
bednart@sec.gov
Counsel for Plaintiff

/s/ Jennifer L. Conn (on consent)
Jennifer L. Conn
GIBSON, DUNN & CRUTCHER LLP
(212) 351-4086
jconn@gibsondunn.com
Counsel for Defendants Rio Tinto plc and Rio Tinto Limited

/s/ Peter J. Romatowski (on consent)
Peter J. Romatowski
N. Scott Fletcher (*pro hac vice*)
David R. Woodcock (*pro hac vice*)
JONES DAY
(202) 879-7625
pjromatowski@jonesday.com
Counsel for Defendant Thomas Albanese

/s/ Walter G. Ricciardi (on consent)
Walter G. Ricciardi
Geoffrey R. Chepiga
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
(212) 373-3350
wricciardi@paulweiss.com
Counsel for Defendant Guy Robert Elliott