**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Mark A. Kirsch
Direct: +1 212.351.2662
Fax: +1 212.351.6362
MKirsch@gibsondunn.com

January 26, 2021

VIA ECF

The Honorable Debra Freeman
United States Magistrate Judge
U.S. District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   *SEC v. Rio Tinto, et al.,* No. 1:17-cv-07994 (AT) (DCF)

Dear Judge Freeman:

We represent Defendants Rio Tinto PLC and Rio Tinto Limited, and write on behalf of all Defendants in the above-captioned action. Pursuant to Your Honor's Individual Practices and Local Civil Rule 37.2, Defendants respectfully request a pre-motion conference, or in the alternative, leave to file a motion seeking: (i) to compel the disclosure of the results and data arising from the event studies and analyses of Rio Tinto's bond prices and credit ratings conducted by the Securities and Exchange Commission's ("SEC") expert witness, Dr. Albert Metz; and (ii) *in camera* review of the memoranda Dr. Metz provided to the SEC regarding his event studies and analyses, to permit disclosure to Defendants of any "facts or assumptions" in the memoranda or the development of Dr. Metz's opinions.

Defendants certify pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure and § I.C. of Your Honor's Individual Practices that they have conferred with the SEC over the past several months in good faith to resolve this dispute without court intervention, to no avail. *See* Exs. A–G. Accordingly, a motion to compel is necessary for Defendants to obtain the discovery to which they are entitled.[1]

## BACKGROUND

The SEC proffered Dr. Metz as an econometric testifying expert to support its materiality case. At his June 17, 2020 deposition, Dr. Metz disclosed for the first time that

---

[1] This motion to compel is relevant to the Court's consideration of Defendants' anticipated *Daubert* motion with respect to Dr. Metz and anticipated summary judgment motion. Defendants filed their pre-motion letters requesting permission to file *Daubert* motions on August 28, 2020, and permission to file their summary judgment motion on September 4, 2020. *See* ECF 202, 203. The Court has not provided the parties a schedule for the filing of *Daubert* and summary judgment motions.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

Hon. Debra Freeman
January 26, 2021
Page 2

he had also served as a consulting expert for the SEC, during which time he conducted other undisclosed analyses and event studies, including analyses of Rio Tinto's credit ratings and event studies of its bonds. Metz Tr. 15:3–22; 44:5–45:23 (an excerpted transcript is attached hereto as Ex. H). Dr. Metz admitted these analyses were not disclosed in his opening or rebuttal expert reports. *Id*. at 44:5–15. Nor were these analyses produced among the facts and data on which Dr. Metz relied in connection with drafting those reports. When defense counsel attempted to probe regarding the subject matter of these undisclosed analyses, the SEC objected on privilege grounds and instructed Dr. Metz not to answer. *Id.* at 43:5–44:4.

Dr. Metz did, however, acknowledge that the bond event study he conducted was relevant to the opinions of Defendants' econometric expert, Dr. Glenn Hubbard, in that "Dr. Hubbard conducted a similar analysis and reached a similar conclusion." *Id*. at 45:14–23. Indeed, in his expert report, Dr. Hubbard conducted an event study of Rio Tinto's bond prices and an analysis of its credit ratings, and concluded that the Rio Tinto Coal Mozambique ("RTCM") "impairment had no material effect on Rio Tinto's bond prices and credit ratings." Expert Report of Dr. Hubbard at ¶ 12 (attached hereto as Ex. I). Dr. Metz thus implicitly acknowledged that he also found that the RTCM impairment had no material effect on Rio Tinto's credit ratings and bond prices—which is directly contrary to the SEC's theory of the case. *See, e.g.*, Compl. ¶¶ 105–112, 145–150, 172.

Shortly thereafter, on June 22, Defendants wrote to the SEC seeking the production of the undisclosed analyses that Dr. Metz purported to have conducted as a consulting expert. Ex. A. Defendants explained that Dr. Metz's analyses regarding Rio Tinto's bonds and credit ratings were directly relevant to Dr. Metz's opening report, as well as his rebuttal report concerning Dr. Hubbard's findings. *Id*.

The parties exchanged further correspondence over the next several months. On July 8, the SEC responded by objecting to the production of undisclosed analyses prepared by Dr. Metz while he was a consulting expert. Ex. B. On August 14, Defendants replied to the SEC and renewed their demand for Dr. Metz's undisclosed bond and credit rating analyses. Ex. C. On October 2, the SEC replied to Defendants' August 14 letter, maintaining its refusal to disclose Dr. Metz's analyses. Ex. D.

The SEC's October 2 letter included a privilege log and a brief timeline of Dr. Metz's engagement, disclosing—for the first time—that between August and October 2019, Dr. Metz conducted "regression analyses of Rio Tinto bonds on January 17, 2013"—the date of the impairment announcement—and "summariz[ed]" the results in a series of memoranda to the SEC. *Id*. at 1–2. After October 15, 2019, Dr. Metz purportedly transitioned to a testifying expert, a mere two months before issuing his expert report. *Id.* at 1.

On December 29, Defendants replied to the SEC's letter with questions regarding vague and ambiguous entries on the SEC's privilege log. Ex. E. On January 8, 2021, the

**GIBSON DUNN**

Hon. Debra Freeman
January 26, 2021
Page 3

SEC replied to the December 29 letter, maintaining its objection to disclosure of Dr. Metz's analyses and supplementing its privilege log entries, which further revealed material inaccuracies on its prior privilege log. Ex. F. Specifically, while the log in the SEC's October 2, 2020 letter disclosed that Dr. Metz conducted regression analyses of Rio Tinto's bonds issued on January 17, 2013, Ex. D at 1–2 (entries dated September 11 and October 15, 2019), the revised log appended to the January 8, 2021 letter disclosed the existence of regression analyses for bonds issued on *six* additional dates: February 12, 2009; February 11, 2010; August 5, 2010; February 9, 2012; February 13, 2014; and July 30, 2014. Ex. F at 3–4; *see also* Ex. G at 1. The material inaccuracies in the prior privilege log raise serious questions about the content and scope of Dr. Metz's memoranda and further underscore the importance of their disclosure. On January 21, 2021, Defendants notified the SEC that, in light of its unwillingness to produce the undisclosed materials and failure to offer any compromise, the meet and confer process had reached an impasse, requiring judicial intervention. Ex. G at 1.

## BASES FOR DEFENDANTS' MOTION TO COMPEL

The SEC's refusal to disclose Dr. Metz's analyses of Rio Tinto's bond prices and credit ratings contravenes its disclosure obligations under the Federal Rules of Civil Procedure. Rule 26 of the Federal Rules requires the disclosure of "the facts or data considered by" an expert witness in forming his opinions, notwithstanding any claim of work product. Fed. R. Civ. P. 26(a)(2)(b)(ii), 26(b)(4)(C)(ii). The law is clear that for a dual purpose expert like Dr. Metz, who functions as both a testifying and consulting expert, the work product doctrine does not apply to materials prepared in the expert's consulting capacity where the expert also "considered" that material "in connection with his [] testimony." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 293 F.R.D. 568, 571–72, 577–78 (S.D.N.Y. 2013) (compelling the production of a spreadsheet prepared by a testifying expert in his consulting capacity because the content of the spreadsheet "directly relate[d]" to the subject of his testimony); *B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of N.Y.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997) (compelling production of documents considered by a dual purpose expert because "any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery"); *cf. United States v. County of Clark, et al.*, 2019 WL 7116100, at *3 (D. Nev. Dec. 23, 2019) (compelling the production of a dual purpose expert's consulting report where the "subject matter . . . relate[d]" to the expert's disclosed report).

### (i) Bond Price and Credit Rating Analyses

The SEC contends that the bond price analyses that Dr. Metz conducted in his consulting capacity are not subject to disclosure because, "in his opening and rebuttal reports, Dr. Metz did not deal at all with the subject of bond prices in secondary market trading." Ex. B at 1. The SEC is mistaken. The undisclosed bond pricing analysis, in

**GIBSON DUNN**

Hon. Debra Freeman
January 26, 2021
Page 4

particular, is directly related to the scope of Dr. Metz's disclosed opinions. In his opening expert report, Dr. Metz offered testimony about the bond market and credit ratings, Metz Report, ¶¶ 98–106 (attached hereto as Ex. J), trading in the secondary bond market, *id.* ¶¶ 107–12, and "how the price of Rio Tinto's bond offerings might have changed had the bonds been rated one notch higher . . . or one notch lower," *id.* ¶ 106. And in connection with his rebuttal expert report, the SEC expressly instructed Dr. Metz to "review and respond" to Dr. Hubbard's conclusion that "Rio Tinto bond prices and ratings were not affected by any news regarding the acquisition or write-down of Riversdale." *See* Metz Rebuttal Report ¶ 2 (attached hereto as Ex. K). This instruction directly undermines the SEC's contention that "Dr. Metz was not engaged to analyze bond price reactions to events at all." Ex. D at 2.

The SEC's focus on Dr. Metz's role when he conducted the bond price analyses is also misplaced. "The relevant question is not the 'hat [that Dr. Metz] was wearing'" when he conducted the bond price analyses. *In re MTBE*, 293 F.R.D. at 577. "Instead, the relevant question is whether [Dr. Metz] might have *considered*" the bond price analyses—"which qualif[y] as 'facts or data' for the purposes of Rule 26—in connection with his [] testimony." *Id*. (emphasis in original). Dr. Metz chose not to challenge the results of Dr. Hubbard's bond event study, presumably because he recognized they were consistent with the results of his own undisclosed bond event study. Although Dr. Metz did not expressly contest Dr. Hubbard's bond event study in his rebuttal report, Dr. Metz must have come to that decision after consideration of his undisclosed bond event study while analyzing Dr. Hubbard's opinions, defeating any claim of work product or privilege. *Id*. at 574 ("It is irrelevant whether the expert ultimately relies upon the facts or data in forming her expert opinion; instead, the test is whether the expert 'considered' the materials.").

Even if there were any ambiguity in whether Dr. Metz's undisclosed bond event studies informed his expert testimony (and there is not), disclosure still would be required. After all, an expert "cannot be expected to draw a mental line in the sand between" the analyses he conducted as a consulting expert and those he reviewed as a testifying expert. *Yeda Research and Development Co., Ltd. v. Abbott GmbH & Co. KG*, 292 F.R.D. 97, 115 (D.D.C. 2013). That is "why courts construe the dual-hat expert rule in favor of the party seeking discovery," *id*., and resolve "any ambiguity . . . in favor of production," *In re MTBE*, 293 F.R.D. at 577; *see B.C.F. Oil Ref., Inc.*, 171 F.R.D. at 62 (ordering production of documents because it was "not clear whether the expert reviewed them solely as a consultant or whether they informed his expert opinion as well").

The SEC further contends that disclosure is not required because the materials are work product. But any claim of work product privilege with respect to Dr. Metz's bond study analysis has been waived due to his deposition testimony regarding the results of his undisclosed bond price analysis, the relevance of his results, and the relevance of the substantially similar analysis by Dr. Hubbard. Ex. H at 45:14–46:9 ("Dr. Hubbard conducted a similar analysis and reached a similar conclusion which is, in my view, extraneous to the

**GIBSON DUNN**

Hon. Debra Freeman
January 26, 2021
Page 5

matter at hand."). Such a disclosure during a deposition vitiates any privilege claim. *See In re MTBE*, 293 F.R.D. at 578 (finding "work-product and/or consulting expert privilege protecting the Spreadsheet was forfeited" where the expert "relied on the Spreadsheet at his deposition"); *see also County of Clark*, 2019 WL 7116100, at *1 n.1, *3 (ordering production of a consulting report directly related to the subject of the expert's testimony where the expert disclosed the report during his deposition and offered opinions about its relevance and the relationship of the report's results to the opinions offered in his testifying capacity).

### (ii) Unproduced Memoranda Regarding Bond Event Studies

According to the timeline of Dr. Metz's consulting work in the SEC's January 8 letter, Dr. Metz drafted three memoranda—on August 9, September 11, and October 15, 2019. Those memoranda "[d]iscuss[] counsel's theories on relevant bond market analysis" and "summariz[e] regression analyses of 7 Rio Tinto bonds on January 17, 2013" (August 9, 2019); "[d]escribe[e] communications with SEC counsel," "describe[e] specific regression analysis of Rio Tinto bonds conducted at request of SEC counsel," and "summariz[e] regression analyses of 33 Rio Tinto bonds on [seven identified dates]" (September 11, 2019 & October 15, 2019). Ex. F at 2–4. The work product doctrine, as codified in Rule 26(b)(4)(C), does not protect from disclosure the communications between a party's attorney and that party's testifying expert if those communications relate facts from counsel considered by the expert, or assumptions provided by counsel and relied on by the expert in forming his opinions. *Yeda Research*, 292 F.R.D. 97 at 106. Thus, the work product doctrine "does not extend to an expert's *own* development of the opinions to be presented; those are subject to probing in deposition or at trial." *In re MTBE*, 293 F.R.D. at 577 (emphasis in original).

Dr. Metz's memoranda likely relate to facts or assumptions provided by the SEC to Dr. Metz and the development of Dr. Metz's own opinions with respect to at least his bond event study and analyses. *See, e.g.*, *Dongguk Univ. v. Yale Univ.*, 2011 WL 1935865, at *1 (D. Conn. May 19, 2011) ("[A]s a general matter, an expert's notes are not protected by 26(b)(4)(B) or (C), as they are neither drafts of an expert report nor communications between the party's attorney and the expert witness.") (citing Rule 26(b)(4) advisory committee's note to the 2010 amendment). At a minimum, the SEC should be compelled to produce these memoranda to the Court for *in camera* review. Any "facts or assumptions" in the memoranda or the development of Dr. Metz's opinions are not protected and should be disclosed. *See id.* at *2.

For all of the foregoing reasons, Defendants respectfully request that the Court grant them leave to file a motion to compel (i) the results and data arising from Dr. Metz's event studies and analyses of Rio Tinto's bond prices and credit ratings; and (ii) *in camera* review, and disclosure as appropriate, of the memoranda from Dr. Metz to the SEC concerning the event studies and analyses of Rio Tinto's bond prices.

GIBSON DUNN

Hon. Debra Freeman
January 26, 2021
Page 6

      Thank you for the Court's attention to this matter.

Respectfully submitted,

*/s/ Mark A. Kirsch*

Mark A. Kirsch

cc: Counsel of Record (*Via ECF*)