UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

-against-

RIO TINTO PLC, RIO TINTO LIMITED, THOMAS ALBANESE, and GUY ROBERT ELLIOTT,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/2021

17 Civ. 7994 (AT) (DCF)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Securities and Exchange Commission (the "SEC"), brings this action for violations of the Securities Act of 1933 ("Securities Act"), the Securities and Exchange Act of 1934 ("Exchange Act"), and the rules promulgated thereunder, against Defendants, Rio Tinto PLC, Rio Tinto Limited, Thomas Albanese, and Guy Robert Elliott. Compl., ECF No. 1. Defendants moved to dismiss the complaint, and on March 18, 2019, the Court granted in part and denied in part the motion (the "March 2019 Order"). *SEC v. Rio Tinto plc*, No. 17 Civ. 7994, 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019). The SEC now moves for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3. ECF No. 181. For the reasons stated below, the SEC's motion is DENIED.

## BACKGROUND

On October 17, 2017, the SEC filed a complaint alleging that Defendants fraudulently concealed the decline in value of their coal business in Mozambique. Compl. ¶ 1.[1] Defendants moved to dismiss the complaint, and the Court granted that relief with respect to all but a handful of claims, finding that the SEC failed to state a claim with respect to the majority of its

---

[1] The Court assumes familiarity with the facts and history laid out in the March 2019 Order, and adopts its defined terms.

allegations. March 2019 Order at 49–50. The SEC was permitted to proceed on the following claims: (1) claim for violations of § 10(b) of the Exchange Act and Rule 10b–5(b) by Albanese and Rio Tinto with respect to the Albanese Statements; (2) claim for injunctive relief against Rio Tinto under § 17(a)(2) of the Securities Act with respect to the HY 2012 Report; (3) claim for violations of § 13(a) and Rules 12b–20 and 13a–16 with respect to the HY 2012 Report; (4) claim for Rio Tinto's alleged violation of §13(b)(2)(A) of the Exchange Act with respect to the HY 2012 Report; (5) claim for Albanese's and Elliott's alleged violations of § 13(b)(5) of the Exchange Act and Rule 13b2–1 by failing correct misstatements in various papers submitted to Rio Tinto's auditors while the HY 2012 report was being drafted; (6) claim for Albanese's and Elliott's alleged violations of Rule 13b2–2 for not sharing information about adverse developments at their coal business in Mozambique with Rio Tinto's auditors, causing the HY 2012 report to contain a materially false valuation; and (7) request for disgorgement. *Id.*

On March 27, 2019, the SEC requested leave to amend its complaint in light of a recent Supreme Court decision, and in the alternative, for reconsideration of the March 2019 Order. ECF No. 140. The Court denied that request without prejudice to renewal, after the parties updated the Court about outstanding discovery. ECF No. 147. On May 3, 2019, the SEC renewed its request in a joint letter, ECF No. 153, and the Court set a briefing schedule on its motion to amend, ECF No. 154. On March 9, 2020, the Honorable Debra C. Freeman denied the SEC's motion to amend its complaint. ECF No. 175. On March 13, 2020, the Court set a briefing schedule on the SEC's motion for reconsideration of the March 2019 Order. ECF No. 177.

## DISCUSSION

I.    <u>Legal Standard</u>

The SEC brings its motion for reconsideration of the March 2019 Order under Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3.  Rule 6.3 provides that a "notice of motion for reconsideration or reargument of a court order determining a motion . . . shall be served . . . with . . . a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."  Thus, "to be entitled to reargument and reconsideration, the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." *Dietrich v. Bauer*, 198 F.R.D. 397, 399 (S.D.N.Y. 2001).  Rule 6.3 is to be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Id.*

"Rule 59(e) may be used by a party seeking to alter or amend a judgment." *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, No. 17 Civ. 1266, 2019 WL 181308, at *2 (S.D.N.Y. Jan. 11, 2019).  Under this rule, the standard is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "[A] court may grant reconsideration where the party moving for reconsideration demonstrates an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

A motion for reconsideration is "not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the

underlying motion." *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 95 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). Instead, motions for reconsideration are narrowly construed in order "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).

II.  Analysis

The Court granted Defendants' motion to dismiss in large part, holding that the SEC can only pursue certain claims regarding the Albanese Statements and the HY 2012 Report. March 2019 Order at 49–50. On reargument, the SEC contends that in light of the Supreme Court's decision in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), the March 2019 Order should be revised to reflect that many more statements in the complaint are actionable. *See* SEC Mem. at 3–4, ECF No. 182. The Court disagrees.

A.  Scheme Liability

The Court found that "in order to allege scheme liability under subsections (a) and (c) or Rule 10b–5, the SEC must allege 'the performance of an inherently deceptive act that is distinct from an alleged misstatement.'" March 2019 Order at 35–36 (internal citation omitted). The Court then determined that all of the "actions" the SEC alleges that Defendants took would form a basis for liability under Rule 10b–5(b) as misstatements or omissions. *Id.* at 36; Compl. ¶¶ 82–86, 91–121, 123–139, 141–159. In reaching its conclusion that Rule 10b–5(a) and (c) require more than misstatements or omissions, the Court noted that the pending decision in *Lorenzo* might clarify the matter. March 2019 Order at 36 n.9. The Court disagrees with the SEC's contention that *Lorenzo* holds that "misstatements can form the basis for liability under Rule

4

10b–5(a) and (c) and § 17(a)(1)." SEC Mem. at 8. *Lorenzo* holds that those "who disseminate false or misleading statements to potential investors with the intent to defraud" can be liable under these provisions, not that misstatements alone are sufficient to trigger scheme liability. 139 S. Ct. at 1099. In *Lorenzo*, an investment banker who sent e-mails containing false information, at the direction of his boss, was found liable. *Id.* Here, however, the SEC does not allege that Defendants disseminated such false information, only that they failed to prevent misleading statements from being disseminated by others. Compl. ¶¶ 82–86, 91–121, 123–139, 141–159; SEC Mem. at 2.

This interpretation of *Lorenzo* was discussed in *Geoffrey A. Orley Revocable Tr. U/A/D 1/26/2000 v. Genovese*, No. 18 Civ. 8460, 2020 WL 611506 (S.D.N.Y. 2020). In that case, an attorney was alleged to have provided certain language and to have advised the fund director in drafting documents containing this language. *Id.* at *7. The court declined to hold the lawyer liable under Rule 10b–5(a) and (c) because he was not alleged to have disseminated the statements at issue. *Id.* at *8. The SEC points to cases that draw the same distinction. SEC Mem. 8–18; *see SEC v. SeeThruEquity, LLC*, No. 18 Civ. 10374, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019) (holding that defendants who repeatedly made misleading statements in "research reports, press releases, and websites" could be liable under Rule 10b–5(a) and (c)); *Malouf v. SEC*, 933 F.3d 1248, 1254, 1259–60 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 1551 (2020) (holding that an investment executive who caused another's misstatements to be disseminated could be liable under Rule 10b–5(a) and (c) because he "bore responsibility for preparing the forms"); *SEC v. Fiore*, 416 F. Supp. 3d 306, 321 (S.D.N.Y. 2019) (holding that disseminating misleading statements in connection with a promotional campaign establishes scheme liability).

Accordingly, the SEC's motion for reconsideration with respect to its scheme liability claims is DENIED.

### B. Section 17(a)(2) Claims

The Court disagrees with the SEC that *Lorenzo* changes the scope of liability under § 17(a)(2). SEC Mem. at 23–24. *Lorenzo* expanded the scope of scheme liability claims, without altering the landscape with respect to § 17(a)(2) claims. 139 S. Ct. at 1099 ("In this case, we consider whether those who do not 'make' statements (as *Janus* defined 'make'), but who disseminate false or misleading statements to potential investors with the intent to defraud, can be found to have violated the *other* parts of Rule 10b–5, subsections (a) and (c), as well as related provisions of the securities laws, § 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, as amended, 15 U.S.C. § 78j(b), and § 17(a)(1) of the Securities Act of 1933, 48 Stat. 84–85, as amended, 15 U.S.C. § 77q(a)(1)."). The Court dismissed the SEC's § 17(a)(2) claims because Albanese and Elliott were not "makers" of the false statements. March 2019 Order at 38–39. *Lorenzo* is, therefore, inapposite.

Accordingly, the SEC's motion for reconsideration of its § 17(a)(2) claims is DENIED.

### C. Materiality

Nor did the Court incorrectly characterize Defendants' statements in their 2011 Annual Report "that Rio Tinto had anticipated the full extent of the write-down in Riversdale's resources—from 13 billion to 3 billion tons—prior to acquisition." March 2019 Order at 6, 27 (internal citations omitted). The Court dismissed this claim on the ground that the amount estimated was not publicly disclosed and that the new estimate still exceeded the lifetime needs of the mine. *Id.* The SEC argues for reconsideration of this holding on the basis that "a reasonable investor would find it material that Rio Tinto did not get remotely what it thought it

had paid for in the $3.7 billion acquisition." SEC Mem. at 25. The SEC also argues that the Court improperly relied on the Impairment Paper in finding that the new estimate still exceeded the lifetime needs of the mine. *Id.* at 26.

The SEC, however, makes no attempt to identify controlling decisions or facts that the Court overlooked, and instead advances new arguments. In its opposition to Defendants' motion to dismiss, the SEC did not argue that these statements in the 2011 Annual Report were material. *See* SEC Opp'n at 27, 38–41, ECF No. 80. The SEC also did not argue that Defendants' reliance on the Impairment Paper was improper. *See generally id.* The Court cannot consider these new arguments at this stage. *WestLB AG*, 912 F. Supp. 2d at 95. The SEC neither cites new law, nor suggests that the Court "overlooked the controlling decisions or factual matters that were put before [it] in the underlying motion." *Chepilko v. Cigna Life Ins. Co. of New York*, 952 F. Supp. 2d 629, 631 (S.D.N.Y. 2013).

Accordingly, the SEC's motion for reconsideration regarding the materiality of statements in Rio Tinto's 2011 Annual Report is DENIED.

### D. Aiding and Abetting

Because the Court has not changed its rulings on primary liability, it need not reevaluate whether Albanese and Elliott aided and abetted those violations.

Accordingly, the SEC's motion for reconsideration regarding its aiding and abetting claims is DENIED.

7

## CONCLUSION

For the reasons stated above, the SEC's motion for reconsideration, ECF No. 181, is denied.

SO ORDERED.

Dated: March 3, 2021
      New York, New York

ANALISA TORRES
United States District Judge