**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE COMMISSION,**

                                 **Plaintiff,**

**v.**

**RIO TINTO PLC, RIO TINTO LIMITED, THOMAS ALBANESE, and GUY ROBERT ELLIOTT,**

    **Defendants.**

No. 1:17-cv-7994-AT-DCF

---

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CERTIFY INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) OR, ALTERNATIVELY, TO ENTER PARTIAL FINAL JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

BACKGROUND ................................................................................................... 3

ARGUMENT ......................................................................................................... 7

  I.  **This Court should certify appeal under 28 U.S.C. § 1292(b)** ......................... 8

    A.  **This Court's ruling on the scope of liability under Rule 10b-5(a)
and (c) and Section 17(a)(1) and (3) involves a controlling question of law** ..........8

    B.  **There are substantial grounds for difference of opinion**.......................10

    C.  **Certification of appeal would materially advance the ultimate termination
of this case in the most efficient manner possible** ...................................16

  II.  **In the alternative, this Court should certify partial final judgment on the
dismissed claims under Rule 54(b)**............................................................... 18

CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Abdo v. Fitzsimmons*,
No. 17-cv-00851-TSH,  2021 WL 616324 (N.D. Cal. Feb. 17, 2021) .............................15

*In re Adelphia Communications Corp. Sec. and Derivative Litig.*,
No. 03 MDL 1529(LMM), 2006 WL 708303 (S.D.N.Y. Mar. 20, 2006) ........................18

*In re Air Crash Off Long Island, N.Y. on Jul. 17, 1996*,
27 F. Supp. 2d 431 (S.D.N.Y. 1998).....................................................................................8

*Analect LLC v. Fifth Third Bancorp*,
No. 06-CV-891 (JFB)(WDW), 2009 WL 2568540 (E.D.N.Y. Aug. 19, 2009) ...............16

*In re Bank of Am. Corp. Secs., Deriv. & ERISA Litig.*,
No. 09-2058, 2011 WL 3211472 (S.D.N.Y. July 29, 2011).............................................13

*Bay Casino, LLC v. M/V Royal Empress*,
No. 98 CV 2333(SJ), 1998 WL 566772 (E.D.N.Y. Aug. 21, 1998)................................16

*Bilello v. JPMorgan Chase Retirement Plan*,
603 F. Supp. 2d 590 (S.D.N.Y. 2009)..................................................................................9

*Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*,
368 F.3d 86 (2d Cir. 2004)................................................................................................11

*Chemical Bank v. Arthur Andersen & Co.*,
726 F.2d 930 (2d Cir. 1984)..............................................................................................11

*Computech Intern., Inc. v. Compaq Computer Corp.*,
No. 02 Civ. 2628(RWS), 2004 WL 2291496 (S.D.N.Y. Oct. 12, 2004)....................19, 20

*Curtiss–Wright Corp. v. General Elec. Co.*,
446 U.S. 1 (1980)...............................................................................................................19

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*,
135 F.3d 837 (2d Cir. 1998)..............................................................................................11

*In re Duplan Corp.*,
591 F.2d 139 (2d Cir. 1978)................................................................................................8

*Ellis v. Israel,*
    12 F.3d 21 (2d Cir.1993)..................................................................................19

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
    No. CV H-20-0576, 2021 WL 182316 (S.D Tex. Jan. 19, 2021)......................................16

*Ginett v. Computer Task Force,*
    962 F.2d 1085 (2d Cir. 1992)....................................................................19, 20, 21

*Hudson River Sloop Clearwater, Inc. v. Department of Navy,*
    891 F.2d 414 (2d Cir. 2014)..............................................................................19

*Johnson v. Costco Wholesale Corp.*,
    No. C 18-1611 TSZ, 2020 WL 4816225 (W.D. Wash. May 19, 2020)...........................14

*In re King*,
    624 B.R. 259 (Bankr. N.D. Ga. 2020) .................................................................15

*Kiobel v. Royal Dutch Petroleum Co.*,
    621 F.3d 111 (2d Cir. 2010)..............................................................................10

*Klein v. Altria Group*,
    No. 3:20cv75 (DJN), 2021 WL 955992 (E.D. Va. Mar. 12, 2021) ................................15

*Klinghoffer v. S.N.C. Achille Lauro,*
    921 F.2d 21 (2d Cir. 1990)..............................................................................8, 10

*Litzler v. CC Inv., L.D.C.,*
    362 F.3d 203 (2d Cir. 2004)..............................................................................11

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019)............................................................................. passim

*Maestri v. Westlake Excavating Co.*,
    894 F. Supp. 573 (N.D.N.Y 1995)......................................................................16

*Malouf v. SEC*,
    933 F.3d 1248 (10th Cir. 2019) ......................................................................7, 15

*In re Managed Care Litig.*,
    Nos. MDL 1334, 00–1334MDMORENO, 2002 WL 1359736
    (S.D. Fla. Mar. 25, 2002)................................................................................18

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
    65 F.3d 1044 (2d Cir. 1995)............................................................................11

*In re Microsoft Corp. Antitrust Litig.*,
    274 F. Supp. 2d 741 (D. Md. 2003) ...............................................................18

*Mohawk Industries, Inc. v. Carpenter*
    558 U.S. 100 (2009)..........................................................................................9

*Mulderrig v, Amyris*,
    No. 19-CV-1765 YGR, 2020 WL 5903844 (N.D. Cal Oct 5, 2020) ...............14

*N.Y. v. Gutierrez*,
    623 F. Supp. 2d 301 (E.D.N.Y. 2009) ..............................................................9
    *rev'd on other grounds sub nom. New York v. Atlantic States Marine Fisheries Com'n*,
    609 F.3d 524 (2d Cir. 2010)

*In re Overstock Sec. Litig.*,
    No. 2:19-CV-709-DAK-DAO, 2020 WL 5775845, (D. Utah Sept. 28, 2020)...................7

*Pollack v. Laidlaw Holdings, Inc.*,
    27 F.3d 808 (2d Cir. 1994)..............................................................................11

*Quinn v. City of Boston*,
    325 F.3d 18 (1st Cir. 2003)..............................................................................20

*Sears, Roebuck & Co. v. Mackey*,
    351 U.S. 427 (1956)........................................................................................19

*SEC v. Collins & Aikman*,
    524 F. Supp. 2d 477 (S.D.N.Y. 2007)............................................................13

*SEC v. Dunn*,
    587 F. Supp. 2d 486 (S.D.N.Y. 2009)............................................................13

*SEC v. Enterprises Sols., Inc.*,
    142 F. Supp. 2d 561 (S.D.N.Y. 2001)............................................................13

*SEC v. Kameli*,
    No. 17 C 4686, 2020 WL 2542154 (N.D. Ill. May 19, 2020) ................2, 14, 15

*SEC v. SeeThruEquity, LLC*,
    No. 18-10374, 2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019) ..........................14

*SEC v. Takeyasu*,
No: 17-cv-4866-GHW, 2018 WL 2849777 (S.D.N.Y. June 11, 2018) ............................12

*SEC v. Tourre*,
No. 10 Civ. 3229(KBF), 2014 WL 61864 (S.D.N.Y. Jan. 7, 2014) ..................................13

*SEC v. U.S. Environmental, Inc.*,
155 F.3d 107 (2d Cir. 1998)..........................................................................................11

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
531 F.3d 190 (2d Cir. 2008)..........................................................................................11

*Weintraub v. Bd. of Educ. of the City of N.Y.*,
593 F.3d 196 (2d Cir. 2010)..........................................................................................10

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)..........................................................................................11

## STATUTES AND RULES

Federal Rule of Civil Procedure 54(b) ............................................................................18

28 U.S.C. § 1292(b) ........................................................................................................8

## INTRODUCTION

The Securities and Exchange Commission respectfully moves this Court to certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) its March 3, 2021 Order denying reconsideration of its dismissal of the Commission's claims under Exchange Act Rule 10b-5(a) and (c) and Securities Act Section 17(a)(1) and (3).  ("Recon. Order") [ECF No. 213].  In the alternative, the Commission respectfully requests that the Court find that there is no just cause for delay and direct that a final judgment be entered on those claims under Federal Rule of Civil Procedure 54(b), so that the Commission may appeal from that judgment.  The Commission will proceed with the current litigation schedule and will not seek a stay if the Court grants this motion.

The Commission understands and respects the usual reasons why courts are generally hesitant to allow appeals before final judgment of all of a party's claims, and it does not seek this interlocutory appeal lightly.  Indeed, we are not aware of any instance of the Commission seeking an interlocutory appeal since 2011, and only a handful of such requests in the past twenty years.  But the Commission respectfully views this Court's ruling as fundamentally irreconcilable with the Supreme Court's holding and reasoning in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019).

An interlocutory appeal is particularly warranted here because other courts have interpreted *Lorenzo* in a manner that conflicts with this Court's interpretation.  In *Lorenzo*, the Supreme Court addressed whether a person violates Rule 10b-5(a) and (c) and related provisions of Section 17(a) "when the only conduct involved concerns a misstatement."  *Id.* at 1100.  The Supreme Court squarely answered in the affirmative.  *Id.* at 1101-03.  This Court, however, held that it "disagree[d] with the SEC's contention that *Lorenzo* holds that 'misstatements can form the basis for liability under Rule 10b-5(a) and (c) and § 17(a)(1).'"  Recon. Order at 4-5.  This Court's ruling—which requires dissemination by the defendant for these provisions to reach misstatements, *id*. at 5—

reaches a different conclusion than several other district courts in this circuit and throughout the country, which have not required dissemination by the defendant but rather have found that Rule 10b-5(a) and (c) and Section 17(a) can reach a wide range of statement-related conduct. *See, e.g., SEC v. Kameli*, No. 17 C 4686, 2020 WL 2542154, at *14 (N.D. Ill. May 19, 2020) (holding same interpretation of *Lorenzo* adopted by this Court "not plausible"). The difference in judicial interpretations results in significantly different scopes of liability being applied by different judges for important and frequently invoked antifraud provisions. This is exactly the type of unsettled, highly consequential issue the Second Circuit should review as quickly as possible.

The standard for interlocutory appeal is satisfied here: This Court's ruling is controlling in the instant case, there are significant grounds for difference of opinion, and an immediate appeal would materially advance the ultimate, final termination of this action. The Commission plans to appeal this Court's decision. Permitting the Commission to do so now, instead of after trial and the entry of judgment on the handful of remaining claims, would cause little to no disruption to the proceedings in this case; would serve judicial efficiency by avoiding the prospect of two trials; and would serve the public interest by providing the Second Circuit with the opportunity to address a stark difference of opinion in a critical area of securities law.

An interlocutory appeal will hasten and simplify the termination of this litigation, and the Commission will not seek a stay of district court proceedings pending appeal. If the Second Circuit accepts the appeal, the Commission will commit to filing its opening brief in less than half the time normally allotted.[1] A Second Circuit ruling agreeing or disagreeing with the Commission's

---

[1] The Commission staff promptly sought Commission approval for this certification request and are filing this motion upon receiving such Commission authorization.

interpretation of *Lorenzo* would thus likely come before the trial, which is scheduled for the second quarter of 2022, and could both simplify the trial and avoid the need for a second one.

Alternatively, this Court should enter final judgment on the dismissed claims. The Court's legal rulings have finally disposed of those claims which, under this Court's holding, are separate from the claims that remain. There is thus no just reason to delay entry of judgment.

## BACKGROUND

The Commission alleges that in 2012, Rio Tinto engaged in a sustained course of conduct to mislead the investing public about its Mozambique coal project, RTCM, in two ways. First, Rio Tinto did not write down the value of RTCM after multiple indications of a huge value loss, including a management estimate that RTCM was worth negative $680 million. This led to a Half Year 2012 report with financial statements that overstated the value of Rio Tinto's assets and understated the extent of its impairments. Second, CEO Albanese made multiple materially false and misleading statements to investors in August and November 2012, creating the misleading impression that RTCM's prospects were as good, if not better, than when Rio Tinto bought it for $3.7 billion in 2011, and concealing the factors that had caused a huge loss in the project's value.

Albanese and CFO Elliott, who were responsible for ensuring the integrity of Rio Tinto's financial reporting and internal controls system, were involved in this course of deception. As is often the case with executives in accounting frauds, Albanese and Elliott culpably participated in the deceptive course of business in a variety of ways that often involved the use of statements or omissions—calling and attending meetings, issuing directions, controlling the flow of information, placing their imprimatur on misleading statements prepared by others, and, in the case of Albanese, making misleading statements to investors. Defendants thus "undermined the impairment process," *id*. ¶ 6, over which Elliott had direct oversight, *id*. ¶¶ 39, 43, through "[t]heir decision to

cabin or conceal negative information about RTCM," which "corrupted the integrity of the half-year reporting process."[2] *Id*. ¶ 122.

### The Court's Motion to Dismiss Ruling

In March 2018, Defendants moved to dismiss all claims in the Complaint. Their arguments relied on the same arguments later explicitly rejected in *Lorenzo*. For example, Defendants claimed that their "alleged acts all stem from alleged misrepresentations or omissions," Dkt. No. 71, at 47, and that the "alleged conduct here is part-and-parcel of—not distinct from—the alleged misrepresentations," Dkt. No. 81, at 22, and therefore must be brought under Rule 10b-5(b) or not at all. Defendants also cited as support for their position, *see* Dkt. No. 71, at 47, *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039 (9th Cir. 2011)—the same case *Lorenzo* rejected when it affirmed the judgment of the D.C. Circuit that the Commission had relied on in opposing Defendants' motion to dismiss. *See Lorenzo*, 139 S. Ct. at 1100.

In March 2019, this Court issued an opinion and order dismissing all but a handful of the Commission's claims. ("MTD Order") [ECF No. 135]. Among other things, this Court upheld the Commission's Rule 10b-5(b) claim for statements made by Albanese at investor seminars, and the Commission's Section 17(a)(2) claim against Rio Tinto for the HY 2012 Report. This Court then dismissed all claims brought under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3), and all aiding and abetting claims. This Court held that liability under those provisions could be premised only on "an inherently deceptive act distinct from an alleged misrepresentation." MTD Order 35-36 (quotation marks omitted). This Court held that misrepresentations could form the

---

[2] The SEC's proposed Amended Complaint, which it was denied leave to file, added allegations of more conduct by Albanese and Elliott, including that, as directors, they voted to approve the misleading HY 2012 report and were part of the small committee that finalized and disseminated the report, and that Elliott led the August 2012 bond offering whereby Rio Tinto capitalized on the misleading HY 2012 report. *See* ECF No. 162-1.

basis only for claims under Rule 10b-5(b) and Section 17(a)(2), and then only for one who "makes" the misrepresentation. *Id.* at 34-36, 38. This Court acknowledged that *Lorenzo*, then pending before the Supreme Court, could "clarify" the scope of the antifraud provisions. *Id*. at 36 n.9.

### *Lorenzo v. SEC*

Nine days after this Court's order, the Supreme Court decided *Lorenzo*. In *Lorenzo*, the Supreme Court addressed whether "those who do not 'make' statements" under Rule 10b-5(b) may be liable under other parts of Rule 10b-5 and Securities Act Section 17(a) by engaging in fraudulent conduct where the allegations involved a misstatement. In that case, Francis Lorenzo, the director of investment banking at a registered broker-dealer, disseminated misstatements with fraudulent intent but was found not to have made the misstatements himself. 139 S. Ct. at 1099-1100. The Court held that one who "d[oes] not 'make' the statements and consequently falls outside subsection (b) of the Rule" may be liable under the other antifraud provisions based on fraudulent conduct. *Id.* at 1101.

In doing so, the Supreme Court clarified several critical points relevant to this case. *First*, the Court made clear that the text of the antifraud provisions is "expansive," 139 S. Ct. at 1102, "broad," *id.* at 1101, and "capture[s] a wide range of conduct," *id.*; *see id.* (examining dictionary definitions to determine the meaning of the provisions). *Second*, as the Court and the Commission "have long recognized," there is "considerable overlap among the subsections of the Rule and related provisions of the securities laws." *Id.* at 1102. The Court addressed that issue while rejecting the defendant's argument that "only those who 'make' untrue statements under subsection (b) can violate Rule 10b-5 in connection with statements," because the argument was based on the mistaken premise "that each of these provisions should be read as governing different, mutually exclusive, spheres of conduct." *Id.* at 1101-02; *see id.* at 1102 ("The idea that each

subsection of Rule 10b-5 governs a separate type of conduct is also difficult to reconcile with the language of subsections (a) and (c)."). And *third*, the Court warned against interpretations that would allow fraudulent behavior to "fall outside the scope" of the antifraud provisions. *Id.* at 1102. In that case, for example, "*Lorenzo*'s view that subsection (b), the making-false-statements provision, exclusively regulates conduct involving false or misleading statements would mean those who disseminate false statements with the intent to cheat investors might escape liability under the Rule altogether." *Id.* at 1102-03.

The Supreme Court could fathom no reason "why Congress or the Commission would have wanted to disarm enforcement in this way," an approach the Court "cannot easily reconcile . . . with the basic purpose behind these laws: 'to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry.'" *Id.* (quoting *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963)). As the Court noted, "Congress intended to root out all manner of fraud in the securities industry. And it gave to the Commission the tools to accomplish that job." *Id.* at 1104.

The impact of *Lorenzo* was briefed and litigated in accordance with the schedule set by the Court, culminating in the Commission's motion for reconsideration of the Motion to Dismiss Order. [ECF No. 182].

### The Court's Ruling on Motion for Reconsideration

This Court denied the motion. It "disagree[d] with the SEC's contention that *Lorenzo* holds that 'misstatements can form the basis for liability under Rule 10b-5(a) and (c) and § 17(a)(1).'" Recon. Order at 4-5. It ruled that *Lorenzo* only holds "that those 'who disseminate false or misleading statements to potential investors with the intent to defraud' can be liable under these provisions, not that misstatements alone are sufficient to trigger scheme liability." *Id.* at 5 (quoting

*Lorenzo*, 139 S. Ct. at 1099). The Court upheld its prior decision because, in the Court's view, "the SEC does not allege that Defendants disseminated such false information, only that they failed to prevent misleading statements from being disseminated by others." *Id.*

The parties then jointly proposed a schedule for briefing on *Daubert* motions and Defendants' motion for summary judgment. The Court endorsed that schedule and has ordered the parties to submit pretrial filings for a trial in the second quarter of 2022. ECF Nos. 216, 217.

## ARGUMENT

In its Reconsideration Order, this Court construed Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) to exclude from liability all conduct related to misstatements, with a lone carve-out for cases involving a defendant's dissemination of misstatements that he or she did not make. In *Lorenzo*, however, the Supreme Court relied on the broad language and purposes of the antifraud provisions, and warned against interpreting those provisions in a manner that would allow those who culpably participate in a fraudulent course of business from escaping liability. This Court did not address *Lorenzo*'s rationale that focused on the language or purposes of the provisions when it limited the scope of *Lorenzo* to the precise factual scenario before the Supreme Court. In contrast, other courts have recognized *Lorenzo*'s focus on the "language, purpose, and overlap" of the antifraud provisions, *Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir. 2019), *cert. denied*, 2020 WL 1124531 (2020), which reach a "wide range of conduct," *In re Overstock Sec. Litig.*, No. 2:19-CV-709-DAK-DAO, 2020 WL 5775845, 2020 WL 5775845, at *10 (D. Utah Sept. 28, 2020).

This Court's ruling was controlling, disposing of most of the Commission's claims, and there are significant grounds for difference of opinion, with most courts interpreting *Lorenzo* and the scope of the securities laws in a less restrictive way that captures more conduct that is fraudulent. An immediate appeal would also materially advance the ultimate termination of all the

claims in this case because the Commission is not abandoning its claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3), and it would be a waste of judicial resources to have two trials in this case: one on the handful of claims currently in the case, and another on the dismissed claims after appeal from a final judgment. Moreover, the legal issue at stake is of great importance in the field of securities law, and the public interest would be served by obtaining clarity from the Second Circuit sooner rather than later—regardless of whether the Second Circuit agrees or disagrees with the Commission's interpretation of *Lorenzo*.

### I.    This Court should certify appeal under 28 U.S.C. § 1292(b)

Under 28 U.S.C. § 1292(b), "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the court "shall so state in writing in such order." 28 U.S.C. § 1292(b). Here, all three factors support certification.

### A.    This Court's ruling on the scope of liability under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) involves a controlling question of law

A question of law is "controlling" if its resolution "may importantly affect the conduct of an action." *In re Duplan Corp.*, 591 F.2d 139, 149 n. 11 (2d Cir. 1978). The resolution "need not necessarily terminate an action in order to be 'controlling.'" *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990). Certification can be particularly appropriate where the issue involves "a purely legal question about which there are no triable issues of fact." *In re Air Crash Off Long Island, N.Y. on Jul. 17, 1996*, 27 F. Supp. 2d 431, 435 (S.D.N.Y. 1998). A significant factor weighing in favor of certification, moreover, is where a decision on the question of law would have important application to other cases. *See Klinghoffer*, 921 F.2d at 24. As the Supreme

Court has explained, "[t]he preconditions for § 1292(b) review—'a controlling question of law,' the prompt resolution of which 'may materially advance the ultimate termination of the litigation'—are most likely to be satisfied when a ... ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases." *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009).

This Court's reconsideration ruling involves a purely legal question regarding the scope of *Lorenzo*, issued at the pleadings stage, which disposed of most of the Commission's claims. The legal issue was dispositive of the Commission's claims, involves interpretation of a new Supreme Court case, and is of special consequence throughout the field of securities fraud litigation. It is therefore controlling.

Questions of law need not be case-dispositive to be controlling, as limiting Section 1292(b) appeals solely to such questions would "read[] the phrase 'materially advance' out of the statute." *Bilello v. JPMorgan Chase Retirement Plan*, 603 F. Supp. 2d 590, 592-93 (S.D.N.Y. 2009). In determining whether the issue is "controlling," courts in the Second Circuit instead look to whether "reversal of the district court's opinion, even though not resulting in dismissal could significantly affect the conduct of the action" and whether "the certified issue has precedential value for a large number of cases." *N.Y. v. Gutierrez*, 623 F. Supp. 2d 301, 316 (E.D.N.Y. 2009) (quoting *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001)), *rev'd on other grounds sub nom. New York v. Atlantic States Marine Fisheries Com'n*, 609 F.3d 524 (2d Cir. 2010).

Here, a decision by the Second Circuit agreeing or disagreeing with this Court's reconsideration denial would significantly simplify and shorten the litigation by avoiding the prospect of a second trial after appeal of a final judgment. It is likely that an interlocutory appeal could be heard and decided in advance of the trial date in the second quarter of 2022. Moreover,

resolution of this issue would simplify the jury instructions and trial in this case, as it would allow the jury to consider scienter-based liability for all defendants based on the totality of each defendant's involvement in the materially misleading HY 2012 financial statement. Under this Court's ruling, there is more risk of complicated jury instructions and trial presentation regarding evidence of misstatements and omissions involving Albanese and Elliott—which form important evidence and provide context, but which this Court has found inadequate to establish fraud.

The issue the Commission asks this Court to certify would also have significant precedential and persuasive value in many other cases, both in this circuit and beyond, given the Second Circuit's influential role in developing the law. Because courts "may properly consider the system-wide costs and benefits of allowing the appeal," "the impact that an appeal will have on other cases is a factor that [courts] may take into account." *Klinghoffer*, 921 F.2d at 24. The Commission is a frequent litigant, particularly in the Second Circuit, which is also where a considerable portion of private shareholder suits are filed. As many of the Commission's fraud cases involve charges under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3), interpretation of those provisions by the Second Circuit—which has not yet had an opportunity to interpret the impact of *Lorenzo*—is of vital importance to the development of the federal securities laws.

## B.    There are substantial grounds for difference of opinion

A common example of a substantial ground for difference of opinion is where "the issues are difficult and of first impression," *Klinghoffer*, 921 F.2d at 25, and the Second Circuit has regularly approved the use of Section 1292(b) certification to allow it to rule on the scope of a potentially controlling Supreme Court decision, *see, e.g.*, *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010) (addressing impact of *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), on Alien Tort Statute claims); *Weintraub v. Bd. of Educ. of the City of N.Y.*, 593 F.3d 196 (2d Cir. 2010) (addressing impact of *Garcetti v. Ceballos*, 547 U.S. 410 (2006), on First Amendment

employment retaliation claims), *cert. denied*, 131 S. Ct. 444 (2010).  The Second Circuit likewise has not hesitated to use Section 1292(b) to interpret the scope of recent Supreme Court opinions in the field of securities law.  *See, e.g.*, *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837 (2d Cir. 1998) (addressing impact of *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), on federal securities claims); *Pollack v. Laidlaw Holdings, Inc.*, 27 F.3d 808 (2d Cir. 1994) (addressing impact of *Reves v. Ernst & Young*, 494 U.S. 56 (1990), on federal securities claims).  More broadly, the Second Circuit frequently accepts Section 1292(b) appeals to resolve novel and important questions of securities law.[3]

The application of *Lorenzo* to securities enforcement suits represents an important, recurring issue in the interpretation of the securities laws' antifraud provisions.  The Supreme Court granted certiorari in *Lorenzo* "to resolve disagreement" among lower courts over the scope of Rule 10b-5(a) and (c) and Section 17(a)(1).  139 S. Ct. at 1100.  The Supreme Court cited *Lorenzo v. SEC*, 872 F.3d 578 (D.C. Cir. 2017) and *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1029, 1057-58 (9th Cir. 2011), as examples of either side of that

---

[3] *See, e.g.*, *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) (addressing an investment advisor's standing to assert securities claims on behalf of its client); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190 (2d Cir. 2008) (addressing the standard for pleading corporate scienter for Exchange Act claims); *Litzler v. CC Inv., L.D.C.*, 362 F.3d 203 (2d Cir. 2004) (addressing the tolling of claims under Section 16(b) of the Exchange Act); *Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004) (addressing whether Securities Act claims can be removed to federal court as "related to" a pending bankruptcy case); *SEC v. U.S. Environmental, Inc.*, 155 F.3d 107 (2d Cir. 1998) (addressing the scienter standard for market manipulation claims under the Exchange Act); *Dinsmore* 135 F.3d 837  (addressing the viability of private claims for conspiracy to commit securities fraud); *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044 (2d Cir. 1995) (addressing the measure of damages available under the Securities and Exchange Acts); *Pollack* 27 F.3d 808  (addressing whether an instrument constituted a "security" for purposes of the Securities and Exchange Acts); *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir. 1984) (Friendly, J.) (addressing whether instruments constituted "securities" and whether certain conduct fell within the scope of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act).

disagreement. *Id*. The Supreme Court resolved that disagreement by fully endorsing the D.C. Circuit's reasoning in *Lorenzo*. First, the Supreme Court emphasized that the text of the antifraud provisions is "expansive," 139 S. Ct. at 1102, "broad," *id*. at 1101, and "capture[s] a wide range of conduct," *id*. Second, the Supreme Court noted "considerable overlap among the subsections of the Rule and related provisions of the securities laws." *Id*. at 1102. The Supreme Court rejected Lorenzo's argument "that each of these provisions should be read as governing different, mutually exclusive, spheres of conduct," *id*. at 1101-02, a position that is "difficult to reconcile with the language of subsections (a) and (c)." *Id*. at 1102.

A substantial ground for difference of opinion exists with respect to this Court's ruling, warranting interlocutory review. Even though the Supreme Court rejected the argument that "only those who 'make' untrue statements under subsection (b) can violate Rule 10b-5 in connection with statements," 139 S. Ct. at 1101-02, this Court held that it "disagrees with the SEC's contention that *Lorenzo* holds that 'misstatements can form the basis for liability under Rule 10b-5(a) and (c) and § 17(a)(1).'" Recon. Order at 4-5. This Court has previously found the SEC's allegations against Albanese and Elliott deficient because, in its view, all of the alleged conduct "is either a misstatement or omission that would form the basis of liability under Rule 10b-5(b)," MTD Order at 36, and this Court reiterated that stance in its Reconsideration Order, holding that the SEC fails to state a claim based on misstatements because it "does not allege that Defendants disseminated such false information, only that they failed to prevent misleading statements from being disseminated by others."[4] Recon. Order at 5. Yet the Supreme Court did not state that its holding

---

[4] Courts in other cases involving accounting frauds and other complex frauds, however, have noted that the broad range of conduct that perpetuates a false impression will often include verbal conduct—that is, statements and omissions that are calculated to advance the fraud. *Lorenzo* only underscores that these cases were correctly decided. *See, e.g., SEC v. Takeyasu*, No: 17-cv-4866-GHW , 2018 WL 2849777, at *19 (S.D.N.Y. June 11, 2018) (denying motion to dismiss where

applies only to those who disseminate misstatements.  Nor did the Supreme Court in any way suggest that dissemination was the only form of conduct related to misstatements that could be captured by the "broad" and "expansive" terms of Rule 10b-5(a) and (c).  139 S. Ct. at 1101-02. Instead, the Supreme Court focused on whether Lorenzo's dissemination of misstatements constituted employing a "device," "scheme," or "artifice to defraud," or engaging in an "act, practice, or course of business" that "operate[d] . . . as a fraud or deceit," the very terms the Court had described as "expansive," 139 S. Ct. at 1102, and "captur[ing] a wide range of conduct," *id*. at 1101, regardless of whether a Rule 10b-5(b) claim could also be brought in connection with that conduct.  *Id*. at 1102.  *Lorenzo* thus rejected this Court's interpretation of Rule 10b-5(a) and (c) as encompassing only the narrow act of dissemination and excluding all other conduct related to misstatements and omissions.

---

SEC alleged top executives responsible for accounting were aware of improper accounting but did not take "steps to correct the failed internal controls" and "turned a blind eye" to "allegations of failing internal controls."); *In re Bank of Am. Corp. Secs., Deriv. & ERISA Litig.*, No. 09-2058, 2011 WL 3211472, at *5-10 (S.D.N.Y. July 29, 2011) (plaintiffs pled liability where CFO was "personally informed" of huge losses but failed to inform disclosure counsel, leaving them "out of the loop" and "imped[ing]" them "from making a fully informed analysis."); *SEC v. Dunn*, 587 F. Supp. 2d 486, 507 (S.D.N.Y. 2009) (CFO's knowledge of accounting practice and "failure to investigate further the details and propriety" of the accounting "by a person in [his] senior financial position constitutes an extreme departure from the standards of ordinary care and an egregious refusal to see the obvious, or to investigate the doubtful.") (internal quotation marks and citations omitted); *SEC v. Enterprises Sols., Inc.*, 142 F. Supp. 2d 561, 576 (S.D.N.Y. 2001) (senior executives act with "reckless disregard for the truth" when informed of facts rendering public statements materially misleading and "failing to see to it" that those facts are disclosed); *SEC v. Tourre*, No. 10 Civ. 3229(KBF),, 2014 WL 61864, at *5 (S.D.N.Y. Jan. 7, 2014) (SEC established liability under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) where statements and omissions by Tourre "alleged an array of supporting conduct by Tourre that was designed and geared in a myriad of ways to support (or not undercut) [a] mistaken belief"); *SEC v. Collins & Aikman*, 524 F. Supp. 2d 477, 486 (S.D.N.Y. 2007) ("[A] person who, in concert with others, participates in a securities fraud scheme by making false statements does incur liability under section 10(b)," including subsections (a) and (c)).

In its Reconsideration Order, this Court distinguished the post-*Lorenzo* cases the Commission cited by stating that those cases featured dissemination. Recon. Order at 5. While some of the cases involved the dissemination of misstatements—just like this case, in which Albanese made multiple misstatements at investor events—they did not solely involve dissemination, nor did they require it. Rather, they involved a range of conduct related to misstatements, and considered that conduct as a whole. Further, the Supreme Court in *Lorenzo* rejected the Ninth Circuit's ruling in *WPP Luxembourg*, 655 F.3d at 1057-58, instead choosing the D.C. Circuit's ruling in *Lorenzo* as the correct side of the "disagreement" among lower courts. 139 S. Ct. at 1100. *WPP Luxembourg* did not involve dissemination. If the Supreme Court had intended to confine its holding to dissemination, as this Court has done, it would not have abrogated *WPP Luxembourg* and would not have considered it in conflict with the D.C. Circuit's *Lorenzo* holding. *See Mulderrig v. Amyris*, No. 19-CV-1765 YGR, 2020 WL 5903844, at *21 (N.D. Cal. Oct. 5, 2020) (noting that *Lorenzo* abrogated *WPP Luxembourg*); *Johnson v. Costco Wholesale Corp.*, No. C 18-1611 TSZ, 2020 WL 4816225, at *4 (W.D. Wash. May 19, 2020) (same); *see also SEC v. SeeThruEquity, LLC*, No. 18-10374, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019) (noting that *Lorenzo* overruled the reasoning of *SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011), which this Court relied on extensively, *see* MTD Order at 34-38).

A substantial ground for a difference of opinion also exists because most courts have continued to recognize that *Lorenzo* requires interpreting the antifraud provisions according to their plain, broad, overlapping text. For instance, when the defendants in *Kameli* advanced the same argument as the defendants here, the district court deemed it "not plausible":

> Defendants read *Lorenzo* differently. They contend that asserting claims under Rule 10b-5(a) and (c) based only on misrepresentations generally remains verboten under *Lorenzo*. On their view, *Lorenzo* merely carves out an exception allowing such claims where the defendant is alleged to have *disseminated* the misrepresentation, rather than having made

it. This interpretation is not plausible. Defendants arrive at their interpretation by seeking to square *Lorenzo* with prior cases holding that claims under Rule 10b-5(a) and (c) cannot be based on the same conduct as claims under Rule 10b-5(b). The court sees no basis for that assumption. Rather than positing a fine distinction between "making" statements and "disseminating" them, *Lorenzo* effectively abrogated the line of cases on which defendants rely and permits liability under Rule 10b-5(a) and (c) for both making and disseminating misleading statements—despite some resulting redundancy with Rule 10b-5(b).

2020 WL 2542154, at *14.

The court in *Abdo v. Fitzsimmons*, No. 17-cv-00851-TSH, 2021 WL 616324, at *12 (N.D. Cal. Feb. 17, 2021), likewise emphasized *Lorenzo*'s broad interpretation of the antifraud provisions, and held that directors could be liable for their role in a fraud, which included being "present at the Audit Committee meeting the next day where the fraud was discussed, including that 'there were *possible misstatements* in a slide deck prepared by the Company and *sent to certain* customers [and] *potential investors*....,*" and going along with rather than taking action to end the fraud. *Id.* The Tenth Circuit has held that an investment adviser could be held liable under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) for misstatements that were made by another where he "was familiar with the contents" of the inaccurate forms but "took no action to correct material misstatements." *Malouf*, 933 F.3d at 1254. Another court has found that liability under Rule 10b-5(a) and (c) could be established where a defendant used "falsified data and studies" created by others and "bore responsibility" for misstatements, despite not making or disseminating them himself. *Klein v. Altria Group*, No. 3:20cv75 (DJN), 2021 WL 955992, at *15 (E.D. Va. Mar. 12, 2021). Similarly, in order to construe Minnesota state fraud statutes whose language was copied from Rule 10b-5, the court in *King* analyzed *Lorenzo* and cases applying it, finding that the Rule's "language captures a wide range of conduct, and individuals may be liable when they substantially participate or are intricately involved in the fraud." *In re King*, 624 B.R. 259, 293 (Bankr. N.D. Ga. 2020) (citation omitted). *See also Georgia Firefighters' Pension Fund v.*

15

*Anadarko Petroleum Corp.*, No. CV H-20-0576, 2021 WL 182316, at *7 (S.D Tex. Jan. 19, 2021) (citing *Lorenzo* for proposition that there can be "significant overlap among the theories of liability under Rule 10b-5," and holding that "[t]o establish liability under Rule 10b-5(c) for deceptive business practices, the plaintiff must prove that 'the defendant ... engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme.'")

A decision by the Second Circuit on the scope of *Lorenzo*—regardless of whether that Court agrees with this Court or the Commission—will thus provide guidance to litigants in this case and others on the scope of the major statutory and regulatory tools the Commission uses to root out securities fraud.  Certification is warranted so that this important, recurring issue will be resolved without delay.

### C.  Certification of appeal would materially advance the ultimate termination of this case in the most efficient manner possible

"Interlocutory appeals must advance the cause of saving court time," *Bay Casino, LLC v. M/V Royal Empress*, No. 98 CV 2333(SJ), 1998 WL 566772, at *3 (E.D.N.Y. Aug. 21, 1998), and therefore should be permitted only where they will materially advance the ultimate termination of the case.  Where an appellate decision would "clarify the rights of the parties or terminate the litigation" it "may materially advance the ultimate termination of the litigation."  *Maestri v. Westlake Excavating Co.*, 894 F. Supp. 573, 578 (N.D.N.Y 1995).  An interlocutory appeal may materially advance the ultimate disposition of the case, for instance, by increasing the efficiency of litigation or hastening the overall conclusion of the litigation.  "Ultimately, '[t]he critical requirement is that [an interlocutory appeal] have the potential for substantially accelerating the disposition of the litigation.'" *Analect LLC v. Fifth Third Bancorp*, No. 06-CV-891 (JFB)(WDW), 2009 WL 2568540, at *5 (E.D.N.Y. Aug. 19, 2009) (quoting *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978))).

16

Here, interlocutory appeal would materially advance the ultimate, final determination of all claims in this case in the manner that is most efficient for the time and resources of the court system.  First, interlocutory appeal will greatly reduce the risk that two trials will be needed to resolve this litigation.  Because this Court's rulings have dismissed most of the Commission's claims, including all scienter-based and individual fraud claims for the fraudulent HY 2012 report, and, importantly, all fraud claims for Elliott, the Commission will plan to appeal this Court's interpretation of the antifraud provisions and its dismissal of all fraud claims against Mr. Elliott even if it wins at trial on the claims that remain in the case.  If the Commission were to win that appeal, the result would be a second, highly duplicative trial, adding significant delay to the ultimate termination of this litigation, not to mention causing significant duplication of effort by this Court and the empaneling of two juries instead of one.  The prospect of two trials is especially inefficient in a case like this one, which involves numerous witnesses who live overseas.  There would be significant inconvenience to those witnesses of attending two trials—not to mention the significant cost—which could be obviated by certifying the matter for appeal now.

Second, an interlocutory ruling by the Second Circuit could simplify the litigation by clarifying the rights of the parties.  As it currently stands, the Commission will present evidence to prove its remaining charges against the individual defendants, evidence that the Court has held is not sufficient, as a matter of law, to establish liability against Rio Tinto under Rule 10b-5(a) and (c), or any provisions of Section 17(a).  This will necessitate potentially complicated litigation over motions *in limine*, jury instructions, and verdict forms.  If the Second Circuit rules in favor of the Commission, these matters would be simplified and the litigation would be more efficient.  Interlocutory appeal is permitted where a reversal could impact motions practice and the admissibility of evidence at trial.  *See, e.g., In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d

741, 743 (D. Md. 2003) (certifying under Section 1292(b) because reversal would affect the scope both of discovery and the evidence admissible at trial); *In re Managed Care Litig.*, No. MDL 1334, 00–1334MDMORENO, 2002 WL 1359736, at *2 (S.D. Fla. Mar. 25, 2002) (certifying a question because "the scope of future discovery, motion practice and trial activities would be limited significantly if the Order were reversed").

At the same time, certifying an interlocutory appeal in this case is not likely to result in any delay of the district court litigation. The Commission is not requesting a stay of proceedings. To expedite matters, if this Court certifies this matter for appeal under Section 1292(b) and the Second Circuit accepts the appeal, the Commission will commit to submitting its opening appellate brief to the Second Circuit in 45 days, less than half the 91 days permitted under the rules. With trial slated for the second quarter of 2022, there is time for the Second Circuit to rule in advance of trial. Certification is appropriate where the appeal raises a "discrete legal issue not dependent on disputed facts that can easily be briefed promptly," *In re Adelphia Communications Corp. Sec. and Derivative Litig.*, No. 03 MDL 1529(LMM), 2006 WL 708303, at *4 (S.D.N.Y. Mar. 20, 2006), and would significantly affect the future conduct of the action. *Id*.

## II.    In the alternative, this Court should certify partial final judgment on the dismissed claims under Rule 54(b)

In the alternative, this Court should enter a final judgment on the claims that have been dismissed under Federal Rule of Civil Procedure 54(b). Rule 54(b) states:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

There are three prerequisites for entering a partial final judgment under Rule 54(b): "(1) multiple *claims* or multiple *parties* must be present, (2) at least one claim, or the rights and

liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make 'an express determination that there is no just reason for delay' and expressly direct the clerk to enter judgment." *Ginett v. Computer Task Force*, 962 F.2d 1085, 1091 (2d Cir. 1992).  While some courts have said that partial final judgment should be entered only in the "infrequent harsh case," this requirement has been explicitly rejected by the Supreme Court, *Curtiss Wright Corp, v. General Elec. Co.*, 446 U.S. 1, 10 (1980), and by the Second Circuit, which noted that "we cannot, as the Supreme Court has recognized, hide behind the old 'infrequent harsh case' chestnut," which had been "neither workable nor entirely reliable.'" *Ginett*, 962 F.2d at 1094-95; *see Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 419 (2d Cir. 2014).  Instead, "[t]he proper guiding star, as the Supreme Court has emphasized, is 'the interest of sound judicial administration.'" *Ginett*, 962 F.2d at 1095 (*quoting Curtiss-Wright,* 446 U.S. at 8).  *See also Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437 (1956).

In this case, the prerequisites for entry of a partial final judgment are met, and entry of final judgment would advance "the interest of sound judicial administration."  First, the Commission charged multiple parties with multiple claims.  Second, the Commission's claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) have been dismissed in their entirety, with no claim under these provisions remaining in the case.  "A claim is deemed finally decided "[i]f the decision 'ends the litigation [of that claim] on the merits and leaves nothing for the court to do but execute the judgment' entered on that claim.'" *Ginett*, 962 F.2d  at 1092 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467 (1978)) (second alteration in original); *accord Ellis v. Israel,* 12 F.3d 21, 23 (2d Cir. 1993).  *Computech Intern, Inc. v. Compaq Computer Corp.* No. 02 Civ. 2628(RWS), 2004 WL 2291496, *1 (S.D.N.Y. Oct. 12, 2004)

There is also no just reason for delay.  As noted above, entering the judgment will not delay

the litigation in the district court. If anything, entry of final judgment now, if it results in a Second Circuit opinion before trial of the remaining claims, would make for more efficient litigation by simplifying and settling questions around jury instructions and the admissibility of evidence, and would advance the ultimate termination of the case. In addition, as noted above, the ability to appeal now would provide benefits beyond the instant case, by allowing the Second Circuit to articulate the law now in an important and developing area affecting many other securities fraud cases. Waiting to appeal until after the 2022 trial would lead to continuing uncertainty in an important area of securities law for both the Commission and private securities litigants. "[T]he most important factor counseling in favor of allowing an immediate appeal in this case is the public interest." *Quinn v. City of Boston*, 325 F.3d 18, 27 (1st Cir. 2003) (entering partial final judgment to permit appeal on claims of discrimination in firefighter hiring, which was ongoing at the time).

This case does not involve any of the factors that typically counsel against entry of a partial final judgment. For instance, this Court has drawn a clear distinction between the claims that have been permitted to go forward and those that have been dismissed, with *no* claims remaining based on misconduct by Albanese or Elliott, or involving scienter-based charges, related to the HY 2012 financial statement. As a result, the Second Circuit would not be ruling on matters that remain before this Court. The Second Circuit has explained that "[o]nly those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for Rule 54(b) certification." *Ginett*, 962 F.2d at 1096. Moreover, "[t]he mere interrelatedness of claims does not connote their inseparability," *Computech* at *3, because all claims in a multi-claim complaint will, by necessity, have some degree of interrelatedness. *Ginett*, 962 F.2d at 1095-96. "However, this interrelatedness cannot, in itself, 'inextricably intertwine' the claims so as to preclude appellate review; otherwise, every multiparty case (and virtually every multiclaim case) would elude the

entry of a rule 54(b) judgment, and rule 54(b) would be meaningless." *Id*. Only those claims "inherently inseparable" from or "inextricably interrelated" to each other are inappropriate for rule 54(b) certification." *Id*. If final judgment were entered and an appeal taken, the Second Circuit would not "be deciding any issues which remain for decision in the district court, and nothing the district court can later do on the remaining . . . claims can alter [the Court of Appeals'] decision." *Ginett*, 962 F.2d at 1097.

## CONCLUSION

This Court should grant the Commission's motion for leave to file an interlocutory appeal of the March 3 Reconsideration Order pursuant to 28 U.S.C. § 1292(b). In the alternative, this Court should enter final judgment on the Commission's dismissed claims under Rule 10b-5(a) and (c) and Securities Act Section 17(a)(1) and (3), pursuant to Rule 54(b), certify that there is no just cause for delay, and direct the clerk to enter a final judgment on those claims.

Dated: March 29, 2021                    Respectfully submitted,

                                         By: */s/ Thomas A. Bednar*
                                         Thomas A. Bednar
                                         Fernando Campoamor Sanchez
                                         Dean M. Conway
                                         Gregory N. Miller
                                         Emily T. Parise
                                         Martin Totaro
                                         Securities and Exchange Commission
                                         100 F Street N.E.
                                         Washington, D.C. 20549
                                         (202) 551-6218 (Bednar)
                                         bednart@sec.gov

                                         Counsel for Plaintiff

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 29, 2021, a copy of the foregoing document was served upon all counsel of record via the Court's electronic filing system.

<u>*/s/ Thomas A. Bednar*</u>
Thomas A. Bednar
Counsel for Plaintiff