**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                         :

SECURITIES AND EXCHANGE     :
COMMISSION,                     :
                         :
            Plaintiff,     :
                         :
      v.                     :
                         :
RIO TINTO PLC, RIO TINTO LIMITED, :  Case No. 17 Civ. 7994 (AT) (DCF)
THOMAS ALBANESE, and GUY ROBERT :
ELLIOTT,                    :
                         :
           Defendants.   :
                         :
                         :
                         :
                         :
                         :
---------------------------------------------------------x

# DEFENDANTS' CONSOLIDATED OPPOSITION TO
# PLAINTIFF'S MOTION TO CERTIFY AN INTERLOCUTORY APPEAL
# OR, ALTERNATIVELY, TO ENTER PARTIAL FINAL JUDGMENT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 4

    A.    The SEC's Complaint Was Based on Alleged Misstatements and Omissions................................................................................................ 4

    B.    After Most of Its Claims Were Dismissed, the SEC Sought to Re-Frame Its Case as a Scheme Liability Case. ............................................... 5

    C.    The SEC Has Shifted Theories Again and Now Announces It Will Appeal This Court's Rulings Regardless of the Outcome of Any Immediate Appeal. ................................................................................... 7

LEGAL STANDARD.............................................................................................. 8

ARGUMENT ......................................................................................................... 8

    I.    The Court Should Not Certify An Interlocutory Appeal Under 28 U.S.C. § 1292(b)................................................................................................... 9

    A.    The SEC Fails to Identify a Controlling Question of Law. ...................... 9

    B.    The SEC Fails to Establish a Substantial Ground for Difference of Opinion. ............................................................................................... 12

    C.    The SEC Fails to Establish that an Appeal Would Materially Advance the Ultimate Termination of the Litigation.............................. 14

    II.    The Court Should Not Enter Partial Final Judgment Under Rule 54(b)........... 19

CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdo v. Fitzsimmons*,
  2021 WL 616324 (N.D. Cal. Feb. 17, 2021) ...........................................................14

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
  2019 WL 3202745 (S.D.N.Y. July 16, 2019) ..........................................................14

*Burrell v. State Farm & Cas. Co.*,
  226 F. Supp. 2d 427 (S.D.N.Y. 2002).....................................................................21

*Chevron Corp. v. Donziger*,
  2013 WL 98013 (S.D.N.Y. Jan. 7, 2013) ..........................................................16, 17

*In re China Med. Techs., Inc.*,
  2013 WL 6667789 (S.D.N.Y. Dec. 17, 2013) .............................................9, 10, 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 524 (S.D.N.Y. 2014).................................3, 4, 10, 11, 14, 16, 18

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
  2021 WL 182316 (S.D. Tex. Jan. 19, 2021) ...........................................................14

*Geoffrey A. Orley Revocable Tr. v. Genovese*,
  2020 WL 611506 (S.D.N.Y. Feb. 7, 2020).........................................................7, 13

*Ginett v. Comput. Task Grp.*,
  962 F.2d 1085 (2d Cir. 1992).......................................................................4, 19, 20

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
  2014 WL 5002090 (S.D.N.Y. Oct. 7, 2014) ...........................................................18

*Harriscom Svenska AB v. Harris Corp.*,
  947 F.2d 627 (2d Cir. 1991)....................................................................................20

*HBE Leasing Corp. v. Frank*,
  48 F.3d 623 (2d Cir. 1995)........................................................................................3

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*,
  891 F.2d 414 (2d Cir. 1989).....................................................................................21

*Janus Capital Grp. v. First Derivative Traders*,
  564 U.S. 135 (2011).................................................................................................13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re King*,
    624 B.R. 259 (Bankr. N.D. Ga. 2020) ....................................................................14

*Klein v. Altria Grp., Inc.*,
    2021 WL 955992 (E.D. Va. Mar. 12, 2021) ...........................................................13

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996) ............................................................................11, 19

*In re Lloyd's Am. Tr. Fund Litig.*,
    1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ........................................................10

*LoCurto v. AT&T Mobility Servs. LLC*,
    2019 WL 2491248 (S.D.N.Y. June 13, 2019) .........................................1, 8, 9, 11, 15, 18, 19

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019) .................................................................1, 6, 7, 9, 12, 13

*Malouf v. SEC*,
    933 F.3d 1248 (10th Cir. 2019) ............................................................................14

*In re Managed Care Litig.*,
    2002 WL 1359736 (S.D. Fla. 25, 2002) ...............................................................17

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
    293 F. Supp. 3d 394 (S.D.N.Y. 2018) ..................................................................10

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
    2005 WL 39918 (S.D.N.Y. Jan. 6, 2005) .............................................................18

*In re Microsoft Corp. Antitrust Litig.*,
    274 F. Supp. 2d 741 (D. Md. 2003) .....................................................................17

*Negrete v. Citibank, N.A.*,
    2017 WL 2963494 (S.D.N.Y. July 11, 2017) .......................................................20

*Novick v. AXA Network, LLC*,
    642 F.3d 304 (2d Cir. 2011) ....................................................................4, 8, 19, 20

*SEC v. Frohling*,
    614 F. App'x 14 (2d Cir. 2015) ...........................................................................20

*SEC v. Goldman Sachs & Co.*,
    2011 WL 4940908 (S.D.N.Y. Oct. 17, 2011) ...........................................16, 17, 18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*SEC v. Kameli*,
    2020 WL 2542154 (N.D. Ill. May 19, 2020) ........................................................................14

*SEC v. SeeThruEquity, LLC*,
    2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019) ......................................................................14

*Sussman v. I.C. Sys., Inc.*,
    2013 WL 5863664 (S.D.N.Y. Oct. 30, 2013) ......................................................................16

*In re Teva Sec. Litig.*,
    2021 WL 1197805 (D. Conn. Mar. 30, 2021) ...............................................................3, 7, 13

*In re Vivendi Univ., S.A., Sec. Litig.*,
    2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ..........................................................................20

*Youngers v. Virtus Inv. Partners Inc.*,
    228 F. Supp. 3d 295 (S.D.N.Y. 2017) ................................................................................14

**Statutes**

28 U.S.C. §1292(b) .............................................................................................2, 8, 9, 12, 14

**Rules**

Fed. R. Civ. P. 54(b) ...........................................................................................................8, 19

Defendants Rio Tinto PLC and Rio Tinto Limited (collectively, "Rio Tinto"), Thomas Albanese, and Guy Robert Elliott (collectively, "Defendants") respectfully submit this opposition to Plaintiff Securities and Exchange Commission's ("SEC") motion to certify an appeal or enter partial final judgment.

## INTRODUCTION

In a thorough, 50-page ruling, this Court dismissed "all but a handful of" the SEC's claims. ECF No. 218 ("Br.") at 4. Dissatisfied with that ruling, the SEC recast its allegations and moved for leave to file an amended complaint and for reconsideration after the Supreme Court's decision in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019). Now, unhappy with the denial of both those motions, the SEC has again repositioned its case and seeks interlocutory review of the denial of its motion for reconsideration. It is well established, however, that "[b]ecause interlocutory appeals are strongly disfavored, 'only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *LoCurto v. AT&T Mobility Servs. LLC*, 2019 WL 2491248, at *1 (S.D.N.Y. June 13, 2019) (Torres, J.) (alteration and citation omitted). The SEC fails to identify exceptional circumstances, and an interlocutory appeal would, in fact, risk further delay and waste the parties' and judicial resources. This Court should exercise its "'unfettered discretion'" to deny the SEC's motion. *Id.* (citation omitted).

The SEC's motion is a last-ditch effort to try to salvage its failing case. After bringing fraud charges with much fanfare against one of the world's most prominent companies, and its former CEO and CFO, the SEC saw its case significantly cut back, and now has determined it will not even move for summary judgment because it knows the undisputed record contradicts its core allegations. *See* ECF No. 203; *infra* II. While the SEC insists (at 1) that it seeks interlocutory review infrequently, that only underscores the disfavored nature of such relief. Indeed, it

1

would be enormously wasteful to permit an appeal now of one ruling when the SEC has promised (at 17) that, no matter what, it "will plan to appeal" this Court's other decisions later.

The SEC's separate requests under Section 1292(b) and Rule 54(b) involve different standards, and neither is satisfied here.  To obtain Section 1292(b) certification, the SEC must identify an order of this Court that contains (1) "a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and establish that (3) an immediate appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The SEC recognizes that it cannot use Section 1292(b) to appeal *all* of its dismissed claims; rather, it can seek to appeal only one of this Court's orders, and that order must satisfy the statute's narrow requirements.  As a result, the SEC seeks certification of just the Court's reconsideration order, which addressed its "claims under Exchange Act Rule 10b-5(a) and (c) and Securities Act Section 17(a)(1) and (3)," Br. 1, 21—*i.e.*, its scheme liability claims—as those were the only provisions at issue in *Lorenzo*.  *See* ECF No. 213 at 4–6 ("*Lorenzo* Order").[1]

The SEC's Section 1292(b) motion fails most clearly because an interlocutory appeal will not "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  No matter how the Second Circuit rules on *Lorenzo*'s impact on scheme liability, that ruling will have no effect on any remaining claims, which this Court will soon adjudicate on Defendants' summary judgment motion.  And no matter what, such an interlocutory ruling will have no effect

---

[1]  This Court granted Defendants' motion to dismiss with respect to six of the SEC's twelve original claims (Claims Two, Four, Six, Nine, Eleven, and Twelve), partly granted the motion with respect to four claims (Claims One, Three, Five, and Seven), and denied the motion with respect to two claims (Claims Eight and Ten).  *See* ECF No. 135 at 49–50.  The SEC's scheme liability claims are just one part of the dismissed portion of Claim One, which asserted violations of Exchange Act Rule 10b-5(a), (b), and (c); and Claim Three, which asserted violations of Securities Act Section 17(a)(1), (2), and (3).  Contrary to the SEC's assertions, this Court's "reconsideration ruling . . . regarding the scope of *Lorenzo*" did *not* "dispose[ ] of most of the [SEC's] claims," Br. 9, as the many other dismissed claims failed for reasons unrelated to *Lorenzo*.

on the SEC's many *other* dismissed claims—such as the dismissal of the Rule 10b-5(b) portion of Claim One as to certain statements Mr. Albanese or Mr. Elliott allegedly made in April, August, October, and November 2012, *see* ECF No. 135 at 23–24 & nn. 6–7—which have nothing to do with *Lorenzo* and which the SEC could (and has promised it will, Br. 17) appeal after entry of final judgment.  An immediate appeal under Section 1292(b) of just the scheme liability claims thus will not materially advance the ultimate termination of this litigation.

Nor has the SEC satisfied the other two Section 1292(b) requirements.  As to the first requirement, the SEC overlooks that "Second Circuit interlocutory review of motion to dismiss decisions in securities cases is rarely granted," and "[t]he Second Circuit has routinely denied" such motions unless they involved "threshold issues such as jurisdiction, standing and statutes of limitations."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 533–34 (S.D.N.Y. 2014) (collecting cases).  The question the SEC has identified—whether the alleged conduct here supports scheme liability after *Lorenzo*—is, in contrast, a highly fact-bound question.  As to the second requirement, courts are not divided over the SEC's question.  This Court followed Judge Ramos' decision in *Orley*, and another court within the Second Circuit has already followed this Court's straightforward decision, with no apparent difficulty.  *See In re Teva Sec. Litig.*, 2021 WL 1197805, at *5–6 (D. Conn. Mar. 30, 2021).  The SEC's attempts to identify conflicting authority fail because, unlike here, each of those cases alleged deceptive conduct above and beyond any alleged misstatements or omissions.

Under Rule 54(b), the SEC needs to show "there is no just reason for delay," Fed. R. Civ. P. 54(b), a requirement that "has not been taken lightly by th[e Second] Circuit."  *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 631 (2d Cir. 1995).  To satisfy this requirement, the SEC must show that the claims it wants to appeal immediately are not so intertwined with the remaining

claims that it would "'require two (or more) three-judge panels to familiarize themselves with [the] case' in successive appeals from successive decisions on interrelated issues," *Novick v. AXA Network, LLC*, 642 F.3d 304, 311 (2d Cir. 2011) (citation omitted), or that this Court's resolution of the remaining claims could moot any immediate Second Circuit appeal, *see Ginett v. Comput. Task Grp.*, 962 F.2d 1085, 1095 (2d Cir. 1992).

The SEC fails to meet this standard, too.  The scheme liability claims are "predicated upon the same underlying factual events"—indeed, the same allegations—as the remaining claims (and other dismissed claims).  *Facebook*, 986 F. Supp. 2d at 532.  Thus, no matter how the Second Circuit rules in any immediate appeal, a second panel of the Second Circuit would need to familiarize itself with the same facts and issues of this case in any appeal after final judgment.  In fact, given this significant factual overlap in the dismissed and remaining claims, a ruling on Defendants' soon-to-be-filed motion for summary judgment on the remaining claims could (and Defendants believe will) moot an immediate appeal of *all* dismissed claims—not just the scheme liability claims on which the SEC's Rule 54(b) request is ostensibly premised.

There is no efficiency in certifying interlocutory review under Section 1292(b) or issuing final partial judgment pursuant to Rule 54(b).  In fact, granting the SEC's request would waste resources and risk delay and prejudice to Defendants.  The Court should deny the SEC's motion.

## BACKGROUND

### A.     The SEC's Complaint Was Based on Alleged Misstatements and Omissions.

This case concerns whether Rio Tinto committed fraud in failing to take an impairment of an undeveloped and recently acquired coal-mining asset in Mozambique (named RTCM) a few months earlier than it did in January 2013.  The SEC's 2017 Complaint claimed a series of misstatements and omissions:  specifically, "Defendants contributed to and facilitated a series of misrepresentations and omissions" regarding RTCM in Rio Tinto's public documents, ECF No.

1, ¶ 93; certain accounting papers during RTCM's Half-Year 2012 ("HY 2012") impairment re-view "contained a series of material misrepresentations and omissions concerning RTCM" that Mr. Albanese and Mr. Elliott failed to correct, *id.*, ¶ 124; *see also id.*, ¶¶ 130, 138, "result[ing] in a material overstatement" of RTCM's valuation in the HY 2012 Report, *id.*, ¶ 139; and Mr. Al-banese and Mr. Elliott made materially misleading statements about RTCM in April, August, October, and November 2012, *id.* ¶¶ 113–115, 141–143, 161–163.

In a thorough, 50-page opinion in 2019, the Court "dismiss[ed] all but a handful of the [SEC's] claims" as a matter of law—as the SEC itself notes (at 4). *See* ECF No. 135. The Court dismissed the SEC's scheme liability claims, explaining that, under Second Circuit precedent, the SEC had failed to allege any "conduct beyond" "a misstatement or omission that would form the basis of liability under Rule 10b-5(b)." *Id.* at 34–36. The SEC now attempts (at 9) to rewrite history by describing "most of [its dismissed] claims" as scheme liability. In fact, *most* of its dis-missed claims had nothing to do with *Lorenzo* or scheme liability under Rule 10b-5(a) and (c) or Section 17(a)(1) or (3)—including, *e.g.*, claims under Rule 10b-5(b) and Section 17(a)(2) for al-legedly fraudulent misstatements in Rio Tinto's 2011 Annual Report and HY 2012 Report, and several of Mr. Albanese's or Mr. Elliott's alleged public remarks in April, August, October, and November 2012, *see id.* at 19, 20–21, 24 & n.7, 38, and internal-control claims against Rio Tinto, *id.* at 44–45.

### B.     After Most of Its Claims Were Dismissed, the SEC Sought to Re-Frame Its Case as a Scheme Liability Case.

In an attempt to avoid the Court's dismissal rulings, the SEC filed two motions—each seeking a "do-over" in the hope that it might achieve a different result by recasting this case as a scheme liability case.

The SEC first sought leave to file a proposed Amended Complaint that was double the size of the Complaint and added a large number of new allegations. *See* ECF Nos. 162, No. 162-1. But as Magistrate Judge Freeman explained in a 34-page opinion recommending the denial of the SEC's motion, the SEC "show[ed] a disregard for Rule 16 and its purpose" by waiting until months after the deadline for amended pleadings before filing its motion, even though "nearly 99%" of its allegations were based on information "plainly in the SEC's possession" for years before the deadline, ECF No. 175 at 20, 25–26, and "fail[ed] to address the realities" that amendment would severely prejudice Defendants, *id.* at 32–33. On March 3, 2021, this "Court reject[ed] all three objections" the SEC lodged against Magistrate Judge Freeman's recommendations and denied the SEC's motion to amend. ECF No. 214 at 3.

After Magistrate Judge Freeman recommended denial of the SEC's motion for leave to amend, the SEC tried to avoid the prior rulings by filing a motion for reconsideration that used the Supreme Court's intervening *Lorenzo* decision as a pretext for reinstating many of its dismissed claims in some form. *See* ECF No. 182, No. 182-1 (proposed order). *Lorenzo*, however, held only that "those who do not 'make' statements . . . but who disseminate false or misleading statements to potential investors with the intent to defraud" can be held liable for scheme liability. 139 S. Ct. at 1099. In an attempt to fit within this narrow holding, the SEC tried to recast its then two-year-old Complaint as now alleging a scheme to "allow[ ] misleading statements to be *disseminated* throughout Rio Tinto's financial reporting system . . . [and] to the investing public." ECF No. 182 at 2 (emphasis added).

This Court rightly rejected the SEC's sleight of hand, explaining that the Court's dismissal order required the SEC to allege "'the performance of an inherently deceptive act that is distinct from an alleged misstatement,'" *Lorenzo* Order at 4 (quoting ECF 135 at 35–36), whereas

*Lorenzo* held only that those who engage in fraudulent dissemination "can be liable [for scheme liability], not that misstatements alone are sufficient to trigger scheme liability," *id.* at 5.  The Court followed the decision in *Orley*—which distinguished *Lorenzo* on materially identical facts—and noted that the SEC's own cited cases "draw the same distinction." *Id.* (discussing *Geoffrey A. Orley Revocable Tr. v. Genovese*, 2020 WL 611506 (S.D.N.Y. Feb. 7, 2020)).

The Court's *Lorenzo* Order was correct. *Lorenzo* did not hold, as the SEC contends, "that misstatements alone are sufficient to trigger scheme liability." Br. 5.[2] Since that ruling, another court within the Second Circuit has agreed with this Court's analysis and held that *Lorenzo* does not impose scheme liability where the alleged scheme is based on "a series of misstatements and omissions that are, admittedly, partly actionable under Rule 10b-5(b)." *Teva*, 2021 WL 1197805, at *5–6.

### C.     The SEC Has Shifted Theories Again and Now Announces It Will Appeal This Court's Rulings Regardless of the Outcome of Any Immediate Appeal.

In the SEC's present motion, it has once again repositioned its theory of fraud—this time contending that "in 2012, Rio Tinto engaged in a sustained course of conduct to mislead the investing public about its Mozambique coal project, RTCM," including by allegedly "calling and attending meetings, issuing directions, controlling the flow of information, placing [one's] imprimatur on misleading statements prepared by others, and . . . making misleading statements to in-

---

[2]  Although the Supreme Court granted review to resolve a potentially broader question, it did not "squarely answer[ ]" that broader question in the affirmative, as the SEC contends (at 1).  As Defendants noted in opposition to the SEC's motion for reconsideration, the Supreme Court's actual holding was narrower than the question presented and carefully limited to deciding only "whether those who do not 'make' statements . . . , but who disseminate . . . misleading statements to potential investors with the intent to defraud, can be found to have violated" subsections (a) and (c).  ECF No. 185 at 12 n.5 (quoting *Lorenzo*, 139 S. Ct. at 1099–1100).

vestors." Br. 3.  The SEC further indicates that it will file an appeal after final judgment, promising that, no matter what, it "plan[s] to appeal" the Court's dismissal of "all scienter-based and individual fraud claims" based on the HY 2012 Report.  Br. 17.

## LEGAL STANDARD

As this Court has explained, "[b]ecause interlocutory appeals are strongly disfavored, 'only exceptional circumstances . . . justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  *LoCurto*, 2019 WL 2491248, at *1 (citation omitted).  For the Court to be able to certify such an appeal, the SEC must establish that there is (1) "a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and that (3) "immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Even if these criteria are met, the Court still "'retain[s] unfettered discretion to deny certification.'"  *LoCurto*, 2019 WL 2491248, at *1 (citation omitted).

The Court may enter partial final judgment on a subset of claims or parties "only if the [C]ourt expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  This power must "'be exercised sparingly'" and "'is left to the sound judicial discretion of the district court.'"  *Novick*, 642 F.3d at 310 (citations omitted).

## ARGUMENT

The SEC has already promised *one* appeal after final judgment on many, if not all of its dismissed claims.  Br. 17.  It provides no valid reason it should be permitted an additional, *earlier* appeal on just its dismissed scheme liability claims.  That would flout the federal courts' foundational "policy against piecemeal appeals," *Novick*, 642 F.3d at 310, especially given that an immediate appeal on the scheme liability claims would not affect the remaining claims that this Court is about to adjudicate.  Nearly a decade has passed since the events at issue, and the

SEC's request for an immediate appeal risks delaying the litigation even further, wasting the par-

ties' resources, and resulting in prejudice to all Defendants.  And any immediate appeal could be

easily mooted when this Court rules on Defendants' soon-to-be-filed motion for summary judg-

ment.  There simply are no "'exceptional circumstances'" here that justify departing from the

bedrock policy against piecemeal appeals.  *LoCurto*, 2019 WL 2491248, at *1 (Torres, J.) (cita-

tion omitted).  Indeed, nearly every argument the SEC makes in its motion could be made *any*

time a court dismisses some, but not all, claims in a case.  Accordingly, the Court should deny

the SEC's motion.

**I.      The Court Should Not Certify An Interlocutory Appeal Under 28 U.S.C. § 1292(b).**

The SEC fails to satisfy any of the three requirements for certifying an appeal under 28

U.S.C. § 1292(b).  Because failure to meet any one of these requirements is fatal to its request

under that statute, the Court should deny the SEC's certification request.

**A.      The SEC Fails to Identify a Controlling Question of Law.**

The *Lorenzo* Order does not "involve[ ] a controlling question of law."  28 U.S.C.

§ 1292(b).  Indeed, it is the antithesis of a proper order for certification under Section 1292(b)

because it is a ruling on the pleadings that "is essentially fact based in nature."  *In re China Med.*

*Techs., Inc.*, 2013 WL 6667789, at *10 (S.D.N.Y. Dec. 17, 2013) (Torres, J.).  Any conceivable

question of *law* here would be limited to asking whether Defendants' alleged conduct satisfies

scheme liability under Rule 10b-5(a) and (c) or Section 17(a)(1) and (3).  As far as Defendants

are aware, no court has ever defined what conduct constitutes scheme liability in the abstract,

*i.e.*, outside the facts of a given case.  Rather, as the Supreme Court has carefully noted, "[p]ur-

pose, precedent, and *circumstance* could lead to narrowing [the] reach [of Rule 10b-5(a) and (c)

and Section 17(a)(1)] in other contexts."  *Lorenzo*, 139 S. Ct. at 1101 (emphasis added).  The

SEC ignores this critical fact-based nature of its scheme liability claims.

**1.** As this Court has explained, Section 1292(b) requires "a pure question of law that can be decided quickly and cleanly without detailed study of the record." *China Med. Techs.*, 2013 WL 6667789, at *10; *see also*, *e.g.*, *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 399 (S.D.N.Y. 2018) (same); *Facebook*, 986 F. Supp. 2d at 536 (same). Courts denying interlocutory review of a ruling on a motion to dismiss thus have reasoned that "a question that 'turns on the . . . assessment of the pleadings'" simply "is not a 'pure question of law' suited for interlocutory appeal." *McGraw-Hill*, 293 F. Supp. 3d at 399 (alteration in original; citation omitted); *accord Facebook*, 986 F. Supp. 2d at 536–37; *In re Lloyd's Am. Tr. Fund Litig.*, 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997). That is precisely why the Second Circuit has "rarely granted" "interlocutory review of motion to dismiss decisions in securities cases"—with the rare exceptions typically involving "threshold issues such as jurisdiction, standing and statutes of limitations." *Facebook*, 986 F. Supp. 2d at 533 (collecting cases).

The issue here is not a clean, threshold issue. The SEC seeks to have the Second Circuit decide whether its claims based on a "broad range of conduct that [allegedly] perpetuate[d] a false impression," Br. 12 n.4—including "calling and attending meetings, issuing directions, controlling the flow of information, placing [one's] imprimatur on misleading statements prepared by others, and . . . making misleading statements to investors," Br. 3—are sufficient to establish scheme liability under Rule 10b-5(a) and (c) or Section 17(a)(1) and (3). This inquiry is far afield from recent securities decisions cited by the SEC (at 11 & n.3) where the Second Circuit has granted interlocutory review on threshold issues such as standing or tolling of the statute of limitations. "Whether Defendants violated the securities laws . . . is a 'fact-specific inquiry,' and inappropriate for interlocutory review." *Facebook*, 986 F. Supp. 2d at 537 (citation omitted).

**2.** The SEC likewise fails to establish that the question at issue is "controlling," meaning that reversal (1) "'could result in dismissal of the action'" or (2) "'could significantly affect the conduct of the action,'" or (3) "'the certified issue has precedential value for a large number of cases.'" *LoCurto*, 2019 WL 2491248, at *2 (citation omitted).

The SEC primarily argues that an appeal now "would significantly simplify and shorten the litigation by avoiding the prospect of a second trial after appeal of a final judgment." Br. 9–10. But the SEC fails to explain how immediate review of just the scheme liability claims will in any way diminish the risk of a second trial, especially when the SEC itself has already announced it will appeal the Court's dismissal of "*all* scienter-based and individual fraud claims for the [allegedly] fraudulent HY 2012 report"—which includes more than just its scheme liability claims—"even if it wins at trial on the claims that remain in the case," Br. 17 (emphasis added). Whether or not there is an immediate appeal on the scheme liability claims, therefore, the risk of a second trial remains unchanged.[3]

The SEC also attempts (at 10) to rely on the purported precedential value of a Second Circuit ruling. But because very few cases after *Lorenzo* have involved truly analogous facts (and all of those are consistent with this Court's ruling), *see infra* I.B, the limited precedential value of a Second Circuit ruling is not "sufficient to warrant certification," *LoCurto*, 2019 WL 2491248, at *2; *see also Facebook*, 986 F. Supp. 2d at 537 ("Precedential value is not 'per se sufficient . . .'" (citation omitted)). Regardless, the Second Circuit would be far better positioned to issue a precedential ruling on a fully developed record, as opposed to the SEC's mere allegations (which Defendants' summary judgment motion will soon show are baseless). *Cf. Koehler*

---

[3] To be clear, Defendants do not believe that there will even be a first trial (as the record shows Defendants are entitled to summary judgment on all remaining claims) or that the Second Circuit will reverse this Court's dismissals after final judgment.

*v. Bank of Bermuda Ltd.*, 101 F.3d 863,  864 (2d Cir. 1996) (when "a question of law . . . turns on a thorough examination of the facts," the Second Circuit is "reluctant to rely on what may turn out to be an incomplete record to clarify legal doctrine for the district court's guidance").

The SEC thus has not established the first requirement for certification.

### B.    The SEC Fails to Establish a Substantial Ground for Difference of Opinion.

Nor has the SEC established there is "substantial ground for difference of opinion" as to the Court's *Lorenzo* Order.  28 U.S.C. § 1292(b).  That requirement can be met where "'the issue is particularly difficult and of first impression,'" or "'there is conflicting authority on the issue.'" *China Med. Techs.*, 2013 WL 6667789, at *11 (citation omitted).  But neither is true here.

**1.**  The question whether *Lorenzo* extends so far as to sweep in the alleged conduct in this case is straightforward, and the answer is plainly "no."  This Court showed no hesitation in distinguishing *Lorenzo*, explaining that *Lorenzo* held only "that those 'who disseminate false or misleading statements to potential investors with the intent to defraud' can be liable" for scheme liability, "not that misstatements alone are sufficient to trigger scheme liability."  *Lorenzo* Order at 4–5 (quoting *Lorenzo*, 139 S. Ct. at 1099).  That is correct:  *Lorenzo* did not purport to be a sweeping decision, but instead stressed that, "in other contexts," "[p]urpose, precedent, and circumstance could lead to narrowing [the] reach" of scheme liability.  139 S. Ct. at 1101.  That the SEC tried to amend its Complaint in the wake of *Lorenzo* by adding the word "disseminate" *eighteen* times to its proposed Amended Complaint, *see* ECF No. 162-1, only confirms the limited reach of *Lorenzo*'s carefully narrow holding.

While the SEC faults this Court for "not address[ing]" the "language or purposes" of Rule 10b-5(a) and (c), Br. 7, the Court did not separately need to do so because it followed Judge Ramos' careful analysis in *Orley*.  *See Lorenzo* Order at 5.  Tellingly, the SEC nowhere addresses *Orley*'s straightforward conclusions that extending *Lorenzo* to a scheme based solely on

"participation in the drafting of [misleading] documents" would nullify *Janus*'s limitations on primary liability for making misstatements and eliminate the bright-line distinction between primary and secondary liability. 2020 WL 611506, at *8 (discussing *Janus Capital Grp. v. First Derivative Traders*, 564 U.S. 135 (2011)). Whereas *Lorenzo* stressed "the need for a 'clean line'" between primary and secondary liability, 139 S. Ct. at 1104, if persons "without control over the content of a statement could be considered primary violators who [devised to] 'ma[k]e' the statement, then aiders and abettors would be almost nonexistent," *Janus*, 564 U.S. at 143.

Since this Court's *Lorenzo* Order, another court within the Second Circuit has followed this Court's analysis and agreed that "[a]lthough [*Lorenzo*] contained some language regarding the interrelatedness of the three subsections of Rule 10b-5," "*Lorenzo* is distinguishable" because it "did not address" an alleged scheme based on "a series of misstatements and omissions that are, admittedly, partly actionable under Rule 10b-5(b)." *Teva*, 2021 WL 1197805, at *5–6. Like this Court's decision, that decision also gave no indication that the *Lorenzo* issue was difficult.

**2.** The SEC unpersuasively tries (at 14–16) to marshal conflicting authority on whether *Lorenzo* affects this case. The parties have identified just two other cases—*Orley* and *Teva*— that are on all fours with this case. As Defendants previously explained (and the Court agreed, *see Lorenzo* Order at 4–5), the SEC's motion for reconsideration relied entirely on cases that were distinguishable because, in each case, there were allegations of deceptive conduct above and beyond any alleged misstatements. *See* ECF No. 185 at 14–15 n.6. The cases the SEC now cites in its certification motion are all distinguishable on this same basis. *Contra* Br. 14–16.

In *Klein*, for example, the court actually *rejected* scheme liability based on statements the defendant did not make, and imposed scheme liability only because he "consummat[ed] the JUUL investment" and "bore responsibility for the [fraudulent] mint study." *Klein v. Altria*

*Grp., Inc.*, 2021 WL 955992, at *13, *15 (E.D. Va. Mar. 12, 2021).  In *Abdo*, the court relied on

only pre-*Lorenzo* law and imposed scheme liability based on alleged conduct that included con-

summating a transaction despite "kn[owing] the Agreement in its then-present form contained

false or misleading statements."  *Abdo v. Fitzsimmons*, 2021 WL 616324, at *12–13 (N.D. Cal.

Feb. 17, 2021).  In short, none of the SEC's cited cases purported to extend *Lorenzo* to a scheme

based solely on alleged misstatements and omissions without any additional deceptive conduct.[4]

In any event, "'[d]isagreement among courts outside the circuit does not alone support

the certification of an interlocutory appeal.'"  *In re Barclays Liquidity Cross & High Frequency*

*Trading Litig.*, 2019 WL 3202745, at *2 (S.D.N.Y. July 16, 2019) (alteration in original; citation

omitted).  Even where "[d]istrict judges are divided" on an issue and the district court "acknowl-

edged its disagreement," courts within the Second Circuit have denied certification.  *Youngers v.*

*Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 301 (S.D.N.Y. 2017); *see also Facebook*, 986 F.

Supp. 2d at 539 (denying certification despite "disagreement between cases").  The SEC there-

fore has failed to establish the second requirement for certification.

### C.    The SEC Fails to Establish that an Appeal Would Materially Advance the Ultimate Termination of the Litigation.

The SEC also falls well short of establishing that immediate review of the *Lorenzo* Order

would "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  To

---

[4]  *See also Malouf v. SEC*, 933 F.3d 1248, 1261 (10th Cir. 2019) (investment adviser both structured "a financial arrangement" that deceived his clients and violated a federal statutorily imposed duty to "correct" his company's misstatements about his conflict of interest), *cert. denied*, 140 S. Ct. 1551 (2020); *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 2021 WL 182316, at *4 (S.D. Tex. Jan. 19, 2021) (scheme "involved more than making misleading statements to the public"); *In re King*, 624 B.R. 259, 293 (Bankr. N.D. Ga. 2020) (scheme involved "disseminating false information with an intent to defraud"); *SEC v. Kameli*, 2020 WL 2542154, at *15 (N.D. Ill. May 19, 2020) (complaint "actually alleged" the "disseminat[ion] [of] the false/misleading statements" and "deceptive conduct apart from the [alleged] misrepresentations"); *SEC v. SeeThruEquity, LLC*, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019) ("defendants' entire business model, beyond any misstatements or omissions, is deceptive").

the contrary, an appeal under Section 1292(b) of just some of the dismissed claims would have, at best, *no effect* on when this case ultimately concludes.  Any interlocutory ruling from the Second Circuit on the viability of the SEC's scheme liability claims after *Lorenzo* plainly would have no effect on either the remaining claims in the case or even the SEC's other dismissed claims.  And regardless of how the Second Circuit rules, interlocutory review of just the dismissed scheme liability claims will have no effect on the risk of a second trial, as the SEC has promised that, "even if it wins" at any trial, it "plan[s] to appeal" the Court's dismissal of "*all* scienter-based and individual fraud claims for the [allegedly] fraudulent HY 2012 report," Br. 17 (emphasis added)—which includes more than just scheme liability.

Even if the SEC were to walk back its promise to appeal this Court's rulings no matter what else happens in this case, certification still would be inappropriate.[5]  Courts "'strictly construe[ ]'" the requirement that an appeal must materially advance the *end* of the litigation, *LoCurto*, 2019 WL 2491248, at *2 (citation omitted).  Given that the scheme liability claims do nothing more than repackage the SEC's allegations relating to the remaining claims, and given the overlapping legal elements (*e.g.*, falsity, materiality, and scienter) between the scheme liability claims (indeed, *any* dismissed claims) and the remaining claims, an interlocutory appeal would not affect the ultimate termination of the litigation.  It is highly likely, instead, that interlocutory review would *delay* this years-old litigation even further.

---

[5]  Nor can the SEC try to overcome these shortcomings in its reply brief by trying to expand its Section 1292(b) request to include interlocutory review of *all* dismissed claims.  The SEC does not (because it cannot) make any argument that any other of this Court's rulings satisfy the requirements of Section 1292(b).  Any such request is now waived (and would fail regardless).

Courts within the Second Circuit routinely deny certification in these circumstances—where the remaining claims would be unaffected by an interlocutory appeal—because, "irrespective of how the Second Circuit may rule," the remaining factual and legal issues would "proceed[ ]" unchanged. *SEC v. Goldman Sachs & Co.*, 2011 WL 4940908, at *1 (S.D.N.Y. Oct. 17, 2011); *see*, *e.g.*, *Facebook*, 986 F. Supp. 2d at 532 (denying certification where claims were "all predicated upon the same underlying factual events"); *Sussman v. I.C. Sys., Inc.*, 2013 WL 5863664, at *3 (S.D.N.Y. Oct. 30, 2013) (denying certification because, regardless of appeal, "the case would still proceed" as to certain claims that "are closely related" and based on "overlapping factual allegations"); *Chevron Corp. v. Donziger*, 2013 WL 98013, at *3 (S.D.N.Y. Jan. 7, 2013) (denying certification given "extensive" "overlap between the [party's] claims, [some] of which would be unaffected by the outcome of the [ ] interlocutory appeal").

This Court should likewise deny certification, as the Court's adjudication of the SEC's remaining claims will be unchanged whether, on interlocutory review, the Second Circuit were to reinstate scheme liability claims or affirm their dismissal.  The scheme liability claims are predicated on, *inter alia*, (1) Mr. Albanese's and Mr. Elliott's role in allegedly false statements made in the accounting papers during the HY 2012 impairment review, (2) their role in relation to RTCM's valuation in the HY 2012 Report, and (3) Mr. Albanese's public statements in August and November 2012.  These are the identical factual predicates and involve nearly identical legal issues as, respectively, the SEC's remaining (1) Rule 13b2-1 claims for falsifying records and Rule 13b2-2 claims for knowingly making false statements to accountants, *see* ECF No. 135 at 45–47, (2) Section 17(a) claims against Rio Tinto, *see id.* at 37–39, and (3) Section 10(b) claims against Rio Tinto and Mr. Albanese, *see id.* at 34.

In other words, "an interlocutory appeal would not 'avoid protracted litigation' because irrespective of how the Second Circuit may rule regarding the [scheme liability] claim[s] . . . , claims under both the Securities Act and the Exchange Act are proceeding with respect to [Defendants]." *Goldman Sachs*, 2011 WL 4940908, at *1; *see also Donziger*, 2013 WL 98013, at *4 ("[T]he overlap between the RICO and fraud claims, the former of which would be unaffected by the outcome of the proposed interlocutory appeal, is so extensive that an appellate disposition with respect to [one] issue relating to the fraud claim alone would not likely affect the scope, duration or expense of the lawsuit.").

The SEC suggests that a ruling from the Second Circuit "could simplify"—in some vague and unspecified manner—"potentially complicated" motions *in limine*, jury instructions, and verdict forms. Br. 17. But the SEC does not say *what* these purported complications are or even that they *will* happen. Section 1292(b) requires far more than speculation as to what "could" happen to unspecified "potential[ities]," as such high-level generalities could be said of virtually any case. Regardless, any such simplification would not materially advance the ultimate *termination* of the litigation, as the plain text of Section 1292(b) requires. The SEC's only two authorities on this point involved far more significant effects. *See In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 743 (D. Md. 2003) (ruling could be "foundational to the structure" of a massive antitrust MDL and affect "the scope of evidence" and "the scope of discovery" of remaining class actions); *In re Managed Care Litig.*, 2002 WL 1359736, at *2 (S.D. Fla. Mar. 25, 2002) (ruling could "significantly" limit "the scope of future discovery, motion practice, and trial activities"). And whereas an appeal in each of those cases would have limited future proceedings, the SEC seeks here to *add* claims and potentially expand "the scope of . . . discovery, motion practice, and trial activities." *Managed Care*, 2002 WL 1359736, at *2.

Moreover, the SEC "fails to acknowledge the likelihood that certification could further delay this action, which has already been pending for . . . years." *LoCurto*, 2019 WL 2491248, at *3. The SEC ignores that, if the Second Circuit were to reinstate its scheme liability claims, Defendants may need to bring a new motion for summary judgment. Notwithstanding the SEC's offer to expedite its Second Circuit briefing, it is unlikely that the parties would be able to receive a ruling on the present motion, brief a certification motion before the Second Circuit (which has discretion to deny a request for interlocutory appeal under Section 1292(b) even if this Court were to grant the SEC's pending motion), brief and argue the appeal, receive a ruling from the Second Circuit, conduct any new discovery if deemed necessary, brief any new summary judgment motion, and receive any ruling on summary judgment in time to submit all pretrial filings, which are currently due March 1, 2022—less than eleven months away. *See* ECF No. 217.[6]

Finally, further delay—eight years after the SEC began its investigation and three-and-a-half years after it filed this case—would be grossly unfair to Defendants, who have been defending against these meritless claims for years already. This is yet another reason to deny certification. *See*, *e.g.*, *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2014 WL 5002090, at *2 (S.D.N.Y. Oct. 7, 2014) (movant "fails to take into account the (just as likely) possibility that certification will delay the action further"); *Facebook*, 986 F. Supp. 2d at 532 (denying certification because appeal "would delay the entire action"); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 2005 WL 39918, at *3 (S.D.N.Y. Jan. 6, 2005) (denying certification where appeal "could

---

[6] If discovery—"which has been time-consuming, extensive, costly, and logistically difficult"—has to be reopened, the "burden" on Defendants here would be greater "than in most cases." ECF No. 175 at 29–31.

make the litigation even more protracted and expensive"). The SEC has therefore failed to establish the third requirement for certification.

*     *     *

At bottom, the SEC's primary justifications for certification—that there could be multiple trials or some minimal effect on any trial in the first instance—could be said of *any* ruling dismissing some, but not all, claims in a case. Section 1292(b) certification, however, is reserved for only the "rare exception" that would "avoid[ ] fruitless litigation." *Koehler*, 101 F.3d at 865–66; *accord LoCurto*, 2019 WL 2491248, at *3. This case is the opposite: *Granting* an appeal now, when the SEC has promised to appeal after any trial anyway, would add fruitless additional proceedings to this already protracted litigation. The Court should deny the SEC's motion to certify an interlocutory appeal.

## II.   The Court Should Not Enter Partial Final Judgment Under Rule 54(b).

The Court also should deny the SEC's request in the alternative to enter partial final judgment.[7] Rule 54(b) provides a narrow exception to the strong "'policy against piecemeal appeals,'" *Novick*, 642 F.3d at 310 (citation omitted), for when a district court concludes "there is no just reason for delay," Fed. R. Civ. P. 54(b). As the SEC is forced to concede, "claims 'inherently inseparable' from or 'inextricably interrelated to' each other are inappropriate for Rule 54(b) certification." Br. 21 (quoting *Ginett*, 962 F.2d at 1095–96). That is precisely the case here for at least two separate reasons.

---

[7] Even though the scheme liability claims are the only claims referenced in the SEC's brief, *see* Br. 1, 19–20, and discussed in its Conclusion, *id.* at 21, the SEC's proposed order seeks "final judgment on the claims dismissed in the Court's March 2019 Order," ECF 218-2 at 2—*i.e.*, the scheme liability claims *and all other dismissed claims*. This is not the first time the SEC has tried to overreach by seeking in a proposed order attached to its brief something that was not covered by its request in the brief itself. When seeking reconsideration, the SEC's proposed order would have *reinstated* its internal-controls claims, *see* ECF No. 182-1 at 5, even though its brief nowhere asked the Court to reconsider the dismissal of those claims, *see* ECF No. 182.

*First*, Rule 54(b) certification would "'require two (or more) three-judge panels to familiarize themselves with [the] case' in successive appeals from successive decisions on interrelated"—indeed, essentially identical—"issues." *Novick*, 642 F.3d at 311 (citation omitted); *accord SEC v. Frohling*, 614 F. App'x 14, 17–18 (2d Cir. 2015) (summary order); *see supra* I.C. Courts within the Second Circuit routinely deny certification where, as here, the remaining claims have the same factual predicate and entail similar legal issues as any dismissed claims. *See*, *e.g.*, *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 630–31 (2d Cir. 1991) (reversing certification where remaining claim was "closely related to . . . and stems from the same factual allegations" as dismissed claims); *Negrete v. Citibank, N.A.*, 2017 WL 2963494, at *2 (S.D.N.Y. July 11, 2017) (denying certification where legal questions "differ[ed]" but facts "[we]re nevertheless interrelated"); *In re Vivendi Univ., S.A., Sec. Litig.*, 2012 WL 362028, at *3 (S.D.N.Y. Feb. 6, 2012) (denying certification where remaining claims were "'closely related and stem from essentially the same factual allegations'" (citation omitted)).

*Second*, this Court could moot any immediate appeal before the Second Circuit could even rule on any of the SEC's dismissed claims. As Defendants' summary judgment brief will show, the undisputed record contradicts the SEC's core allegations: The May 2012 Brisbane Presentation—the centerpiece of the SEC's claims—actually highlighted significantly higher production than expected and new business options thought to be as large an economic opportunity as the coal, *see* ECF No. 203-1, ¶¶ 169–173; *no one* at the Brisbane Meeting viewed a negative $680 million NPV (if mentioned) as a reliable estimate of RTCM's value, *id.* ¶¶ 179–180; indeed, the very person who allegedly presented the negative NPV stated it was "indicative only," meaning (as he himself testified) it "should not be relied upon," *id.* ¶ 178; the Controllers promptly received a copy of the Brisbane Presentation and discussed it with RTCM and Rio

Tinto Energy, *id.* ¶¶ 300–302; and Mr. Albanese and Mr. Elliott never even saw the key account-
ing paper explaining why RTCM had no impairment indicators at HY 2012, *id.* ¶ 332.  On this
record, the Court could grant summary judgment to Defendants on falsity, materiality, and scien-
ter or negligence (depending on the claim) as to the HY 2012 Report, the HY 2012 accounting
papers, and Mr. Albanese's statements.  Because that could "moot" any interlocutory appeal of
the dismissed claims, certification is not proper.  *Burrell v. State Farm & Cas. Co.*, 226 F. Supp.
2d 427, 433 (S.D.N.Y. 2002); *see Ginett*, 962 F.2d at 1095 (courts "should avoid the possibility
that the ultimate dispositions of the [remaining] claims . . . moot" the appeal).

The SEC's suggestion (at 20) that entry of partial final judgment "would make for more
efficient litigation" is flat-out wrong in light of its representation that it will appeal the *other* dis-
missed claims after a trial.  *Supra* I.C.  And the SEC cannot remedy that shortcoming in reply by
trying to expand its Rule 54(b) request to cover all dismissed claims (as its proposed order seems
to try surreptitiously):  *All* dismissed claims are equally intertwined with the remaining claims
and turn on the same predicate facts—*e.g.*, whether certain events in early 2012 constituted indi-
cations of impairment at RTCM, or whether Defendants learned at a May 2012 Brisbane meeting
that RTCM had such indications of impairment.  *See* ECF No. 135 at 19–20.  Even if the SEC
were to attempt to broaden its request to cover all dismissed claims, that would not eliminate the
prospects that two appellate panels would need to familiarize themselves with the facts and is-
sues of this case and that a later ruling from this Court could moot any possible immediate ap-
peal.

Finally, the SEC's reliance (at 20) on what is in the public interest is not relevant.  As its
own cited authority explains, that an issue may be "of public import" is "not [a] factor[ ] that
should be considered in determining the issue of no just cause for delay." *Hudson River Sloop*

*Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 419 (2d Cir. 1989).  Accordingly, the Court should deny the SEC's motion to certify partial final judgment under Rule 54(b).

<u>**CONCLUSION**</u>

For the above reasons, the Court should exercise its broad discretion and deny the SEC's requests to certify an interlocutory appeal of the *Lorenzo* Order or to certify partial final judgment on any dismissed claims.

Dated: New York, New York
April 8, 2021

Respectfully submitted,

   /s/ Peter J. Romatowski (on consent)
Peter J. Romatowski
Kristen A. Lejnieks
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel: (202) 879-7625
pjromatowski@jonesday.com
kalejnieks@jonesday.com

Jacqueline Vallette (pro hac vice)
JONES DAY
717 Texas, Suite 300
Houston, TX 77002
Tel: (832) 239-3939
jvallette@jonesday.com

Henry Klehm III
James P. Loonam
Donald L. R. Goodson
JONES DAY
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3419
hklehm@jonesday.com
jloonam@jonesday.com
dgoodson@jonesday.com

   /s/ N. Scott Fletcher (on consent)
N. Scott Fletcher
SCOTT FLETCHER LAW, PLLC
808 Travis St. Suite 1420
Houston, TX 77002-5701
Tel:  (713) 255-0422
sfletcher@nsflaw.com

*Attorneys for Defendant Thomas Albanese*

By:   /s/ Mark A. Kirsch
Mark A. Kirsch
Lawrence J. Zweifach
Jennifer L. Conn
Avi Weitzman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Tel: (212) 351-4000
mkirsch@gibsondunn.com
lzweifach@gibsondunn.com
jconn@gibsondunn.com
aweitzman@gibsondunn.com

Richard W. Grime (pro hac vice)
Alexander W. Mooney (pro hac vice)
Kellam M. Conover (pro hac vice)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
Tel: (202) 955-8500
rgrime@gibsondunn.com
amooney@gibsondunn.com
kconover@gibsondunn.com

*Attorneys for Defendants Rio Tinto PLC and
Rio Tinto Limited*

   /s/ Walter G. Ricciardi (on consent)
Theodore V. Wells, Jr.
Walter G. Ricciardi
Geoffrey R. Chepiga
Livia Fine
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
twells@paulweiss.com
wricciardi@paulweiss.com
gchepiga@paulweiss.com
lfine@paulweiss.com

*Attorneys for Defendant Guy Robert Elliott*