**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **No. 1:17-cv-7994-AT-DCF** |
| **RIO TINTO PLC, RIO TINTO LIMITED, THOMAS ALBANESE, and GUY ROBERT ELLIOTT,** | |
| **Defendants.** | |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY**
**IN SUPPORT OF ITS MOTION TO CERTIFY INTERLOCUTORY APPEAL UNDER**
**28 U.S.C. § 1292(b) OR, ALTERNATIVELY, TO ENTER PARTIAL FINAL JUDGMENT**

## <u>TABLE OF CONTENTS</u>

I.      This Court should certify its Reconsideration Order under Section 1292(b) ..................... 3

        A.      The issue involves a controlling question of law ..................................................... 3

        B.      There are substantial grounds for difference of opinion ........................................ 5

        C.      Immediate appeal will materially advance the ultimate termination
                of this case.............................................................................................................. 11

II.     Alternatively, this Court should certify partial final judgment on the dismissed
        claims under Rule 54(b) ....................................................................................................... 13

Conclusion .................................................................................................................................... 15

Certificate of Service

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                                                    **<u>Page(s)</u>**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997) ...................................................................................14

*Avondale Indus., Inc. v. Travelers Indem. Co.*,
887 F.2d 1200 (2d Cir. 1989) ...............................................................................14

*Chevron Corp. v. Donziger*,
No. 11-0691, 2013 WL 98013 (S.D.N.Y. Jan. 7, 2013) ......................................13

*Daniel v. Am. Bd. of Emergency Med.*,
212 F.R.D. 134 (W.D.N.Y. 2002) ........................................................................14

*Doninger v. Niehoff*,
642 F.3d 334 (2d Cir. 2011) .................................................................................12

*Est. of Metzermacher ex rel. Metzermacher v. Nat'l R.R. Passenger Corp.*,
487 F. Supp. 2d 24 (D. Conn. 2007) ....................................................................14

*Geoffrey A. Orley Revocable Tr. U/A/D 1/26/2000 v. Genovese*,
No. 18-8460, 2020 WL 611506 (S.D.N.Y. 2020) ................................................10

*Ginett v. Computer Task Force*,
962 F.2d 1085 (2d Cir. 1992) ...............................................................................13

*Harriscom Svenska AB v. Harris Corp.*,
947 F.2d 627 (2d Cir. 1991) .................................................................................14

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*,
891 F.2d 414 (2d Cir. 1989) .................................................................................15

*In re Agape Litig.*,
274 F.R.D. 453 (E.D.N.Y. 2011) .........................................................................14

*In re Duplan Corp.*,
591 F.2d 139 (2d Cir. 1978) ...................................................................................3

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 524 (S.D.N.Y. 2014) ..................................................................13

*In re Teva Sec. Litig.*,
   No. 3:17-558, 2021 WL 1197805 (D. Conn. Mar. 30, 2021) ............................................... 1, 8

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990) ........................................................................................5

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019) ........................................................................... *passim*

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) .......................................................................................... 3

*Puddu v. 6D Glob. Techs., Inc.*,
   No. 15-8061, 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021)..................................................2, 8

*Roebuck v. Guttman*,
   678 F. Supp. 68 (S.D.N.Y. 1988) ......................................................................... 15

*SEC v. Fiore*,
   416 F. Supp. 3d 306 (S.D.N.Y. 2019) ..................................................................... 9

*SEC v. Goldman Sachs & Co.*,
   No. 10-3229, 2011 WL 4940908 (S.D.N.Y. Oct. 17, 2011) .................................................. 12

*SEC v. Kameli*,
   No. 17 C 4686, 2020 WL 2542154 (N.D. Ill. May 19, 2020) .................................................. 8

*SEC v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011) .................................................................... 9

*SEC v. SeeThruEquity, LLC*,
   No. 18-10374, 2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019) ........................................ 1, 8, 9

*SEC v. Winemaster*,
   No. 19-04843, 2021 WL 1172773 (N.D. Ill. Mar. 29, 2021) ................................................ 8

*Sussman v. I.C. Sys., Inc.*,
   No. 12-0181, 2013 WL 5863664 (S.D.N.Y. Oct. 30, 2013) ................................................ 12

*United States v. McGee*,
   564 F.3d 136 (2d Cir. 2009) .......................................................................6

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
   655 F.3d 1039 (9th Cir. 2011) ....................................................................... 5

**<u>Statutes</u>**

Securities Act of 1933

   Section 17(a), 15 U.S.C. § 77q(a) .................................................................. 10

   Section 17(a)(1), 15 U.S.C. § 77q(a)(1)................................................... *passim*

   Section 17(a)(3), 15 U.S.C. § 77q(a)(3)................................................... *passim*

28 U.S.C. § 1292(b) ....................................................................................... *passim*

**<u>Rules</u>**

Rules under the Securities Exchange Act of 1934

   Rule 10b-5, 17 C.F.R. § 240.10b-5 .................................................................. 10

   Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a) ................................................ *passim*

   Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b) .......................................... 5, 7, 8, 9

   Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c)................................................. *passim*

Federal Rule of Civil Procedure 54(b) ....................................................3, 13, 14, 15

**<u>Other Authorities</u>**

16 *Fed. Prac. & Proc.* § 3930 (3d ed.) ......................................................................11

Defendants' opposition (Dkt. No. 221) does not contest two fundamental points—one legal, and one logistical—that both demonstrate why this Court should certify its Reconsideration Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

*First*, Defendants do not dispute that this Court decided a purely legal issue in its order when it "disagree[d] with the SEC's contention" that *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), "holds that 'misstatements can form the basis for liability under Rule 10b-5(a) and (c) and § 17(a)(1).'"  Recon. Order 4-5.  Indeed, Defendants' opposition *nowhere mentions* that core holding.  Although Defendants now unpersuasively attempt to frame (p. 3) the impact of *Lorenzo* as "highly fact-bound," this Court's Reconsideration Order construed Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) to exclude from liability—as a matter of law—all conduct related to misstatements, with a lone carve-out for cases involving a defendant's dissemination of misstatements that he or she did not make.  The Court thus did not, and had no reason to, address whether the alleged conduct at issue here would satisfy those provisions under the Commission's interpretation of their scope.  It instead addressed, to use Defendants' phrase (pp. 3, 10), the "threshold" issue of the legal scope of *Lorenzo*.  As Defendants themselves previously asserted in opposing the Commission's reconsideration request, the purely legal dispute for this Court to decide was whether allegations "involv[ing] a scheme based solely on misstatements or omissions" may be actionable under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3).  Dkt. No. 185, at 14.

The Commission is not alone in interpreting this Court's Reconsideration Order as deciding a purely legal question.  One court in this circuit has recently stated that this Court's Order interprets *Lorenzo* "more restrictively" than another court in this circuit.  *In re Teva Sec. Litig.*, No. 3:17-558, 2021 WL 1197805, at *6 (D. Conn. Mar. 30, 2021) (comparing the Reconsideration Order to *SEC v. SeeThruEquity, LLC*, No. 18-10374, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26,

2019)).  Another court has stated that the Reconsideration Order adopts a "narrow[]" reading of *Lorenzo*.  *Puddu v. 6D Glob. Techs., Inc.*, No. 15-8061, 2021 WL 1198566, at \*10-11 (S.D.N.Y. Mar. 30, 2021).  Defendants' efforts to recast this Court's purely legal conclusion—which relied on Defendants' purely legal arguments and has now been recognized by other courts in this circuit for its purely legal interpretation of *Lorenzo*—should be rejected.

*Second*, Defendants do not dispute that, if the Court were to certify its order and the Second Circuit accepted the appeal, proceedings would not be delayed by *a single day* if the Second Circuit were to agree that this Court correctly rejected the Commission's reconsideration request.

The Commission appreciates that this Court's time and resources are precious commodities even absent a pandemic, and it rarely seeks interlocutory review.  But in light of the importance of the legal issues presented by this Court's interpretation of *Lorenzo*—both in this case and others— the Commission has authorized the Commission staff to pursue this request.  To facilitate review and minimize any inconvenience for the Court, however, the Commission will not seek to stay district court proceedings even if this Court were to certify its order.  The Commission has likewise stated that, if the Second Circuit were to accept the Court's certification, the Commission will file its opening brief in less than half the time the rules allow.  A decision by the Second Circuit upholding the Reconsideration Order will not burden trial proceedings in any way.  And a decision in the Commission's favor would serve judicial efficiency by allowing the claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) to be adjudicated at the same time as the remaining claims. It would also serve the public interest by providing the Second Circuit with the opportunity to address a recent Supreme Court decision that has already generated a stark difference of opinion.

Nor have Defendants provided any persuasive reason to deny the Commission's alternative request to direct that a final judgment be entered pursuant to Rule 54(b) on the Commission's

claims brought under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3).

The Commission's motion should be granted.

## I.      This Court should certify its Reconsideration Order under Section 1292(b)

This Court's Reconsideration Order satisfies the requirements for certification under Section 1292(b).  The Order: (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Contrary to the Defendants claim (p. 9) that "every argument the SEC ma[de] in its motion could be made *any* time a court dismisses some, but not all, claims in a case," the Commission seeks certification of a purely legal issue based on an intervening Supreme Court decision that has already resulted in differing interpretations by district courts both within and outside this circuit.  That rare scenario has justified certification in the past and should do so again here.

### A.      The issue involves a controlling question of law

This Court's Reconsideration Order is controlling because it involves a purely "legal question" of "special consequence" regarding the scope of *Lorenzo* that disposed of all the Commission's claims brought pursuant to Rule 10b-5(a) or (c) and Section 17(a)(1) or (3). *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009).  Whether allegations involving misstatements or omissions may be brought under Rule 10b-5(a) or (c) or Section 17(a)(1) or (3) if a defendant did not disseminate misstatements himself or herself "may importantly affect the conduct of [this] action."  *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978).

Defendants disagree, urging that this Court's Reconsideration Order is "fact based" and does not present "a clean, threshold issue."  Opp. 9-10.  That remarkable statement is inconsistent with this Court's Reconsideration Order.  The purely legal, threshold issue this Court addressed is whether "*Lorenzo* holds that 'misstatements can form the basis for liability under Rule 10b-5(a)

3

and (c) and § 17(a)(1).'"  Recon. Order 4-5.  This Court concluded that, as a matter of law, Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) exclude from liability all conduct related to misstatements unless the case involves a defendant's dissemination of misstatements that he or she did not make.   It would be difficult to imagine a cleaner vehicle to address *Lorenzo*'s scope.

Defendants likewise seek to downplay the effect of this Court's interpretation of *Lorenzo* on the Commission's case.  They state (p. 2 n.1) that "many other dismissed claims failed for reasons unrelated to *Lorenzo*."  But Defendants then argue (p. 4) that "the SEC's complaint was based on alleged misstatements and omissions."  This Court agreed with that latter argument when it dismissed all the Commission's claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3).  *See* Recon. Order 4-5.  Defendants' misguided attempt to minimize the controlling nature of this Court's interpretation cannot be reconciled with the Court's Reconsideration Order.

Defendants' other arguments that the legal issue addressing the scope of *Lorenzo* is not controlling fare no better.  They state (p. 11) that "the risk of a second trial remains unchanged" even if the Second Circuit were to conclude that this Court erred when it dismissed the Commission's claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3).  But the Second Circuit would in all likelihood issue its decision before any trial on any remaining claims.  Defendants also contend (pp. 2, 3, 8, 11, 15) that the Commission promised to ultimately appeal *any* fraud claim the Court dismissed regardless of whether those claims relate to *Lorenzo*.  The Commission, however, simply stated that resources would be saved if this Court were to "certify[ ] the matter for appeal now," referring to certification of the Reconsideration Order and its reliance on *Lorenzo*.  Mot. 17.  The Commission did not intend to make any statement one way or the other about whether it plans to appeal anything but the Court's dismissal of claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3).  An appellate decision addressing the scope of *Lorenzo* will

thus minimize the need for a second trial because if the claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) are reinstated, they could be adjudicated alongside the remaining claims.

Defendants also dismiss what they describe as "the *purported* precedential value of a Second Circuit ruling." Opp. 11 (emphasis added). The Commission disagrees with that approach to the precedential force of Second Circuit opinions. A decision addressing whether, as a matter of law, Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) exclude from liability all conduct related to misstatements unless the case involves a defendant's dissemination of misstatements that he or she did not make would provide guidance to the numerous courts (in addition to this Court) confronting precisely that issue. The "system-wide costs and benefits of allowing the appeal," including the extent to which resolution of the certified question will affect other cases, *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990), supports certification. And although Defendants state that "the Second Circuit would be far better positioned to issue a precedential ruling on a fully developed record," *see* Opp. 11, the record will not become more developed absent a decision by that Court because this Court dismissed the claims on a motion to dismiss.

### B.     There are substantial grounds for difference of opinion

There are substantial grounds for difference of opinion over this Court's interpretation of *Lorenzo*. Although *Lorenzo* involved dissemination, the Supreme Court did not limit the scope of its discussion so narrowly. Instead, it "granted review" to answer a question that had divided courts: "whether someone who is not a 'maker' of a misstatement" under Rule 10b-5(b) "can nevertheless be found to have violated the other subsections of Rule 10b-5 and related provisions of the securities laws, when the only conduct involved concerns a misstatement." 139 S. Ct. at 1100. It cited the D.C. Circuit's decision in *Lorenzo* on one side of the split, with *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039 (9th Cir. 2011), on the other.

Defendants do not dispute that the allegations in *WPP* involved only the failure to disclose stock sales, *not* dissemination.  655 F.3d at 1057-58.

Critically, Defendants also do not dispute that if the Supreme Court answered the question it asked at the start of its opinion, this Court erred in its Reconsideration Order.  Instead, they claim that "the Supreme Court's *actual* holding was narrower than the question presented."  Opp. 7 n.2 (emphasis added).  Defendants, however, offer no reason why a Supreme Court opinion would set forth a question presented only to answer a *different* question without saying that it was doing so.

Even apart from the way in which *Lorenzo* framed the question before it, the Supreme Court's "explanation" is "part of the [C]ourt's holding, to which" district courts are "expected to adhere under the principle of stare decisis."  *United States v. McGee*, 564 F.3d 136, 140 n.2 (2d Cir. 2009).  *Lorenzo* ruled that one who "d[oes] not 'make' the statements and consequently falls outside subsection (b) of the Rule" may still be liable under other antifraud provisions. 139 S. Ct. at 1101.  As support, the Court discussed the antifraud provisions' broad text, purpose, and overlap, warning against overly restrictive interpretations of those provisions that would allow individuals who engage in deceptive conduct to escape liability.  *Id.* at 1101-03.

This Court, however, "disagree[d] with the SEC's contention that *Lorenzo* holds that 'misstatements can form the basis for liability under Rule 10b-5(a) and (c) and § 17(a)(1).'"  Recon. Order 4-5.  Defendants do not even mention that legal conclusion in their opposition to the Commission's certification motion.  *See generally* Opp. 1-22.  Nor do they dispute that the Second Circuit frequently employs Section 1292(b) to interpret the scope of recent Supreme Court opinions in the field of securities law, particularly decisions that raise novel and important questions like the one here.  *See* Mot. 10-11.  Defendants' total silence on those issues confirms that the Reconsideration Order presents an ideal case for certification of this important legal issue.

6

The arguments Defendants do offer confirm that there are substantial grounds for difference of opinion.  After stressing that the antifraud provisions "capture a wide range of conduct," *Lorenzo* stated that "[p]urpose, precedent, and circumstance could lead to narrowing" the reach of the antifraud provisions in "borderline cases."  139 S. Ct. at 1101 (noting that "one can readily imagine other actors tangentially involved in dissemination—say, a mailroom clerk— for whom liability would typically be inappropriate").  But that statement fails to support Defendants' argument, *see* Opp. 12, because this Court did not examine the provisions' purpose, Supreme Court precedent holding that the various antifraud provisions overlap, or circumstances that might excuse the CEO and CFO from liability—not a mailroom clerk—who allegedly corrupted the company's auditing process.  Defendants still do not dispute that the CEO's and CFO's alleged conduct at issue here falls within the plain text of Rule 10b-5(a) and (c) and Section 17(a)(1) and (3), and instead rely on a reading of *Lorenzo* that would require that text to be ignored.

Nor are Defendants correct (pp. 12-14) that every case applying *Lorenzo* interprets the Supreme Court's opinion the same way.  As the Commission's certification motion demonstrated, most courts recognize that *Lorenzo* requires interpreting the antifraud provisions according to their plain, broad, overlapping text so that liability may be imposed under Rule 10b-5(a) and (c) and Section 17(a)(1) and (a)(3) for conduct related to misstatements (including, but not limited to, dissemination), regardless of whether the defendant makes the misstatement. Mot. 14-16.  Indeed, the same day the Commission filed its certification motion, another court cited *Lorenzo* to reject the argument "that Rule 10b-5(a) and (c) require deceptive acts distinct from an alleged misstatement forming the basis of a Rule 10b-5(b) claim," and ruled that the defendant's failure to disclose the existence of a document to a company's auditors that "was necessary for proper

accounting" constituted "a deceptive act." *SEC v. Winemaster*, No. 19-04843, 2021 WL 1172773, at *23-24 (N.D. Ill. Mar. 29, 2021).  This Court adopted a different approach.

Defendants cite (p. 13) *In re Teva Sec. Litig.*, No. 3:17-558, 2021 WL 1197805, at *6 (D. Conn. Mar. 30, 2021), a recent decision in a private action stating that *Lorenzo* "did not address" conduct based on "a series of misstatements and omissions that are, admittedly, partly actionable under Rule 10b-5(b)." *Id.* at *6.  But Defendants fail to acknowledge that, in doing so, the court in *Teva* stated that "[s]ome district courts in this circuit apparently agree" that liability under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) may be imposed regardless of whether allegations involve conduct "distinct from an alleged misstatement."  *Id.* at *5 (citing *SEC v. SeeThruEquity, LLC*, No. 18-10374, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019)).  Other courts have relied on *SeeThruEquity* to reach the same conclusion.  *See SEC v. Kameli*, No. 17 C 4686, 2020 WL 2542154, at *14 (N.D. Ill. May 19, 2020); *Winemaster*, 2021 WL 1172773, at *23 (relying in turn on *Kameli*).  By contrast, the court in *Teva* relied on *this Court's* Reconsideration Order when it stated that "other district courts cabin *Lorenzo* and read it more restrictively."  2021 WL 1197805, at *5.  The fact that one of Defendants' lead cases recognizes the deepening disagreement that Defendants themselves deny speaks volumes about whether this factor has been satisfied.  And another court in this circuit noted that the Reconsideration Order adopts a "narrow[ ]" reading of *Lorenzo*, before finding, "[i]n line with the reasoning in *Lorenzo*, no basis to conclude that a plaintiff may not establish, in a scheme liability claim, the existence of a 'manipulative or deceptive act' by pointing to alleged misrepresentations or omissions." *Puddu v. 6D Glob. Techs., Inc.*, No. 15-8061, 2021 WL 1198566, at *10-11 (S.D.N.Y. Mar. 30, 2021).

Defendants also do not meaningfully defend the way in which this Court distinguished other cases that have interpreted *Lorenzo* to allow liability for deceptive conduct.  This Court

concluded that those cases featured dissemination, *see* Recon. Order 5, but as the Commission explained in its motion, although some of the cases involved the dissemination of misstatements—just like this case, in which Albanese made multiple misstatements at investor events—they neither solely involved dissemination nor required it. *See* Mot. 14-15.

Instead of embracing the rationale of this Court's Reconsideration Order, Defendants state (p. 13) that other cases interpreting *Lorenzo* according to its reasoning rather than the precise facts at issue in that case are all distinguishable because they involve "allegations of deceptive conduct above and beyond any alleged misstatements." Defendants' argument is nonsense. In its motion-to-dismiss ruling, this Court cited *SEC v. Kelly*, 817 F. Supp. 2d 340 (S.D.N.Y. 2011), as the basis for any requirement for additional deceptive conduct apart from misstatements or omissions. MTD Order 35-36. A different decision in this very circuit has ruled that *Lorenzo* overruled *Kelly* and "foreclose[s]" that argument. *SeeThruEquity*, 2019 WL 1998027, at *5; *see SEC v. Fiore*, 416 F. Supp. 3d 306, 320-21 (S.D.N.Y. 2019) ("[T]he SEC alleges a deceptive scheme involving multiple forms of market manipulation, as well as various misstatements or omissions, which, combined with a misleading promotional campaign, were designed to" mislead the public). As *Lorenzo* explained, Rule 10b-5(b) does not "*exclusively* regulate[ ] conduct involving false or misleading statements." 139 S. Ct. at 1102-03. Rather, the other antifraud provisions encompass fraudulent conduct regardless of whether that conduct relates to a misstatement or omission.

Here, for example, the allegations involve Albanese and Elliott corrupting Rio Tinto's audit process by compiling and reviewing false or misleading financial statements that were ultimately disseminated to the public. *See* Compl. ¶¶ 122-144. If proven, that alleged deception constitutes a device, scheme, or artifice to defraud, or an act, practice, or course of business which operates as a fraud or deceit. Mot. 12-13. As *Lorenzo* instructs—and as the cases the Commission relied

on confirm, *see* Mot. 14-16—that is true even if the case also involves a misstatement or omission. A critical lesson from *Lorenzo* is that the requirement for "additional deceptive conduct," Opp. 14, finds no basis in the text or purposes of Rule 10b-5(a) and (c) and Section 17(a)(1) and (3).

Defendants also assert that, even though *Lorenzo* relied on "the relevant language, precedent, and purpose" of the antifraud provisions to decide how the legal rule it announced applied to the facts of that case, 139 S. Ct. at 1100, that mode of analysis does not matter because interpreting those provisions according to their plain text might somehow erase the distinction between primary and secondary liability.  Opp. 13 (citing *Geoffrey A. Orley Revocable Tr. U/A/D 1/26/2000 v. Genovese*, No. 18-8460, 2020 WL 611506 (S.D.N.Y. 2020)).  But *Lorenzo* already considered that argument and rejected it, as noted by the dissent in that case.  *See* 139 S. Ct. at 1106 (Thomas, J., dissenting) ("Today, the Court eviscerates" the "clear line between primary and secondary liability in fraudulent-misstatement cases" by "holding that a person who has not 'made' a fraudulent misstatement can nevertheless be primarily liable for it.").  As the *Lorenzo* majority explained, "the same conduct" can "be a primary violation with respect to one offense and aiding and abetting with respect to another."  *Id.* at 1103-04.  The Commission respectfully states that this Court erred by not examining the language, precedent, and purposes of Rule 10b-5 and Section 17(a) when deciding their reach.  At a minimum, the rulings of courts that have interpreted *Lorenzo* based on that mode of analysis shows that there are substantial grounds for difference of opinion.

Nor has the Commission, as Defendants posit (p. 7), "repositioned its theory of fraud."  The Commission has consistently maintained—in its complaint, in its opposition to Defendants' motion to dismiss, and in its reconsideration motion and reply—that conduct related to misstatements and omissions can form the basis for liability under 10b-5(a) and (c) and 17(a)(1)

and (3).  This Court has ruled that the Commission's consistent position is incorrect, and there is at least substantial disagreement as to whether this Court's conclusion is consistent with *Lorenzo*.

### C.  Immediate appeal will materially advance the ultimate termination of this case

Interlocutory appeal would materially advance the ultimate, final determination of all claims in this case in the manner that is most efficient for the time and resources of the court system.  "The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." 16 *Fed. Prac. & Proc.* § 3930 (3d ed.).  As applied here, if the Second Circuit were to agree with the Commission's interpretation of *Lorenzo*, the Commission's claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) could be adjudicated concurrent with the rest of its remaining claims, minimizing the likelihood of a second, highly duplicative trial involving many of the overseas witnesses and testimony already relevant to the Commission's remaining claims.

Defendants state (p. 15) that "[i]t is highly likely . . . that interlocutory review would *delay* this years-old litigation," but they never explain why that is so.  Because the Commission has agreed not to seek a stay if this Court grants its motion, district-court proceedings may continue while the appeal is pending.  If the Second Circuit upholds the Reconsideration Order, no delay or disruption will have occurred.  If, however, the Second Circuit agrees with the Commission, this Court and a jury will be able to adjudicate the merits of the Commission's claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) at the same time as the other remaining claims in the case. And even if, as Defendants state (pp. 15-16), the Commission's claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) are merely "repackage[d]" versions of the remaining claims that involve "identical factual predicates and involve nearly identical legal issues," it would make sense to decide them all at the same time because presumably much of the evidence and many of the

witnesses will overlap too.  Interlocutory review of those claims will both materially advance the ultimate termination of the litigation and establish precedent addressing whether allegations involving misstatements or omissions cannot be brought under Rule 10b-5(a) or (c) or Section 17(a)(1) or (3) unless the defendant disseminated misstatements himself or herself.[1]

Further, resolution of the *Lorenzo* issue now would simplify the jury instructions and trial in this case, as it would allow, for example, the jury to consider scienter-based liability for all defendants based on the totality of each defendant's involvement in the materially misleading Half Year 2012 financial statement.  There is nothing "vague and unspecified" about that.  Opp. 17. And although the Commission believes that such evidence may be admissible regardless of whether its claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) are reinstated, the likelihood of Defendants agreeing with that proposition is vanishingly small.

The cases Defendants cite do not rebut the Commission's position that certification will expedite the ultimate termination of this litigation.  Most importantly, none involves the interpretation of a recent Supreme Court decision that has led to disagreement among district courts about the scope of the opinion where, if the certified issue were decided in the movant's favor, a substantial portion of the movant's claims would be reinstated.  Even apart from that, the cases do not advance Defendants' position.  In *SEC v. Goldman Sachs & Co.*, No. 10-3229, 2011 WL 4940908 (S.D.N.Y. Oct. 17, 2011), the court rejected a certification request of an order *denying* a defendant's motion to dismiss where claims would proceed against the defendant regardless of the outcome of any interlocutory appeal.  *Id.* at *1; *see also Sussman v. I.C. Sys., Inc.*, No. 12-0181, 2013 WL 5863664, at *3 (S.D.N.Y. Oct. 30, 2013) (certification not warranted for

---

[1] The Commission is not seeking "to expand its Section 1292(b) request," Opp. 15 n.5, but Defendants are incorrect in stating that the Commission has "waived" anything related to the request.  *See Doninger v. Niehoff*, 642 F.3d 334, 338 n.2 (2d Cir. 2011).

interlocutory review of a denial of a motion to dismiss where a decision by the court of appeals dismissing the denied claims "would not significantly reduce the issues remaining in the case"). Unlike the denial in that case, the Reconsideration Order resulted in dismissal of "all but a handful of claims," significantly altering the future conduct of this case.  Recon. Order 1-2.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524 (S.D.N.Y. 2014), involved a certification denial for a question that involved "highly fact-specific applications of law to fact" where "the appeal could at most lead only to a remand for repleading," *id.* at 531-33, while the Commission's motion concerns a purely legal question where a decision in its favor would lead to more than just repleading.   And certification in *Chevron Corp. v. Donziger*, No. 11-0691, 2013 WL 98013 (S.D.N.Y. Jan. 7, 2013), was not warranted because it would not have "likely affect[ed] the scope, duration, or expense of the lawsuit."  *Id.* at *3.  Reinstatement of the Commission's *Lorenzo*-based claims would plainly affect the scope of this litigation, and resolution of that issue now could shorten the timeframe for this litigation to end.

## II.   Alternatively, this Court should certify partial final judgment on the dismissed claims under Rule 54(b)

If this Court denies the Commission's certification request, it should enter final judgment on the claims that have been dismissed pursuant to Rule 54(b) because doing so would be in "the interest of sound judicial administration."  *Ginett v. Computer Task Force*, 962 F.2d 1085, 1095 (2d Cir. 1992).  This action includes multiple parties with multiple claims; the claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) have been dismissed in their entirety; and there is no just reason to delay entry of final judgment as to those claims.  Partial final judgment also will not delay or disrupt litigation in this Court.  The Commission will not seek a stay of litigation on the remaining claims.  If the court of appeals affirms dismissal, that decision will provide guidance to the parties in this litigation and parties confronting these issues throughout the country.  And if the

court of appeals reverses, those claims and the remaining claims can all be tried together.

Defendants offer three reasons to deny entry of partial final judgment, but none has merit. *First*, Defendants state (p. 20) that Rule 54(b) is inappropriate where "the remaining claims have the same factual predicate and entail similar legal issues as any dismissed claims." But "[t]he Second Circuit has held Rule 54(b) to be applicable where it would be 'more efficient' for reinstatement of claims on appeal to occur in time for trial together with the remaining claims thereby avoiding an 'expensive and duplicative trial.'" *Daniel v. Am. Bd. of Emergency Med.*, 212 F.R.D. 134, 137 (W.D.N.Y. 2002) (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 15-16 (2d Cir. 1997)); *see In re Agape Litig.*, 274 F.R.D. 453, 454-55 (E.D.N.Y. 2011) ("[I]n the event the Plaintiff's claims . . . are reinstated by the Second Circuit, an expensive and duplicative trial could be avoided." (quotation marks omitted)). Because of the procedural posture of this case, if the court of appeals were to reverse based on a different interpretation of *Lorenzo*, the reinstated claims could be tried with the remaining claims. Moreover, the dismissed claims do not entail "similar legal issues" as the remaining claims insofar as the claims were dismissed based on this Court's reading of *Lorenzo* but the remaining claims were not. Opp. 20.[2] If, however, this Court prefers certification under Section 1292(b) as the more appropriate method for review of the *Lorenzo* issue, the Commission would not object to that determination. *See Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991) (noting the ability of district courts to grant certification under Section 1292(b) to address "legal" issues even where

---

[2] *See also, e.g.*, *Est. of Metzermacher ex rel. Metzermacher v. Nat'l R.R. Passenger Corp.*, 487 F. Supp. 2d 24, 27 (D. Conn. 2007) (partial final judgment appropriate because "dismissal of the claims against" some defendants "hinged on a legal determination that is entirely unrelated to, and separable from, plaintiffs' claims against" another defendant); *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1203 (2d Cir. 1989) ("Claims are separable if they involve at least some different questions of fact and law and could be separately enforced.").

partial certification under Rule 54(b) may not be appropriate).

*Second*, Defendants note (p. 20) that "this Court could moot any immediate appeal before the Second Circuit could even rule on any of the SEC's dismissed claims." As a practical matter, however, because (1) the Commission has agreed to proceed in the Second Circuit expeditiously if this Court grants its motion, and (2) summary judgment briefing is still in its early stages, the likelihood of mootness before a Second Circuit decision is negligible. The "discrete and straightforward legal issue" presented by *Lorenzo* warrants review now. *Roebuck v. Guttman*, 678 F. Supp. 68, 70 (S.D.N.Y. 1988) (entering partial final judgment under Rule 54(b)).

*Third*, Defendants claim (p. 21) that the public interest plays no role in whether a Rule 54(b) motion should be granted. The Second Circuit disagrees. *See Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 419 (2d Cir. 1989) (upholding a no-just-reason-for-delay determination under Rule 54(b) because "the issues on appeal are unique and . . . *their resolution is of public import*" (emphasis added)).

## <u>CONCLUSION</u>

The Commission recognizes that certification under 28 U.S.C. § 1292(b) should be the exception rather than the norm. To that end, the Commission has agreed not to seek a stay of proceedings in this Court if it were to grant certification and the Second Circuit agreed to hear the appeal. And the Commission has agreed to brief any interlocutory appeal expeditiously. In light of those representations, and because the Reconsideration Order satisfies the standard for interlocutory review, the Commission respectfully requests that the Court grant the Commission's motion for leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In the alternative, this Court should enter final judgment on the Commission's dismissed claims under Rule 10b-5(a) and (c) and Securities Act Section 17(a)(1) and (3), pursuant to Rule 54(b), certify that there is no just cause for delay, and direct the clerk to enter a final judgment on those claims.

Dated: April 14, 2021                    Respectfully submitted,

                                         By: /s/ Thomas A. Bednar
                                         Thomas A. Bednar
                                         Fernando Campoamor Sanchez
                                         Dean M. Conway
                                         Gregory N. Miller
                                         Emily T. Parise
                                         Martin Totaro
                                         Securities and Exchange Commission
                                         100 F Street N.E.
                                         Washington, D.C. 20549
                                         (202) 551-6218 (Bednar)
                                         bednart@sec.gov

                                         Counsel for Plaintiff


## CERTIFICATE OF SERVICE

I certify that on April 14, 2021, a copy of the foregoing document was served upon all

counsel of record via the Court's electronic filing system.


                                         /s/ Thomas A. Bednar
                                         Thomas A. Bednar
                                         Counsel for Plaintiff