```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/20/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                          Plaintiff,

      v.

RIO TINTO PLC, et al.,

                          Defendants.

Civ. No. 1:17-cv-07994-AT

**FINAL JUDGMENT AS TO DEFENDANTS
RIO TINTO PLC AND RIO TINTO LIMITED**

The Securities and Exchange Commission having filed a Complaint and Defendants Rio Tinto plc and Rio Tinto Limited (collectively, "Rio Tinto" or "Defendants") having entered general appearances; consented to the Court's jurisdiction over Defendants and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

IT IS ORDERED, ADJUDGED, AND DECREED that, Defendants are permanently restrained and enjoined from violations of Section 13(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-16 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-16] by filing reports and/or statements which either make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

1

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

II.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants are permanently restrained and enjoined from violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] by failing to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise:  (a) Defendants' officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendants or with anyone described in (a).

III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant Rio Tinto plc shall pay a civil penalty in the amount of $28,000,000 to the Securities and Exchange Commission pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].  Rio Tinto plc shall make this payment within 30 days after entry of this Final Judgment.

Rio Tinto plc may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.  Payment may also be made

directly from a bank account via Pay.gov through the SEC website at

http://www.sec.gov/about/offices/ofm.htm. Rio Tinto plc may also pay by certified check, bank

cashier's check, or United States postal money order payable to the Securities and Exchange

Commission, which shall be delivered or mailed to

>    Enterprise Services Center
>    Accounts Receivable Branch
>    6500 South MacArthur Boulevard
>    Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of

this Court; Rio Tinto plc as a defendant in this action; and specifying that payment is made

pursuant to this Final Judgment.

Rio Tinto plc shall simultaneously transmit photocopies of evidence of payment and case

identifying information to the Commission's counsel in this action. By making this payment,

Rio Tinto plc relinquishes all legal and equitable right, title, and interest in such funds and no

part of the funds shall be returned to Rio Tinto plc. The Commission shall send the funds paid

pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's judgment for penalties by the use of all

collection procedures authorized by law, including the Federal Debt Collection Procedures Act,

28 U.S.C. § 3001 *et seq.,* and moving for civil contempt for the violation of any Court orders

issued in this action. Rio Tinto plc shall pay post-judgment interest on any amounts due after 30

days of the entry of this Final Judgment pursuant to 28 USC § 1961.

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that based on

Defendants' agreement to cooperate in in this action and any related judicial or administrative

proceeding or investigation commenced by the Commission or to which the Commission is a

party, pursuant to the terms set forth in Appendix A to the Consent (the "Rio Tinto Cooperation Agreement"), which is also attached hereto and which also is incorporated with the same force and effect as if fully set forth herein, the Court is not ordering Defendant Rio Tinto plc to pay a civil penalty in excess of $28,000,000 and is not ordering Defendant Rio Tinto Limited to pay any civil penalty. If at any time following the entry of the Final Judgment the Commission obtains information indicating that Defendants knowingly provided materially false or misleading information or materials to the Commission or in a related proceeding or otherwise failed to abide by the terms set forth in the Rio Tinto Cooperation Agreement, the Commission may, at its sole discretion but with 21 days written notice to the Defendants, petition the Court for an order requiring Defendants to pay an additional civil penalty. In connection with any such petition and at any hearing held on such a motion: (a) Defendants will be precluded from arguing that they did not violate the federal securities laws as alleged in the Complaint; (b) Defendants may not challenge the validity of the Judgment, this Consent, or any related Undertakings; (c) the allegations of the Complaint, solely for the purposes of such motion, shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. Under these circumstances, the parties may take discovery, including discovery from appropriate non-parties. For purposes of this Final Judgment, a "related" proceeding is one arising out of the facts alleged in the Complaint.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendants shall comply with all of the undertakings and agreements set forth therein, including, but not limited to, the undertakings to:

(a) Retain, within forty-five (45) days of the date of entry of this Final Judgment, at their own expense, a qualified independent consultant (the "Consultant") not unacceptable to the Commission staff, pursuant to the terms and concerning the areas and subjects set forth in Appendix B to the Consent (the "Independent Consultant Provisions"), which is also attached hereto and also is incorporated with the same force and effect as if fully set forth herein; and

(b) certify, in writing, compliance with the undertaking(s) set forth above in Appendix B. The certification shall identify the undertaking(s), provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and Defendants agree to provide such evidence. Defendants shall submit the certification and supporting material to Melissa R. Hodgman, Associate Director, Division of Enforcement, Securities and Exchange Commission, 100 F St., NE, Washington, DC 20549 with a copy to the Office of the Chief Counsel of the Division of Enforcement, no later than sixty (60) days from the date of the completion of the undertakings.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

VII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: November 20, 2023
      New York, New York

_____
ANALISA TORRES
United States District Judge

# APPENDIX A

## Rio Tinto Cooperation Agreement

Rio Tinto plc and Rio Tinto Limited (collectively, "Rio Tinto") (which, for purposes of this Cooperation Agreement, includes its officers, directors, and employees), shall cooperate fully with the Commission with respect to this action and any related[1] judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party ("Related Proceedings") and subject to compliance with applicable law. Rio Tinto agrees that such cooperation shall include, but is not limited to:

a. Production of Information: At the Commission's request, upon reasonable notice, and without subpoena, Rio Tinto shall truthfully and completely disclose all information in its possession, custody, or control requested by the Commission staff in connection with this action or any Related Proceedings;

b. Production of Documents: At the Commission's request, upon reasonable notice, and without subpoena, Rio Tinto shall provide any document, record, or other tangible evidence in its possession, custody, or control requested by the Commission staff in connection with this action or any Related Proceedings; and

c. Attendance of Personnel and Former Employees:

At the Commission's request, upon reasonable notice, and without subpoena, Rio Tinto shall secure the attendance of any Rio Tinto officer, director, employee at any meeting, interview, testimony, deposition, trial, or other convening or legal proceeding in connection with this action or any Related Proceedings.

Regarding any current employee who has been deposed in this action and whose employment ends after this provision becomes effective, Rio Tinto shall make it a condition of any severance or other post-employment agreement or compensation offered to the employee that the employee (i) agree to accept service by email, mail or facsimile transmission of any notices, requests, or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials in connection with this action, ("Commission Service"); (ii) with respect to Commission Service, waive the territorial limits upon service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules; (iii) consent to personal jurisdiction in any United States District Court for purposes of enforcing any Commission Service; and (iv) appear at any meeting, interview, testimony, deposition, trial, or other convening or legal proceeding in connection with this action or any Related Proceedings.

Regarding former employees of Rio Tinto who left the company before this provision became effective, at the Commission's request, Rio Tinto (including its officers, directors, and employees) shall at the Commission's request use their best efforts to secure the former employee's (i) agreement to Commission Service; (ii) with respect to Commission Service,

---

[1] For purposes of this Cooperation Agreement, "related" shall mean "arising out of the facts alleged in the Complaint."

1

waive the territorial limits upon service contained in Rule 45 for the Federal Rules of Civil Procedure and any applicable local rules; (iii) consent to personal jurisdiction in any United States District Court for purposes of enforcing any notices, requests, or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by the Commission staff; and (iv) appearance at any meeting, interview, testimony, deposition, trial, or other convening or legal proceeding in connection with this action or any Related Proceedings.

Rio Tinto shall bear any costs associated with securing the attendance or appearance of current or former personnel at any of the above, including but not limited to all travel-related expenses. The provisions of this subparagraph, however, explicitly exclude any person who is a party to this action or any Related Proceedings.

The obligations described in subparagraphs a-c are subject to Rio Tinto's reservation of rights: (i) to claim that documents or information requested is subject to attorney-client privilege or attorney-work product protection, (ii) to claim that any provision may violate applicable law; and (iii) to seek entry of a confidentiality order as to: sensitive business documents or information; sensitive personnel documents or information; or confidential information pertaining to parties other than Rio Tinto.

      d.     Joint Defense and Common Interest Privilege: Rio Tinto shall not assert or otherwise limit the nature or scope of its obligations described in subparagraphs a-c above or subparagraph e below on the basis of any joint defense or common interest privilege or agreement, including with respect to any communications or other exchange of information, directly or indirectly, with any other Defendant to this action or any third party in connection with this action or any Related Proceedings. Rio Tinto's obligations described in this subparagraph apply beginning upon the date of the entry of the Final Judgment as to Rio Tinto in this action and do not apply retroactively to communications or other exchanges of information predating the Final Judgment as to Rio Tinto.

      e.     Service and Personal Jurisdiction: Rio Tinto further agrees that, with respect to this action and any Related Proceedings, it will: (i) accept service by email, mail or facsimile transmission of notices, requests, or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by the Commission staff ("Commission Service"); (ii) appoint Rio Tinto's undersigned attorney as agent to receive Commission Service; (iii) with respect to Commission Service, waive the territorial limits upon service contained in Rule 45 for the Federal Rules of Civil Procedure and any applicable local rules; and (iv) consent to personal jurisdiction over Rio Tinto in any United States District Court for purposes of enforcing any Commission Service.

# APPENDIX B

**THE INDEPENDENT CONSULTANT PROVISIONS**

1.  No later than forty-five (45) days of the date of entry of the Final Judgment as to Rio Tinto plc and Rio Tinto Limited ("Final Judgment"), Rio Tinto plc and Rio Tinto Limited (collectively, "Rio Tinto") shall retain a qualified independent consultant (the "Consultant") not unacceptable to the Commission Staff to review and evaluate whether Rio Tinto has policies, procedures and controls:

    a.  reasonably designed to ensure compliance with International Accounting Standards (IAS) and International Financial Reporting Standards (IFRS) ("Relevant Accounting Standards"), as they relate to impairment and recoverable amount of assets within the scope of IAS 36;

    b.  reasonably designed to (i) identify impairment indicators pursuant to the Relevant Accounting Standards, and (ii) assess impairment as required by and pursuant to the Relevant Accounting Standards;

    c.  providing reasonable assurance that all required impairments of assets within the scope of IAS 36, in accordance with the Relevant Accounting Standards, are (i) recorded as required by applicable United States federal securities laws, rules, and regulations, and (ii) disclosed as required by applicable federal securities laws, rules, and regulations ("Impairment Considerations"); and

    d.  reasonably designed to identify, assess, document and appropriately communicate to Rio Tinto's senior accounting and disclosure executives and Board of Directors, project risks identified through Rio Tinto's technical review and risk management processes, or otherwise by Rio Tinto's employees or independent contractors with direct knowledge of the relevant project, that would require disclosure and/or changes to Rio Tinto's financial statements under applicable United States federal securities laws, rules and regulations;

    e.  reasonably designed to provide for periodic review and robust internal audit processes to ensure that the policies, procedures, and controls concerning accounting, financial reporting, and disclosure of project risk, as referenced in Paragraphs 1.a. through 1.d. above, are operating adequately without undue influence from senior management overseeing the relevant projects.

2.  Rio Tinto shall provide, within sixty (60) days of the entry of the Final Judgment, a copy of the engagement letter detailing the Consultant's responsibilities to Melissa R.

1

        Hodgman, Associate Director, Division of Enforcement, Securities and Exchange Commission, 100 F Street, N.E., Washington, DC 20549.

3. Rio Tinto shall require the Consultant, at the conclusion of the review of the Impairment Considerations, which in no event shall be more than two hundred and seventy (270) days after the entry of the Final Judgment, to submit a report of the Consultant to Rio Tinto and the Commission staff.  The report shall address the Consultant's findings and shall include a description of the review performed, the conclusions reached, and the Consultant's recommendations for changes or improvements.

4. Rio Tinto shall adopt, implement, and maintain all policies, procedures, and controls recommended in the report of the Consultant regarding the Impairment Considerations; provided, however, that within thirty (30) days Rio Tinto may, in writing, advise the Independent Consultant and the Commission staff of any recommendations that it considers unnecessary, unduly burdensome, impractical or inappropriate.  With respect to any such recommendation, Rio Tinto need not adopt that recommendation at that time but shall propose in writing an alternative policy, procedure or system designed to achieve the same objective or purpose. In the event that Rio Tinto and the Consultant are unable to agree on an alternative proposal within sixty (60) days, Rio Tinto and the Consultant shall jointly confer with the Commission staff regarding the disputed recommendation, and Rio Tinto shall accept the Commission staff's determination with respect to the disputed recommendation.

5. No later than six (6) months after the receipt of the Consultant's report, Rio Tinto shall direct the Consultant to conduct a follow-up review of Rio Tinto's efforts to implement each of the recommendations made by the Consultant regarding the Impairment

      Considerations and Rio Tinto shall direct the Consultant to submit a follow-up report to the Commission staff no later than nine (9) months after the receipt of the Consultant's report. Rio Tinto shall direct the Consultant to include in the follow-up report the details of Rio Tinto's efforts to implement each of the Consultant's recommendations and shall separately state whether Rio Tinto has fully complied with each of the Consultant's recommendations.

6. No later than forty-five (45) days of the date of entry of the Final Judgment, Rio Tinto shall provide to the staff and the Consultant detailed information of changes underway to its policies, procedures, and controls relating to internal reporting, and disclosure of material project risks required pursuant to United States federal securities laws, rules, and regulations. Based upon the Consultant's assessment of such changes, the Consultant shall include this information within the scope of its review and evaluation pursuant to Paragraph 1.

7. Rio Tinto shall cooperate fully with the Consultant in its review, including making such information and documents available as the Consultant may reasonably request, and by permitting and requiring Rio Tinto's employees and agents to supply such information and documents as the Consultant may reasonably request.

8. To ensure the independence of the Consultant, Rio Tinto (i) shall not have received legal, auditing, or other services from, or have had any affiliation with, the Consultant during the two years before the entry of the Final Judgment; (ii) shall not have the authority to terminate the Consultant without prior written approval of the Commission Staff; and (iii) shall compensate the Consultant for services rendered pursuant to the Final Judgment at the Consultant's reasonable and customary rates.

9. Rio Tinto shall require the Consultant to enter into an agreement that provides that for the period of engagement and for a period of two (2) years from completion of the engagement, the Consultant shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Rio Tinto, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity. The agreement will also provide that the Consultant will require that any firm with which he/she is affiliated or of which he/she is a member, and any person engaged to assist the Consultant in performance of his/her duties under the Final Judgment shall not, without prior written consent of the Commission staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Rio Tinto, or any of its present or former affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two (2) years after the engagement.

10. The Consultant's reports will likely include confidential financial, proprietary, competitive business or commercial information. Public disclosure of the reports could discourage cooperation, impede pending or potential government investigations, undermine the objectives of the reporting requirement, and cause competitive harm to Rio Tinto for which there is no adequate damages remedy. For these reasons, among others, the Consultant's reports and the contents thereof are intended to remain, and shall remain, non-public, except (i) pursuant to court order, (ii) as agreed to by the parties in advance and in writing, or (iii) as otherwise required by law. Rio Tinto shall, however, publish a summary of the Consultant's reports referenced in Paragraphs 3 and 5 above on

        Rio Tinto's website, in language and in a form not unacceptable to the Commission's Staff, within sixty (60) days of the date of receipt of each Consultant's report.

11. Rio Tinto shall require the Consultant to report to the Commission Staff on its activities as the Staff may request.

12. Rio Tinto agrees that the Commission Staff may extend any of the dates set forth above at its discretion and upon the request of Rio Tinto.